In the UNITED STATES DISTRICT Court
NORTHERN DISTRICT of OKLAHOMA

FILED

SEP 10 2018

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

Miss Glenn A. Porter #99595
D.C.C.C. / VA 103
129 CONNER Rd.
HOMINY, OK 74035

18 CV. 472 JED - FHM

Case No: _____
( supplied by Clerk)

Miss Glenn A. Porter
Plaintiff

CIVIL RIGHTS COMPLAINT
42 USC 1983
(JURY DEMAND)

V.

1. Joe Allbaugh, Director, O.D.O.C.;
2. Greg Williams, Deputy Director, O.D.O.C;
3. Janet Dowling, Warden;
4. Patricia Jones, M.D. J.H.C.C.
5. Michelle Lehnus. H.S.A.
6. Betheny Wagener P.A.
7. Dr. Joel MCCURDY, Chief Med. Director, O.D.O.C, et.al.

## A. JURISDICTION

(1)— Miss Glenn Porter, plaintiff, Pro-Se, is A Citizen of OKLA-
HOMA, who resides At: D.C.C.C., 129 CONNER rd, Hominy,
OKLAHOMA, 74035.

(2)— Joe Allbaugh, Defendant #1, is A Citizen of OKLA. City, OK.
and is the Director, O.D.O.C. And was Acting under Color
of STATE LAW at the Time of ACCRUAL of this Action;

(3)— Greg Williams, Defendant #2 is A Citizen of OKLAhoma,
and is Employed As Deputy Director, O.D.O.C. and was act-
ing under Color of STATE LAW at time of Accrual of Action;

(4)— Janet Dowling #3 Warden, D.C.C.C. is A Citizen of OKLAhoma
And Was Acting under Color of state LAW;

(5)— Patricia Jones, #4, M.D. JH.CC. Lexinston ok. Was Acting
under Color of STATE LAW Providing MED. Services to
D.O.C. Inmates;

(6)— Michelle Lehnus, #5 HSA, D.CCC, Hominy ok. was Acting
under Color of STATE Law Providing Med. Services to
Doc Inmates;

(7)— Betheny Wagener, #6 P.A., D.C.C.C. Hominy ok. was Acting
under Color of STATE LAW Providing Med Services to Doc
Inmates;

(8)— Joel MS Curdy, #7 Chief Medical Director, D.O.C. OKLA. City,
ok. Was Acting under Color of STATE LAW As Medical Dir-
ector for Inmates in DOC.

(1)

• Jurisdiction is INVOKED PURSUANT to 42 USC 1983,
42 USC 13,981 (GMVA); 42 USC 15,601 et. seq. (PREA)

B. Nature of Case

I AM A TRANSGENDER FEMALE, A WOMAN Diagnosed With
GENDER Dysphoria by Dr. LANE, Md. and Dr. Sam MUSSATTO.M
MD. ON OCTOBER 4th 2016. see: Electronic Health Record (EHR),
While I WAS housed At A GEO PRiVate Prison Lawton OK. I Was
Placed on Hormone Therapy, ESTRADiOL and Aldactone; Chief
Medical Director O.D.O.C. DID Assist in the Diagnosis and the
Initiation of (HRT) on APPROX. 18th of October 2016. I Was
Told once I STARTED Hormones I'd be on them for Life. this
All took Place being Initiated By Medical STAFF and Pursuant to
Grievance Process, see: LCF-16-b30 Amended on direction of
Medical Director DOC to LCF-16-551. (All Grievances, Medical
Requests are Retained by Plaintiff). Relief Was Granted for
Gender Dysphoria. Exhibit (A).

APPROX. 2 years Into Therapy and Transition Patricia
Jones from Joseph Hare come to D.C.C.C. and saw me
(One time, less than 45 min. and Ate Most of That Time.
May 17, 2018. she said In A Summary I Was "Masquerading"
As A Woman" and "Didn't have Gender Dysphoria". she's saying
I'M A MAN which is A [DEMEANING Reference] to My
"GENDER". PROhibited by PREA As [SEXUAL Harrasment]
42 USC 15,601 ss 115.6 (2); 28 CFR ss 115.6 (2). and A.P.A.
Physicians Assistant USED this to STOP My Hormone Therapy.
Causing My Testosterone_To SurGe and My ESTROGEN TO
CRASH. Placing me in A Serious Risk of Harm and Irreparable
INJury TO My Health and Safety. SHORT Term and Long Term.

My ESTROGEN levels are extremely high and Testosterone
Extremely Low.

At the beginning of My (HRT) I WAS at the Point of doing my
own Surgery. I Connot Live As a Man in A Mans Body. I WON'T.
I Was And Am very Ashamed, Confused, Embarrassed withdrawn and
Not Able to Cope As a Woman Locked in A Mans Body. I'M Now
Placed back Into the same Situation Needing Sex Reassignment
Surgery. (SRS) Due to Prison officials Deliberate Indifference
To My Serious medical Needs and Future health and Safety.

C. Cause of ACTION

(1), (A), (1) Count I

(2) COMPLAINT

(A)(2), Supporting Facts: * NOTE, At First They Said They Was going to give me
To Diagnosis by Patricia Jones. They Later Tried to switch to liver the Risk
(c) - A2.

on October 4th of 2016 I was Diagnosed with Gender Dysphoria
(I'm a woman) Incompatable with a Male body, ie. Genitalia, Hair, smell, shape
etc. And At the Point of my Diagnosis at Geo Private Prison in Lawton ok.
by Dr. Lane Md. And Sam Mussallem M.D. I was In Dissust, Embarrasment,
Confusion, Shame, Helplessness, Mental/Emotional Distress and Seeking
Sex Reassignment Surgery. I was Placed on Hormone Replacement Therapy
Estradiol And Aldactone, Estrogen and Androgen Blockers, Respectively, on     fn1
Approx, 18 Oct. 2016 After Almost 1 year of going through Grievances.
PIARA, Doc Admin. Granted Relief for Gender Dysphoria - At that Time.
[Order Appended Exh. (A)]
On May 17 2018, Almost 2 years of Benefit From Therapy Doc had
Patricia Jones Come from Joe Harp CC, at Lexington ok. to See me one
Time, Less than 45 minutes And Never Ask Any thing About MY Gender
Dysphoria, fn.2 She "Stopped" MY Therapy, or Caused it To Be Stopped by
Stating I Didnt have Gender Dysphoria. I AM A Woman, have been
And Reject Completely Any Type of Male Gender Role. I Live As A Woman.
I'm A Woman In A Mans Body I Cannot Live like this. Now they have
Taken MY help I recieved Benefit from, surgiss my Testosterone and
Crashing Me on Estrogen. I was Granted Relief by D.O.C. Admin.
PIARA. through the Grievance Process, LCF-16-230, LCF-16-551 Ex.(A)
→ They Arent Suppose to take what was Given Me Through the
Grievance Process, Violating the 8th and 14th Amend. USC in the
Process with No Court ORDER to Do So." Bethany Wisener A Physician
Assistant of DCCC stopped my Hormones on an order only Signed by her,
She is Not Licensed to start or Stop MY hormones and Suppressors,
The Order is UN-Signed by Everyone Else. This Constituts Practicing
Medicine without A Licence under the Medical Licensure Board
of OKlahoma. see: (EHR) (Supplied At A More Appropriate Time to the Court).

In Fields V. Smith, 712 F.Supp. 2d At 830, the Circuit Court held:

" Gender Identity Disorder is A Strong, Persistent Cross Gender Ident-
ification Condition in which Individuals Are Cruelly Imprisoned in
A Body Incompatable with their Subjective Gender Identity." See:
Merck Manual, Diagnosis and Therapy 1732, (18th Ed. 2006)"

" Individuals with GID Experience A DEGREE of Incongruence
That often is Severe, Long Standing and Complete." MERCK
manual At 1732. see Also: Delonta V. Angelone, 330 F.3d 630.

" When Not Properly Treated, GID can result in Clinically Significant
Psychological Distress, dysfunction, debilitating depression, And
for Some People, Self Mutilation, Auto Castration/Penectomy,
Thoughts and Attempts of Suicide and death." Fields Id. At 830, Also
See: Diagnostic and Statistical Manual of Mental Disorders, 576 1578
(4th Edr 2000).

Fn. 1 - see: LCF-16-230 (Later Amended to LCF-16-551
PIARA [GRANTED Relief] Comple set of Documents
Available. [Order appended Exhibit (A)]
Fn. 2 - See: AFFIDAVIT of Chartel Williams who was Also Allegedly

C-A-3   Additional Supporting Facts

Since Arrival at D.C.C.C. Everything Miss Porter had with Respect to Therapy Was Taken Prior to the Taking of her hormones. D- USCA Amend. 8, 14

(1) She Was ordered Psycho Therapy Every 30 day In Conjunction With Hormone therapy - october 2016.

Since Arrived At DCCC Miss Porter has been Denied Psycho therapy by A Psychologist Every 30 days. A.T. Williams Is A Social Worker Not Qualified To Provide Psychotherapy - USCA Amend. 8, 14.

+ This is Exhausted Also→

(2) Miss Porter had A rasdoll and 3 teddy Bears Approved As Therapy for 6 years Which Was Taken on Arrival At D.C.C.C. USCA Amend. 8, 14. this is therapy For Me and has been Approved by Mental Health for 6 years.

+ This is Also exhausted.

• These Additional facts Will go to State of Mind Also.

•• But is Included As Additional Facets of CLAim (1) _

(3) Prison OFFICIALS AT D.C.C.C. With Exception to Bra's And Panties Do Not Provide or Make Available Any Female Clothing to Miss Porter As required by Case Authority and is Provided to other Transgender Females At Joseph Harp Violating Equal Protection, 14 Amend. USC. 8th Amend USC.

(4)- Prison OFFICIALS At D.C.C.C. Does Not Provide or Make Available Female Cosmetics to Miss Porter and is in Violation of Equal Protection. As items are Provided to other Transgender Female At Joseph harp.. 8/14 Amend. USC,

CLAim 1 - C-A-3-(1)(2)(3) is All fully Exhausted Also_

(5)- There Are No Medical STAFF At DCCC Qualified or Licensed to STOP my Hormones (or) Monitor Plaintiff during WithDRAW AL.. WHen HRT WAS Initiated I

## DIAGNOSIS

→  The American Psychiatric Associations Diagnostic and Statistical Manual of Mental Disorders recognizes the following Criteria for GID:

(1). Evidence of a STRONG Persistant Cross Gender Identification, which is the "DESIRE to BE" (or) Insistence ONE is of the other Sex.

(2). Evidence of "DISCOMFORT about ONES Assigned SEX (or)" A Sense of Inapproprieteness in the Gender Role of that Sex."

(3)- the Diagnosis is NOT MADE IF the there is A Concurrent Inter-Sex Condition; and,

(4) Evidence of Clinically "Significant Distress (or)" Social Impairment" In "Social or other Occupational (or) "other Areas of functioning" See: DSM-IV, 576

→ • The WORLD Health ORGANIZATIONS International Classification of Diseases, Holds " GID is Characterized by A" Persistent and Intense DISTRESS About Assigned sex" Together With "A Desire to Be" (or) "Insistence one is of the other Sex". see WHO's International Classification of Diseases, F64.2 (2007 ed.).

→ • the Lives of Some Individuals revolve only Around the Activities that Lessen their DISTRESS, DSM-IV-At 578. WHO has Also recognized "GID Creates A Profound Disturbance of the Normal Gender Identity" and "A Persistent PreOccupation with the Dress and Activities of the opposite sex", with "repudiation of the Individuals Own Sex" "Individual with GID Live in A Dissociated STATE of Mind and Body". see: NCCHC Position Statement, Transgender Health Care in Correctional Settings. Fields, supra At 830.

### the Risk of Present / future Harm

As a Result of the Disorder, SOME MALE to Female, Individuals with GID resort to Self Treatment With Hormones (or) Attempt their Own Castration or Penectomy. DSM-IV At 578. IN These Cases Suicide Attempts, and Substance Related Disorders are Commonly Associated. Fields at 830. "The Literature in the Field is Replete With Accounts of Individuals who HAVE Taken their Own Lives" (or) Attempted to Do So Because their GID Was Not PROPERLY Assessed and Treated". See: George Brown, Auto Castration and Auto Penectomy As Surgical Self Treatment in Incarcerated Persons With GID at 31-39.

→  As A [Result] If Being [Deprived] of the "PRESCRIBED HORMONE" Therapy, Plaintiff Miss Porter, experiences Confusion, Embarrass-ment, Depression, Fear, Break outs of the skin, Hair on Face and Breasts, Legs, her smell Changes to Smell Like A MAN, It will Likely Seriously affect the Benefit obtained in the Last 14 years This is An Attempt by officials to Alter My Gender [] Identity And should Not Be Employed See: National Commission on Correctional Health Care Board of

Loss of Appetite, Nausea, Mental and Emotional Instability, Hot flashes, Anxiety. (None of Plaintiffs Medical Requests on this STUFF has been Seen by A Doctor) All returned with dates only. Documents Plaintiff Retains.

In De'lonta V. Anselone, 330 F.3d At 630, "A MALE to Female Patient Was Abruptly Barred from Hormone therapy, developing An un Controllable urge to Mutilate her Genitals". Id. At 632.

The Lack of Hormone therapy Will Wreak Havoc in A Persons Life, [Especially I one Who has Previously recieved Treatment, which is Neither Compensable nor speculative. see: Phillips V. Michigan Dept. of Corrections, 731 F.Supp. 792 at 800; Also: Citing: Fields, supra, At 830.

⟶ For These Reasons Miss Porter, Plaintiff, is being Exposed To A [ Serious Risk of Future Harm], Prison Officials, Aware of the Risk are Acting with deliberate Indifference to Miss Porters Serious Medical needs, Violating the 8th Amend. USC.

In SUNDSTROM V. FRANK, NO: 06-C-112, (E.D. Wis. 2006), the Court: " GRANTED PRELIMINARY INJUNCTION ENJOINING PRISON OFFICIALS FROM [WITHDRAWING] HORMONE THERAPY FOR [TRANSGENDER PRISONER] BASED ON "Likilhood" they Would Be Able to Establish AN 8th Amend. Violation By SHOWING That IRREParable INJURIES to their LONG TERM Health Would ARise, from Withdrawal of HORMONE Therapy". (Emphasis)

in CuaCo V. Maritsusu, 223 F.3d 99 at 106, held:

" Transexualism Is A Serious Medical need!"

Also See: Meriwether Courts definition of Transexualism, using the Merck Manual and D.S.M. IV, Appended Courtesy References. ACLU and NCLR medical Care Newletter Pgs. (7),(8)(9) Providing A variety of Case Authority. Exhibit (B).

⟶ Miss Porter, Plaintiff is Seeking Sex Reassignment Surgery ( SRS ) And MAking Repeated Requests and Grievances has Not been Evaluated by A GID Specialist for Surgery. Neither has Miss Porter Been Seen by A Specialist on Diagnosis and Surgery outside D.O.C. This Allegation Alone STATES A Claim of Deliberate Indifference. De'lonta V. Anselone, 708 F.3d At526 n.4.

Note: In Fields V. Smith, 712 F.supp. 2d 830, the Circuit Court of Appeals held: " Denying medically necessary Transition Related Health Care VIOLATED the 8th Amendments Prohibition Against Cruel and UNUSUAL Punishment"

( 5 )

## Relief Requested

(1) - Emergency Temporary RESTRAINING ORDER, Restraining Prison officials from Stopping Hormone therapy ie: Estradiol 8ms. daily / Aldactone 300ms. Daily. Miss Porters Daily Dosage After 2 Years of Therapy.

(2)(A) Injunctive Relief, Enjoining Prison officials from With-Drawal of Hormone therapy Preventing 8th Amend. Violation from irreparrable Injuries to her Long term Health due to withdrawal of Hormone Therapy.

(B) enjoin Prison officials Provide Sex Reassisnment Surgery. And Preventing officials From Leaving Miss Porter Plaintiff in transitionar State With the Secondary Sex Characteristics she Currently has as A Result of 2 years of Hormone therapy and withdrawing Hormones and Forcing Miss Porter or Attemptions to Force her to Live As A MAN.

Note: Miss Porter has in the Electronic Health Record (EHR) A Waiver of Any Liability incurred by Miss Porter as A result of Hormone therapy, of Which So For There is NONE, Signed At Geo Private Prison Lawton Okc. Approx. Nov. 2016,

Miss Porter Also has in the (EHR) A Diagnosis of Gender Dysphoria oct. 4, 2016.

### Exhaustion

Miss Porter Plaintiff has Exhausted This Claim. for Purposes of PLRA, using Grievance Process,

Miss Glenn Porter
_____
Miss Glenn Porter 99595
DCCC VA 103
179 Conner rd.
Hominy Okc,
74035
Plaintiff Pro-Se

(6)

| | |
|---|---|
| Grievance Number: | Resubmitted LCF-16-551 |
| Offender Name and DOC Number: | Glenn A. Porter-DOC #99595 |
| Facility Location: | Lawton Correctional Facility |

Your resubmitted grievance appeal dated September 20, 2016 was received on September 22, 2016. All of your correspondence was thoroughly reviewed. The actions you believe the Reviewing Authority may lawfully take, and my response, are provided below.

### Request:

"… to be provided with required treatment for Gender Dysphoria "Hormone Replacement Therapy"…"

### Response:

Pertinent information from your electronic health record (EHR) was reviewed. According to your record, you were approved for hormone replacement therapy and the medications were ordered on October 18, 2016. According to Jacqueline Wells at Lawton Correctional Facility, you received the keep on person medications on October 21, 2016, October 24, 2016, and November 15, 2016.

If you need further assistance with any health concerns, you must submit a "Request for Health Services" form (attached) to the medical unit at your facility, via the sick call process.

Disposition: (1) – Relief granted.

*OP-090124 entitled "Inmate/Offender Grievance Process," Section VII.D states, "The ruling of the administrative review authority or chief medical officer is final and will conclude the administrative remedy available to the inmate/offender within the jurisdiction of the Oklahoma Department of Corrections. The inmate/offender will have satisfied the exhaustion of administrative remedies required by 57 O.S., Section 564. The grievance procedure, however, does not satisfy the additional requirements for exhaustion of administrative remedies required by the Governmental Tort Claims Act, 51 O.S., Section 151 et seq."*

_____                    11-22-16
Buddy Honaker                                                      Date
Medical Services Administrator

BH/cr

CC    Christina Thomas
        Latoya Dawson
        Hector Rios
        Greg Williams (Brenda Bryant)
        File

EXHIBIT (A)

OKLAHOMA DEPARTMENT OF CORRECTIONS
MEDICATION REFILL SLIP
(to be used for provider's prescription medication(s))
Refills must be submitted within 10 days before run out or 20 days from issue date.

Date: 4 July 18   Facility: D.C.C.C.   Housing Unit: V/A   Bunk/Cell Number: L/#103

Inmate Name: Miss Porter Glenn   ODOC #: 095595
(Last, First)

| Prescription Number or Barcode Label | Medication Name | Prescription Number or Barcode Label | Medication Name |
|---|---|---|---|
| Estradiol | 2/mg | 203977559 PORTER,G 99595 ASPIR-LOW 81 #87048160 DCCC,070719 | Lc Dose Aspirin 81 mg |
| 203202760 PORTER,G 99595 SPIRONOLACTO #86724701 DCCC,090918 | Aldactone 100 mg | PRENATAL Tab | |

◦ The prescription number can be found halfway down the left-hand side of the medication label (RX #).
◦ The medication name is located on the top left-hand corner of the medication label beneath the inmate's name.

Date Received: 6/4/18 N   TO BE COMPLETED BY HEALTH SERVICES   DCd 7/16/18   DCd 7/10/18   Estradol/Aldactone   You

☑ You have no refills left on your prescription(s). You will need to submit a "Request for Medical Services" (OP-140117A) to see the medical provider and get a renewal.

Medication Refill Slips must be maintained on file by CHSA for 30 days after the medication has been issued or administered to the inmate.

ODOC 140130M (R9/16)

American Civil Liberties Union • National Center for Lesbian Rights

**Fourth,** prison and jail staff may violate the Constitution if they refuse to evaluate a prisoner for GD or if they take too long to do so. Prison officials often put off or outright deny transgender prisoners access to health care for GD, even though courts have repeatedly found that such delays or denials of assessment or treatment violate the Constitution.[39] Even delays in starting treatment because a prisoner will be released soon may violate the Eighth Amendment.[40] One common reason prisoners with GD are denied adequate treatment is that very few prisons have health care staff with expertise or training to treat GD. However, denying prisoners' access to a health care provider with the necessary expertise may violate the Constitution, as many courts have concluded.[41]

Because the Eighth Amendment requires that prison officials actually be aware of serious medical needs, you should be sure to file appeals whenever staff refuse to evaluate you for GD or fail to provide you with care. You should also describe the symptoms you are experiencing without that care.

## NECESSARY MEDICAL CARE FOR MANY TRANSGENDER INDIVIDUALS INCLUDES ACCESS TO CLOTHING AND GROOMING STANDARDS CONSISTENT WITH GENDER IDENTITY

Most prisons and jails have very strict policies about clothing and grooming. For example, prisons generally only allow prisoners to wear prison or jail issued clothing items and may force prisoners to keep their hair a certain length.

When such restrictions are applied to transgender people, they can make their GD much worse. Many transgender prisoners are not given clothing appropriate for their gender identity—often, transgender women in male facilities are denied access to bras and other undergarments. Similarly, transgender men are sometimes required to keep their face clean-shaven, and transgender women are sometimes not allowed to grow their hair past a certain length (or are forced to have their heads shaved during the intake process).

Such experiences can be psychologically harmful for transgender prisoners. As a result, staff might violate the Eighth Amendment if they do not allow you to have gender-appropriate clothing and grooming supplies, such as makeup and hair removal tools, or deny your request to present consistently with your gender identity.[42]

Because of this, several county jails have good policies regarding clothing and grooming. For example, King County, Washington allows transgender women to order from the commissary and wear the same items, such as bras, as other females at the facility.[43] Similarly, Cumberland County, Maine allows transgender men and women to dress, groom, and use names and pronouns that are consistent with their gender identity.[44]

While it might be very hard for you to get the medical care you need, here are a few things you can do:

- Look for policies about transgender prisoners, including policies about medical care. They may be in the prison law library. If not, you can ask staff for copies or send a public records request for all policies about transgender prisoners.

- If you were receiving hormones from a doctor prior to incarceration, have your medical records sent to the medical or health director at your facility.

- Get a copy of the WPATH *Standards of Care* to show the prison medical staff, or tell them where to find them (http://www.wpath.org/). Be sure to ask for care in writing, and send a copy to the health director of your prison or jail.

- Even if you are told that denials of medical and mental health care cannot be appealed, file appeals anyway. Try to get a medical staff member to respond to your appeals about care instead of correctional staff. If correctional staff answer your grievance, request at the next level that medical staff respond to your appeal since it involves medical issues.

Exhibit (B) (1) of 3

American Civil Liberties Union • National Center for Lesbian Rights

20   Janet Mock, "Chelsea Manning & the Battle for Trans Inclusive Health Care Without Bias" (August 22, 2013), available at http://janetmock.com/2013/08/22/chelsea-manning-transgender-healthcare/.

21   See Estelle v. Gamble, 429 U.S. 97, 103 (1976) ("[Eighth Amendment] principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration.").

22   Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). See also Fennell v. Quintela, 393 F. App'x 150, 157 (5th Cir. 2010); Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003); Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotation marks omitted); Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (internal quotation marks omitted).

23   See Helling v. McKinney, 509 U.S. 25, 33 (1993). See also Soneeya v. Spencer, 851 F. Supp. 2d 228, 248 (D. Mass. 2012) (prison officials deliberately indifferent where they failed to "remove[ ] the risk of serious future harm" stemming from GID); De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) ("[Plaintiff's] need for protection against continued self-mutilation constitutes a serious medical need to which prison officials may not be deliberately indifferent.").

24   See, e.g., Edwards v. Snyder, 478 F.3d 831, 832 (7th Cir. 2007) (treatment cannot be "blatantly inappropriate");

Collignon v. Milwaukee Cnty., 163 F.3d 982, 989 (7th Cir. 1998) (medical treatment in prison cannot be such that "no minimally competent professional would have so responded under those circumstances"); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985) (medical care in prison cannot be "so cursory as to amount to no treatment at all").

25   See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) ("We assume for purposes of this appeal that transsexualism constitutes a serious medical need."); Brown v. Zavaras, 63 F.3d 967, 970 (10th Cir. 1995) (prison officials must provide treatment to address the medical needs of transsexual prisoner); Meriwether v. Faulkner, 821 F.2d 408 (7th Cir. 1987) (recognizing transsexualism as a serious medical need that should not be treated differently than any other psychiatric disorder); Phillips v. Michigan Dep't of Corrections, 731 F. Supp. 792, 799 (W.D. Mich. 1990) (complete refusal by prison officials to provide a person with GID with any treatment at all would state an Eighth Amendment claim). Note also that various physical manifestations of GID, such as genital mutilation, are also considered serious medical needs within the meaning of the Eighth Amendment. See, e.g., De'Lonta, 330 F.3d at 634 ("[N]eed for protection against continued self-mutilation [because of GID condition] constitutes a serious medical need.").

26   See, e.g., Meriwether, 821 F.2d at 413 (transgender prisoner has right to some form of treatment, but not to choice of a "particular type of treatment, such as estrogen therapy"); Briones v. Grannis, CV 09-08074-VAP(VBK), 2010 WL 3636139, at *6 (C.D. Cal. Sept. 14, 2010) (failure to provide transgender prisoner with the specific type of hormone treatments she requested did not constitute an Eighth Amendment violation).

27   See, e.g., Harris v. Thigpen, 941 F.2d 1495, 1509 (11th Cir. 1991) (treatments cannot be denied merely because they are expensive); Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003) (treatment must be "based on medical considerations"); Kosilek v. Maloney, 221 F. Supp. 2d 156, 182 (D. Mass. 2002) (treatments cannot be denied merely because they are controversial).

28   See Fields v. Smith, 653 F.3d 550, 557 (7th Cir. 2011) (rejecting prison security argument because "transgender inmates may be targets for violence even without hormones" and defendants' expert "testified that it would be an 'incredible stretch' to conclude that banning the use of

hormones could prevent sexual assaults"); Kosilek v. Spencer, 889 F. Supp. 2d 190, 240-41 (D. Mass. 2012).

29   See Battista v. Clarke, 645 F.3d 449, 454-55 (1st Cir. 2011); Tates v. Blanas, No. S-00-2539, 2003 WL 23864868, *10 (E.D. Cal. 2003) (officials must balance security risks of providing transgender prisoner with bra against her medical needs); Kosilek, 221 F. Supp. 2d at 191 ("It has been, and remains, permissible for [prison officials] to consider the security implications of the medical care prescribed for [transgender prisoners]").

30   See Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001) ("[M]edical treatment may so deviate from the applicable standard of care as to evidence a physician's deliberate indifference."); Estate of Cole v. Fromm, 94 F.3d 254, 262 (7th Cir. 1996) (Eighth Amendment violation where treatment represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment"); United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987) (Eighth Amendment guarantees medical care "at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards"); Barrett, 292 F. Supp. 2d at 286 (D.N.H. 2003) ("Adequate medical care' requires treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations."). See also above, n.23.

31   De'Lonta, 708 F.3d at 522-23 (WPATH standards "are the generally accepted protocols for the treatment of GID"; Fields, 653 F.3d at 553-54 (characterizing the WPATH standards as the "accepted standards of care"; Kosilek, 221 F. Supp. 2d at 166 (same).

32   WPATH, Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People, Version 7 ("Standards of Care"), at 67 ("Access to these medically necessary treatments should not be denied on the basis of institutionalization or housing arrangements.").

33   Standards of Care, at 22-23 (recommended minimum credentials for mental health professionals who work with adults presenting with gender dysphoria; at 8-10 (treatment is individualized to include one or more of psychotherapy, change of gender expression or role, hormone therapy, and surgery, since individual's treatment needs vary).

34   See, e.g., Fields, 653 F.3d at 555 ("Although DOC can provide psychotherapy as well as antipsychotics and antidepressants, defendants failed to present evidence rebutting the testimony that these treatments do nothing to treat the underlying disorder."; cf. Edwards, 478 F.3d at 831 (a prisoner's "receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was so 'blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition."); Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006) (prisons cannot simply choose an "easier course of [medical] treatment that they know is ineffective").

35   See De'Lonta, 330 F.3d at 634-35; Wolfe v. Horn, 130 F. Supp. 2d 648, 693 (E.D. Pa. 2001); Phillips, 731 F. Supp. at 800 ("Taking measures which actually reverse the effects of years of healing medical treatment . . . is measurably worse [than failing to provide] such treatment in the first place].").

36   See Fields, 653 F.3d at 557-58 (Wisconsin's blanket ban on hormone therapy and sex reassignment surgery constituted facial violation of Eighth Amendment); De'Lonta, 330 F.3d at 635 (allegations of denial of treatment based on blanket policy rather than medical judgment sufficient to support claim for deliberate indifference); Allard v. Gomez, 9 F. App'x 793, 795 (9th Cir. 2001) (deliberate indifference if transgender prisoner was denied hormone therapy as result of blanket rule); Soneeya,

Exhibit (B), (2) of 3

851 F. Supp. 2d at 250 (blanket prohibition on female canteen items and clothing violates Eighth Amendment); *Houston v. Trella*, No. 04-CV-1393, 2006 WL 2772748, at *8 (D. N.J. Sept. 25, 2006) (policy of withholding hormone treatment violates Eighth Amendment); *Barrett*, 292 F. Supp. 2d at 286 ("A blanket policy that prohibits a prison's medical staff from making a medical determination of an individual inmate's medical needs and prescribing and providing adequate care to treat those needs violates the Eighth Amendment"); *Kosilek*, 221 F. Supp. 2d at 176 (blanket policy that prohibits prison's medical staff from making medical determination of an individual prisoner's medical needs violates Eighth Amendment). *See also Colwell v. Bannister*, 763 F.3d 1060, 1068-70 (9th Cir. 2014) (blanket policy of denying cataract surgery where prisoners had at least one "good eye" violated Eighth Amendment); *Brock v. Wright*, 315 F.3d 158, 166-67 (2d Cir. 2003) (policy forbidding treatment of keloid scars for purposes of alleviating moderate chronic pain could support deliberate indifference finding); *Batterson v. Bannister*, No. 3:07-CV-142-BES-VPC, 2008 WL 3871710, at *8 (D. Nev. Aug. 19, 2008) (blanket policy prohibiting treatment for chronic pain without individualized assessment of prisoners' medical needs states Eighth Amendment claim).

37 *See Brooks v. Berg*, 270 F. Supp. 2d 302, 313 (N.D.N.Y. 2003), *vacated in part on other grounds*, 289 F. Supp. 2d 286 (N.D.N.Y 2003) ("[T]here is no exception to [the Eighth Amendment] for serious medical needs that are first diagnosed in prison."); *Kosilek*, 221 F. Supp. 2d at 193 (while presumptive freeze frame policy is permissible, ultimate decisions must be made an individualized basis rather than blanket rule); *see also Lynch v. Lewis*, No. 7:14-CV-24 HL, 2014 WL 1813725, at *2-*3 (M.D. Ga. May 7, 2014) (denial of hormones pursuant to freeze frame policy may violate the Eighth Amendment).

38 Federal Bureau of Prison Program Statement 6031.04 ("Patient Care"), dated June 3, 2014, at 42 (providing that "inmates in the custody of the Bureau with a possible diagnosis of GID will receive a current individualized assessment and evaluation" and that "[t]reatment options will not be precluded solely due to level of services received, or lack of services, prior to incarceration.").

39 *See, e.g., Estelle*, 429 U.S. at 104-05 (prison officials may manifest deliberate indifference by "intentionally denying or delaying access to medical care"); *Kothmann v. Rosario*, 558 F. App'x 907, 911 (11th Cir. 2014) (possible Eighth Amendment violation where transgender prisoner alleged that prison health official knew hormone therapy was medically necessary but nonetheless refused to provide it); *De'lonta*, 708 F.3d 520, 525 (4th Cir. 2013) (failure to evaluate transgender prisoner for surgery could constitute deliberate indifference); *Fields*, 653 F.3d at 558-59 (statute that prevented medical personnel from evaluating prisoners with GID for hormone therapy or surgery violated Eighth Amendment); *Battista*, 645 F.3d at 455 (extreme "composite of delays, poor explanations, missteps, changes in position and rigidities" regarding prisoner's request for hormone therapy showed deliberate indifference); *Jett v. Penner*, 439 F.3d 1091, 1097-98 (9th Cir. 2006) (delay of over a year before seeing a hand specialist constituted deliberate indifference); *Wallin v. Norman*, 317 F.3d 558. 562 (6th Cir. 2003) (delay of one week in treating urinary tract infection and delay of one day in treating serious leg injury could constitute deliberate indifference).

40 *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (extended delay in starting Hepatitis C treatment because prisoner might be released within twelve months stated claim under Eighth Amendment).

41 *See De'lonta*, 708 F.3d at 526 n. 4 (allegation that prisoner had not been evaluated by a GID specialist for surgery stated claim of deliberate indifference); *Kosilek*, 221 F. Supp. 2d at 161, 189 (prisoner who was only seen by social worker and psychiatrist who did not have experience diagnosing GID had never received an individualized medical evaluation, since she had not been evaluated by qualified medical staff); *see also, e.g., Hayes v. Snyder*, 546 F.3d 516, 526 (7th Cir. 2008) (refusal to refer to a specialist where doctor did not know cause of reported extreme pain could support deliberate indifference finding); *LeMarbe v. Wisneski*, 266 F.3d 429, 440 (6th Cir. 2001) (failure to make timely referral to specialist or tell patient to seek one out was deliberate indifference); *Oxendine v. Kaplan*, 241 F.3d 1272, 1278-79 (10th Cir. 2001) (prison doctor who reattached accidentally severed finger could be found deliberately indifferent for failing to refer prisoner for specialist care at any point; denial of access to "medical personnel capable of evaluating the need for treatment" and performing surgery one is not qualified for can be deliberate indifference); *Hathaway v. Coughlin*, 37 F.3d 63, 68-69 (2d Cir. 1994) (jury could conclude that prison doctor was deliberately indifferent when he failed to refer prisoner for re-evaluation for surgery to a specialist despite requests for further treatment from the prisoner); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (prison's refusal to provide specialty consultations from an orthopedic specialist or a psychiatrist without a court order was deliberate indifference).

42 *See Konitzer v. Frank*, 711 F. Supp. 2d 874, 908-11 (E.D. Wis. 2010) (prison officials' denial of plaintiff's requests for makeup, women's undergarments, and facial hair remover might give rise to an Eighth Amendment violation); *Soneeya*, 851 F. Supp. 2d at 246 (prison officials' delay in providing female canteen items and clothing necessary for plaintiff's GID treatment constituted deliberate indifference). Other legal arguments for right to gender expression in prisons have not been successful. *See, e.g., Lopez v. City of New York*, No. 05 Civ. 10321, 2009 WL 229956, at *13 (S.D.N.Y. Jan. 30, 2009) (prison officials' refusal to allow plaintiff to wear women's clothing did not violate the equal protection clause of the 14th Amendment); *Nelson v. Anderson*, No. 7:07cv00149, 2007 WL 989980, at *2 (W.D. Va. March 30, 2007) (rejecting plaintiff's claim that prison officials violated his generalized due process rights by forbidding him from drawing his eyebrows in); *Powell v. Cusimano*, 326 F. Supp. 2d 322, 343 (D. Conn. 2004) (rejecting plaintiff's equal protection claims regarding prison's prohibition against hair extensions and contact lenses); *Star v. Gramley*, 815 F. Supp. 276, 278 (C.D. Ill. 1993) (rejecting plaintiff's equal protection and free speech/expression claims regarding right to wear makeup and women's clothing in prison).

43 King County, Department of Adult and Juvenile Detention, Adult Divisions, General Policy Manual, 6.03.007 (April 2, 2014).

44 Cumberland County Sheriff's Office, Policy and Procedure, Transgender Inmates, No. D-243A (Dec. 2009).

Exhibit 1 (B) (3) of 3

# OKLAHOMA DEPARTMENT OF CORRECTIONS
## Male to Female
## Hormonal Therapy Risk and Information Form

Hormone therapy may be all the treatment you need for your gender dysphoria.  While you are being treated with hormones, you will be monitored to determine if the hormone treatment is benefiting you. Before starting hormone treatment you are encouraged to exercise regularly and stop smoking.  Exercise improves the benefits of hormone treatment, while smoking causes increased risk of thromboembolic disease (blood clots) associated with hormone treatment.   These blood clots can cause stroke, heart attack, lung damage, and/or death.  To reduce the risk of forming blood clots, daily aspirin is often recommended for persons taking estrogen.

Blood tests will be taken to determine your health and suitability to begin hormone therapy.  Some people may be unable to take hormones due to other health conditions.

You may be frustrated with how long hormone therapy takes to produce results, and you will need to be realistic about the extent of changes you can expect. For example, hormones cannot change the shape or height of your skeleton.

**Estrogen** can be prescribed for transsexual women with gender dysphoria and is often helpful in making their appearance more feminine.

- Noticeable changes may include:
- your penis and testicles may get smaller
- your body may redistribute body fat into a more female shape
- you may have less muscle
- you may have some breast development

There may be side effects, although some transsexual women report feelings of calm and well-being after starting on hormone treatment.

**Estrogen** side effects may include:

- chest pain or heavy feeling, pain spreading to the arm or shoulder, nausea, sweating, general ill feeling;
- sudden numbness or weakness, especially on one side of the body;
- sudden severe headache, confusion, problems with vision, speech, or balance;
- pain, swelling, warmth, or redness in one or both legs;
- migraine headache;
- pain, swelling, or tenderness in your stomach;
- confusion, problems with memory or concentration;
- jaundice (yellowing of the skin or eyes);
- swelling in your hands, ankles, or feet; or
- a breast lump.

Less serious side effects of estrogen may include:

- mild nausea, vomiting, bloating, stomach cramps;
- breast pain, tenderness, or swelling;
- freckles or darkening of facial skin;
- increased hair growth or loss of scalp hair;
- changes in weight or appetite;
- problems with contact lenses;
- mild headache, nervousness, dizziness, tired feeling; or
- mood swings.

These potential effects and side effects make it important to have regular medical check-ups.

Exhibit (C)

## OKLAHOMA DEPARTMENT OF CORRECTIONS
### Male to Female
### Hormonal Therapy Risk and Information Form

Medications known as androgen suppressants help to lessen the effects of your body's own androgens (male sex hormones).  Flutamide, Finasteride, and Spironolactone are androgen suppressants sometimes used as part of treatment for gender dysphoria.

**Flutamide** potential side effects include:

- severe liver damage with possible symptoms of nausea, vomiting, abdominal pain, unusual fatigue, loss of appetite, "flu-like" symptoms, yellow skin or eyes, itching, clay-colored stools, or dark urine
- allergic reaction
- diarrhea
- hot flashes
- skin rash
- sunlight sensitivity
- loss of sex drive
- impotence
- lowered sperm count
- enlarged breasts
- rectal bleeding, or blood in the urine

**Finasteride** side effects may include:

- chills
- cold sweats
- confusion
- dizziness, faintness, or lightheadedness when getting up from a lying or sitting position
- bloating or swelling of the face, arms, hands, lower legs, or feet
- breast enlargement and tenderness
- hives or welts
- itchy skin
- rapid weight gain
- redness of the skin
- skin rash
- swelling of the lips and face
- tingling of the hands or feet
- unusual weight gain or loss

**Spironolactone** side effects may include:

- numbness or tingling
- muscle pain or weakness
- slow, fast, or uneven heartbeat
- feeling drowsy, lightheaded, or restless
- urinating less than usual or not at all
- shallow breathing
- tremors
- confusion
- nausea
- upper abdominal pain
- itching
- loss of appetite
- dark urine
- clay-colored stools
- yellow skin or eyes

Exhibit (C)

Attachment A
OP-140147
Page 3 of 3

## OKLAHOMA DEPARTMENT OF CORRECTIONS
### Male to Female
### Hormonal Therapy Risk and Information Form

- fever
- sore throat
- swelling of face or tongue
- burning eyes
- skin pain
- skin blistering & peeling
- headache
- intestinal gas

I have read the effects and side effects of the medication(s) which are being prescribed to me for gender dysphoria. I accept the potential risks inherent in this treatment. I have been given the opportunity to ask questions and discuss my treatment with my health care provider. By signing below, I acknowledge the risks, verify my understanding of the information provided, and consent to treatment with the medication(s) prescribed to me for gender dysphoria.

Signature: _Miss Glenn Porter_     Date: _Oct. 24th 2016_

Printed Name: _Miss Glenn Porter_     DOC#: _#99595_

Witness: _Signed At Medical_   Title: _X_   Date: _Oct. 24, 2016_

Witness: _GEO Private Prison Lawton_   Title: _X_   Date: _Oct 24 2016_

_ok — P.W._

(10/15)

Exhibit (CC)

*NCHC* (handwritten)
*Position STATEMENT* (handwritten)

*Amy Whelan, esq. 21.567.5* (handwritten)
*# Cu State b* (handwritten)

National Center for Lesbian Rights (NCLR)
870 Market St. #370
San Francisco, CA 94102

Glenn Porter *Ms. Sunny Bunny* (handwritten)
LCF 4 A 113
8607 S.E. Flower Mound Road
Lawton, OK 73501

*Trans gender* (handwritten)
*Health STandards* (handwritten)
*In Correctional* (handwritten)
*Facilitys State/Federal* (handwritten)

March 18, 2012

Dear Glenn,

I am contacting you from the National Center for Lesbian Rights. I received your letters and I am very sorry to hear about what you are facing in prison, and I hope the information below is useful.

NCLR's primary purpose in corresponding with you is to provide useful and free legal information on issues relevant to LGBT people, and to provide you with contact information for LGBT-friendly attorneys. I am not acting as your attorney and am not currently providing you legal advice or representing you. I am not acting as your attorney and am not currently providing you legal advice or representing you.

This letter serves to notify you of the rights of people in prison, especially the right to adequate medical care.

Here are the position statements from the National Commission on Correctional Health Care regarding transgender health care in correctional settings:

## Transgender Health Care in Correctional Settings

### Introduction
Transgender people face an array of risks to their health and well-being during incarceration, and are often targets of physical assault and emotional abuse. They are commonly placed in correctional facilities according to their genitals and/or sex assigned at birth, regardless of their gender presentation. The health risks of overlooking the particular needs of transgender inmates are so severe that acknowledgment of the problem and policies that assure appropriate and responsible provision of health care are needed.

The term *transgender* refers to a person who identifies with or expresses a gender identity that does not match traditional ideas about the sex assigned to the person at birth. Transgender women are people who were assigned the sex of male at birth and who now identify as women. Transgender men are people who were assigned the sex of female at birth and who now identify as men. Transgender people may identify as men, women, neither, both, or another gender. They can be of any race, sexual orientation, age, religion, body type, socioeconomic background, or national origin.

The National Commission on Correctional Health Care publishes *Standards* for prisons, jails, and juvenile justice facilities that address board-approved recommendations for an adequate health care delivery system, including issues such as patient confidentiality, discharge planning, health professional qualifications, medication availability and delivery, and staff training. Position statements are intended to provide information on the management of specific problems not addressed in the *Standards*.

### Position Statement
Because prisons, jails, and juvenile justice facilities have a responsibility to ensure the physical

*(Appendix)* (handwritten)

National Center for Lesbian Rights (NCLR)
870 Market St. #370
San Francisco, CA 94102

and mental health and well-being of transgender people in their custody, correctional health staff should manage these inmates in a manner that respects the biomedical and psychological aspects of a gender identity disorder (GID) diagnosis. The National Commission on Correctional Health Care recommends that the following principles guide correctional health professionals in addressing the needs of transgender inmates:

Health Management

1. The management of medical (e.g., medically necessary hormone treatment) and surgical (e.g., genital reconstruction) transgender issues should follow accepted standards[1] developed by professionals with expertise in transgender health. Determination of treatment necessary for transgender patients should be on a case-by-case basis. Ideally, correctional health staff should be trained in transgender health care issues. Alternatively, they should have access to other professionals with expertise in transgender health care to help determine appropriate management and provide training in transgender issues.

2. Because inmate-patients may be under different stages of care prior to incarceration, there should be no blanket administrative or other policies that restrict specific medical treatments for transgender people. Policies that make treatments available only to those who received them prior to incarceration or that limit GID treatment to psychotherapy should be avoided. Policies that attempt to "freeze" gender transition at the stage reached prior to incarceration are inappropriate and out of step with medical standards, and should be avoided.

3. Diagnosed transgender patients who received hormone therapy prior to incarceration should have that therapy continued without interruption pending evaluation by a specialist, absent urgent medical reasons to the contrary. Transgender inmates who have not received hormone therapy prior to incarceration should be evaluated by a health care provider qualified in the area of transgender health to determine their treatment needs. When determined to be medically necessary for a particular inmate, hormone therapy should be initiated and sex reassignment surgery considered on a case-by-case basis. Regular laboratory monitoring should be conducted according to community medical standards.

4. Treatment for genital self-harm or for complications arising from prior surgery or from self-treatment should be provided when medically necessary.

5. Correctional health care providers should provide patient education materials to help transgender patients cope with their diagnosis and treatment.

6. Psychotherapy such as "reparative" therapy or attempts to alter gender identity should not be employed. Reparative therapy inappropriately portrays GID as a mental illness and not a medical condition.

Patient Safety

7. In matters of housing, recreation, and work assignments, custody staff should be aware that transgender people are common targets for violence. Accordingly, appropriate safety measures should be taken regardless of whether the person is placed in male or female housing areas.

Discharge Planning

National Center for Lesbian Rights (NCLR)
870 Market St. #370
San Francisco, CA 94102

8. Transgender inmates receiving hormone therapy should receive a sufficient supply upon release to last until a community provider assumes care. Referrals should be made to community-based organizations with sensitive and inclusive services for transgender people.

9. Correctional policies for management of transgender inmates should be developed and implemented in partnership with local transgender communities, particularly current and former inmates, and transgender service providers when possible.

***Adopted by the National Commission on Correctional Health Care Board of Directors October 18, 2009***

I hope that the information that I have included is useful to you in advocating for yourself and protecting your legal rights.

I am including with this letter:

1) ACLU Know Your Rights publication on Medical, Dental and Mental Health Care
2) ACLU Know Your Rights publication on Assault and Excessive Force in Prison
3) Jailhouse Lawyer's Manual chapter: Your Right to Adequate Medical Care
4) Jailhouse Lawyer's Manual chapter: Your Right to be Free from Assault by Prison Guards and Other Prisoners
5) Fields v. Smith Amici Curiae:  A Case in Support Hormone Therapy for Prisoners
6) Surviving Prison in California Advice By and For Transgender Women

Sincerely,

Jorge A. Pacheco,
Legal Intern | NCLR

Medunison

*DLCC    order for female Clothing for*
*Secondary Sex Characteristics*

## Oklahoma Department of Corrections

Oklahoma Department of Corrections Private and DOC: ODOC Formulary Group Number:

**PORTER, GLENN**
OK DoC Offender ID **99595**
02/19/1959 (59) M Caucasian
Dick Conner Correctional Center

### Text Order

**Under Garments**

| | |
|---|---|
| *Order Date:* | 03/16/2018 |
| *Status:* | Active |
| *Duration:* | hours |
| *Ordered By:* | Abraham Williams, Psych Clinician |
| *Signed By:* | Abraham Williams, Psych Clinician |
| *Patient:* | PORTER, GLENN |
| *Order Details:* | Inmate is allowed appropriate size and appropriate number of bras and panties consistent with that of a female facility. |

*Comment History:*

The contents of this document are confidential and restricted to authorized personnel of the Oklahoma Department of Corrections.

*Friday 4-13-2018*
*Called me to Laundry*
*Sized, and ordered*
*by Laundry through*
*O. CE.*
*13 APRil 2018*

AFFIDAVIT of Chartel Williams
Title 12 OK. STAT. 431

# 786548

I Chartel Williams   Certify upon my oath and under Penalty of Perjury I was diagnosed for Gender Dysphoria on the 17th of May 2018 By Patricia Jones At the Time Miss Porter 99545 was Diagnosed by Patricia Jones who only saw us one Time Less Than 45 min. And Didnt Ask Any Thing of Me in Connection With Gender Dysphoria. C.W.

Declaration under Penalty of Perjury

I Chartel Williams Certify upon oath and under Penalty of Perjury The Above statement is True.

Dated  10 July 2018

X _____ 786148
Chartel Williams
D.C.C.C.
129 Conner rd.
Heming / OK. 74035

AFFIANT

In the UNITED STATES DISTRICT COURT
NORTHERN DISTRICT of OKLAHOMA

Miss Glenn Porter
            Plaintiff
v,
Joe Allbaugh et.al.                    Case No: _____
            Defendants


            Plaintiff Miss Porters
                AFFiDAVit:
            • Possible Retolliation by
            Prison official for Reports
            of Sexual Harrassment and
            Discrimination

——→ Miss Porter, Plaintiff, Pro-se hereby Certifies upon her
oath and Under Penalty of Perjury 28 USC 1746, That: " on the 13th
Day of June 2018, At Dick Conners C.C. Miss Porter filed A Complaint
of #① Sexual Harrassment and #② Discrimination and Equal Protection
(seperately) as Grievences under PREA on C/O West At Approx.
7:30 PM At the V+W Unit Gate. Initial Complaint to Warden Dowling
And Responses [Granting] relief Appended hereto. See: Doc OP 090124,
Doc OP 030601, Also See: 42 USC 15,601, 115.6 (2) USCA Amend. 8,14.
                    Retalliation (Doc OP-110701, (1) (B)>
halds: "An Act / Covet or Overt of Vengence or Threat of Action Taken
Against an OFFENDER in Response to the offenders Complaint of Sexual Harrass-
ment" in (relevant Part). Examples of Acts of Retalliation are unnecessary
Discipline, Intimidation, unecessory Changes in Work or Program Assignments
unjustified Transfers or Placements and Unjustified denials of Privileges or
Services."
[Note →  Medical Staff At D.C.C.C. stopped my Hormone Replacement Therapy]
After 1 year 10 Months on July 10 2018. ——— order Appended.
Note → PREA Monitor Assessment: Doc OP-030601 (X), (D), (4) states
"For At least 90 Days Following A Report of Sexual Harrassment A Facility desis-
noted Monitor shall assess the Conduct and Treatment of Inmates who
Reported to suffer Sexual Harrassment FOR CHANGES THAT MAY SUGGEST
Retalliation by STAFF." PREA 115,67 (C)

**Request to Staff**


DATE:        June 15, 2018

TO:          Porter, Glenn #99595
             Unit V Cell #203

FROM:        Janet Dowling, Warden

RE:          Request to Staff dated June 13, 2018.

Porter:

In accordance with OP-030601 "Oklahoma Prison Rape Elimination Act".
All Oklahoma Department of Corrections staff are provided and required to attend OP-030601
"Oklahoma Prison Rape Elimination Act" training.

Relief granted.

cc:    Randy Harding, Deputy Warden, Facility PREA Coordinator
       Aaron Peruskie, Chief of Security
       Daniel Owens, Unit Manager

RECEIVED
JUN 1 4 2018
DCCC LAW LIBRARY

## Must Be Submitted Through the Law Library or Designee
## Inmate/Offender Grievance Process
## REQUEST TO STAFF

TO: Warden Dowling          FACILITY/DIST/UNIT: DCCC     DATE: 13 Jun 18
(NAME AND TITLE OF STAFF MEMBER)

I have ____ have not _X_ already submitted a "Request to Staff" or grievance on this same issue.
If yes, what date: ____X____ facility: ____X____ grievance #: ____X____
I affirm that I do ____ do not _X_ have a grievance pending on this issue.
I affirm that I do ____ do not _X_ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number and court: ____X____
This request _____ does ____X____ does not relate to a pending misconduct report.  If it does, this
request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:**     State completely, but briefly, the problem on which you desire assistance. This statement
must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One
issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this
being returned unanswered. C/o Staff DCCC single out Transgender Zich
On 13 June 2018 Officer West engaged in a
discriminitory action to send me to the Capt. for a shirt I
had on. I was covered. Others on the yard were not had
worse shirts and far none on at all. He targeted me
and sexually harassed me violating equal protection by
singling me out as a Transgender female and treating me dissimilar from
(USE OTHER SIDE IF MORE SPACE IS NEEDED.  DO NOT ATTACH ADDITIONAL PAGES.) Everyone else

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly
should be done and how.                    See comments before + after
Please stop the discrimination and equal protection
violations of singling out Transgender female here at
DCCC and treating them dissimilar from other similarly
situated inmates 42 USC 15601 et. seq. Doc op 030600 ( 14 & 8 Amend)

NAME: Miss Jenna Jerkin     ODOC NU: ____ 809685  UNIT & CELL NUMBER: VA 203
        (PRINT)

SIGNATURE: Jenna Fish          WORK ASSIGNMENT: V/A Pod orderly

---

### DO NOT WRITE BELOW THIS LINE

DISPOSITION:

_____

_____ See attached _____

STAFF MEMBER     RECEIVED     DATE     6-15-18
                 JUN 1 9 2018
                 DCCC LAW LIBRARY

Date response sent to inmate: ____
1. Original to file
2. Copy to Inmate/offender                              ODOC 090124D (R 9/16)

Request to Staff

DATE:       June 15, 2018

TO:         Porter, Glenn #99595
            Unit V Cell #203

FROM:       Janet Dowling, Warden

RE:         Request to Staff dated June 13, 2018.

Porter:

All inmates must be dressed in accordance with OP-030501 "Personal Hygiene and Appearance Code" section
IV. Personal Hygiene and Appearance Enforcement

A. Inmates are responsible for maintaining their personal hygiene and appearance.

1. Inmate appearance standards prohibit the sagging of pants, wearing clothing items that have holes in them as a style of dress, are extensively stained or the display of any security threat group identification.

2. Shirttails will be tucked in.

B. Relaxed appearance standards may be specified by the facility head for recreational activities such as ball games, during exercise periods and after work hours while on the unit. Conditions when appearance standards may be relaxed will be posted in appropriate areas.

C. Inmates will be dressed at all times except for approved shower times and bathroom use.

D. Disciplinary actions may be taken for violations of hygiene, safety and appearance regulations.

Your request to "stop the discrimination and equal protection violations of singling out transgender inmates" is granted. All inmates male and female are required follow the guidelines of the agency policy.

cc:    Randy Harding, Deputy Warden, Facility PREA Coordinator
       Aaron Peruskie, Chief of Security
       Daniel Owens, Unit Manager

AFFIDAVIT of Brandon Brady
Title 12 OK.STAT. 431

#647825

I Brandon Brady upon my OATh Certify
That I WAS told by A+C
Care Msr. That Miss Porter
#99595 WAS goin to be
Taken off HorMone TheraPy
due to Number of Grievances
Filed. This WAS in the Month
of June of 2018.

DATed - July 1st 2018

Declaration under Penalties of Persury

I, Brandon Brady #647825 Certify upon my oath and under
Penalty of Persury 28 usc 1746, and Title 12 ok.Stat. 426 the
Above declaration is True and Correct.

Dated July 1st 2018            _____ 647825

BRANDON BRADY
DCCC U/A 210
129 Conner rd.
Homing OK. 74035

AFFIANT

AFFIDAVIT of Miss Porter
with Respect To deliberate
Indifference to Future Health
and Safety / Serious medical
Need

I, Miss Glenn Porter, Plaintiff, Pro-se, Certify upon
my oath and under declaration of Penalty of Perjury 28 USC
1746, That on the 5th of Sept. 2018 Approx. 0900 am hours
I was having Serious Mental and Physical Issues with with-
drawal of Hormones and Suppressors, My Face is Breaking out
and I'm being Plagued with Hair due to Increased Testosterone
Levels. I Cut my wrist and had the C/o on unit Mrs. Mont-
calvo Call Medical I Was Crying openly, she sent me straight
to medical. I saw A.J. Williams and was Crying, Shook up
and Told Him I Needed help. He declined to help me in
any way. He said the one Person in the State that Can help
me has told me No. Patricia Jones, from another Facility-
J.H.C.C. I Told him she made demeaning references to my
Gender Status I was Masquerading As A Woman, and that
was Sexual Harrassment under PREC. ss 115.6 (2) and that A
Diagnosis Containing sexual Harrassing Demeaning references
to my Gender was Used to Withdraw my Hormone therapy and
I Was doing so good before this. He still refused to help me-
    I asked him to get me an outside Specialist to make a
Second opinion and he refused. I told him it was unconstit ion-
at To Withdraw my Hormones. Due to Maintenance of my second-
ary Sex Characteristics. He still refused to help me. Miss GP.

<u>Declaration under Penalty of Perjury</u>
I, Miss Porter, Plaintiff, Certify upon my oath and under
Penalty of Perjury, 28 USC 1746, the Foregoing is true and did
occur at DCCC, on Sept 5, 2018 Approx. 0900 hours Am.

Dated: Sept, 5th 2018

Miss Glenn Porter 99595
D.C.C.C / 29 Conner rd
Homing OK. 74035
AFFIANT / Plaintiff Prose

Porter, Glen 99595
V-163

AFFIDAVIT of Miss. Porter
With Respect To deliberate
Indifference to Future Health
and Safety / Serious medical
Need

    I, Miss Glenn Porter, Plaintiff, Pro - se, Certify Upon
My Oath and under declaration of Penalty of Perjury 28 USC
1746, That on the 5th of Sept. 2018 Approx. 0900 am hours
I Was having Serious Mental and Physical Issues With with-
drawal of Hormones and Suppressors, My Face is Breaking out
and I'm being Plagued with Hair due to Increased Testosterone
Levels. I Cut My Wrist and had the C/o on Unit Mrs. Mont-
Calvo Call Medical I Was Crying Openly, she sent me straight
to medical. I SAW A.J. Williams and Was Crying i Shook up
and Told Him I Needed help. He declined to help me in
Any WAY. He Said the one Person in the State that Can help
me has told me No. Patricia Jones, from another Facility -
J.H.C.C. I Told him She made demeaning references to My
Gender Status I WAS Masquerading As A Woman. and that
WAS Sexual Harrassment under PREA. ss 115.6 (2) and that A
Diasnosis Containing Sexual Harrassing Demeaning references
to my Gender Was Used to Withdraw My Hormone therapy and
I Was doing So Good before this. He still refused to help me-
    I asked him to get me an outside Specialist to make A
second Opinion and he refused. I Told him it WAS Unconstitu-
 at To Withdraw My Hormones. Due to Maintenance of My Second-
ary Sex Character'istics. He still refused to help me. Miss G.P.

    <u>Declaration under Penalty of Perjury</u>
    I, Miss Porter, Plaintiff, Certify Upon My Oath and Under
Penalty of Perjury, 28 USC 1746, the ForeGoing is true and did
occur at Dccc, on Sept.5, 2018 Approx. 0900 hours am.

Dated : Sept, 5th 2018

                       _Miss Glenn Porter_
                       Miss Glenn Porter 99595
                       D.C.C.C. 129 Conner rd
                       Homina Ok. 74035
                       AFFIANT/ Plaintiff Pro se

Porter, Glen 99595
V-103

# Misconduct/Grievance Appeal To Administrative Review Authority

Inmate Name: *Miss Glenn Porter*      DOC Number: *#099595*

Facility Where ~~Offense~~/(Grievance) Occurred: *DCCC*      Offense Code: *N/A*

Date of misconduct violation: *N/A*

RECEIVED
AUG 06 2018
DCCC LAW LIBRARY

☐ Facility Misconduct Appeal Number
*N/A*

☒ Facility Grievance Appeal Number
*D.C.C.C.-18-20*

I received the response of the reviewing authority at the facility on: *26 July 2018*

Fill out this form in blue or black ink. Writing must be legible. I wish to appeal the reviewing authority's response to the misconduct/grievance on the following ground(s) only. DO NOT ATTACH ANY OTHER PAGES. (Use ONLY the back side of this page, if necessary). Your appeal will be returned to you unanswered if any other pages are submitted.

☐ Newly discovered/available evidence not considered by the reviewing authority, relevant to the issue, necessary for a proper decision, and why the evidence was not previously available which if considered may alter the decision (you must clearly state the newly discovered/available evidence); or

☒ Probable error committed by the reviewing authority in the decision such as would be grounds for reversal (you must clearly state the error committed by the reviewing authority, including citing the part of procedures or statutes not followed by the reviewing authority).

ponse)     *EMERGENCY*

*in grievance D.C.C.C.-18-20, the Health Services Administrator Committee Error in denial of the Above Grievance and Request for Sex Reassignment Surgery. I AM A Transgender Female (documented). I'm A Woman And Male Genitalia is Not At All A Compatable feature to A Womans Perception of herself. I Am Very Embarrassed, Uncomfortable, Ashamed depressed and Cannot face living with A Mans Body. I'm female Michelle Cehnus denied My Request for (SRS) Citing An Evaluation over Please*

I understand that in accordance with OP-060125/OP-090124, I will be charged $2 to appeal a misconduct/grievance to the Administrative Review Authority or Chief Medical Officer, and that this form is also a request for disbursement of funds from my trust fund draw account. If I do not have enough funds to cover this cost, the amount will be collected as soon as funds become available.

*Miss Glenn Porter*
Signature of Inmate

*August 3rd 2018*
Date

DOC 060125V (R 4/17)

Clinical Conclusion indicates that I do not have Gender Dysphoria" —

However, on Approx the 4th of October 2016 At Lawton Correctional Center a psychiatrist, Dr. Lane, M.D. And Dr. Sam Mussallam M.D. diagnosed Me With Gender Dysphoria — The Dept of Veterans Affairs says I have Gender Identity Disorder Since Child hood • the M.D. Sam Mussalem on approx the 25th of oct. 2016, Wrote me A RX for Estradiol 2 mg and Aldactone. This Was All done by Grievances Beginning 25 Sept. 201 beginning as LCF-16-230. At the time the RX Was Written and leading up to that I Was in Serious distress, Confusion, Shame And An Underlying desire to Remove the Male stuff that is So disgusti to me. I do Not Want A Mans Body I M A female — 100% — Mrs. Jones diagnosis is incorrect And Placing Me in a Serious Risk of Harm an denies A Serious Medical Need, See: 8th and 14th Amend. U.S. C. I Would Point to Fields v. Smith, 712 F. Supp. 2d 820, Where the United States Courts of Appeals Relied on the Merck Manual holding that When Not properly treated GID Can Result in Significant psychological Distress, dysfunction, debilitating depress And for Some people, Self Mutilation, thoughts and Attempts of Suicide And deat See: Diagnostic, Statistical Manual Mental Disorders," George Brown, AutoCastratio and Auto Penectomy as Surgical Self Treatment in Incarcerated Persons wi GID; 12 International Journal of Transgenderism → The Risks Are Both Physi logical and psychological — Such as Auto Castration, depression and Suicid The only Way I have to Relieve the distress Was Hormones And I Li Is A Woman. Fields id. At p3.(6) At 27 "As A Result of the Disorder Some Male to female Individuals With GID Resort to Self Treatment With Hormones or i Some Cases Attempt their own Castration or penectomy — See D.S.M., in thes Cases, Suicide Attempts And Substance Related Disorders Are Common • The Literature in the field is REPLETE With Accounts of Individuals Who have take their own lives Because their GID Was Not Properly Assessed — and Treated • is Fields id At (10) As A Result of Being deprived of Hormone Therapy, Plaintiff Andrea Fields, Suffered from Nausea, muscle Weakness, loss of Appetite, Increased Hair growth And depression. D.O.C. is Aware of the emotional and physical distress that Will occur — The Experts Recognized to discontinue Hormones for Some Individuals Would Be Cruel and Irresponsi Also Fields id (1) holds that in DeLonta V. Angelone, 330 F. 3d At 630, A Male to fe Patient With GID Was Abruptly Banned from Hormone Therapy And developed an uncontrollable urge to Mutilate her genitals, DeLonta id. At 632, The Lack of Hor Therapy on patients With Severe GID, Especially one who Previously Received Tr ment Will Wreak Havoc on their Physical and Emotional state Which is neither Compensable Nor Speculative — By Mrs. Jones incorrect diagnosis where She only saw me less than 1 hour, and one time only and stopped my hormones after Almost 2 years and and Stopped My Hormones Placed me At Serious Risk of Ha and done. Please Help

Grievance Deci☐                    Reviewing Authority

| Inmate/Offender Name: | Glenn Porter | | ☐OC Number: | 99595 |

| | | Grievar | | |
| | | Catego☐ | | Grievance |
| Receipt Date: | 7/16/18 | Code: | | Number: | 18-20 |

| 1. Discrimination | 3. Complaint against staff | 5. Di☐ | ☐cess | 7. Medical | 9. Records/ Sentence Admin. |
| | | | Property/Trust | | |
| 2. Classification. | 4. Condition of confinement | 6. | ☐nd | 10. Religion | 11. Personal Identity |

**Decision:** OP-140147 'Management of G☐          ☐nconforming Inmates' Section II. B. states:
"Diagnosis of Gender Dysphor☐          ☐en confirmed by a qualified mental health
professional based on the diag☐          ☐iteria of the Diagnostic and Statistical
Manual of Mental Disorders"

OP-140147 'Management of G☐          ☐nconforming Inmates' Section IV. D. states:
"Surgical procedures for the in☐          ☐dvancement, or maintenance of sex
reassignment will not be perfor☐          ☐cept in extraordinary circumstances,
requiring recommendation fron☐          ☐, as well as authorization of both the chief
medical officer and the director

You were evaluated by Dr. Pat☐          ☐ones, Psy.D. Staff Psychologist on May 17,
2018. Her clinical conclusion i☐          ☐ that you do not currently have a diagnosis
of Gender Dysphoria; therefore☐          ☐ not meet criteria for surgical sex
reassignment as per OP-1401☐

Relief Denied.

_Michelle Lehnes_                              7-25-18
Reviewing Authority – Facility Health Services ☐     ☐dical Issues)   Date

Review Authority – Facility/District/Unit Head                Date
I have received a copy of the decision of the re☐          ☐uthority.

Signature of Grievant                                   2 6 July 1 8
                                                        Date
                                                        07-26-18
Signature of Staff Witness and Printed Name o☐          Date

You may appeal to the Administrative Review Authority or Pers☐          ARA at Department of Corrections, P.O. Box 11400, Oklahoma City, OK
73136-0400 or Medical ARA at 2901 N. Classen Blvd, Suite 200,☐          ☐y, OK 73106, within 15 days of the receipt of response using only DOC
Form 060125V entitled "Misconduct/Grievance Appeal To Admi☐          ☐iew Authority." Do not send this decision to the Administrative Review
Authority.

1. Original to file
2. Copy to inmate/offender

DOC 090124B (R 7/16)

INMATE/OFFENDER GRIEVANCE

Grievance no. _____

Grievance code: _____

Response due: _____

_____

**DO NOT WRITE ABOVE THIS LINE**

Date _11 July 2018_          Facility or District _D.C.C.C._

Name _Miss Glenn Porter_     Facility Housing Unit _V/A 203_
     (Print)

ODOC Number _#99595_         Date "Request to Staff" response received: _10 July 2018_

Have you previously submitted a grievance on this same issue? _N/A_  If yes, what date _N/A_ , facility
_N/A_ , grievance # _N/A_ .  You must submit this completed original within 15 days of the receipt of the
response to the "Request to Staff." The "Request to Staff" must have been submitted within 7 days of the incident.
Do not include/attach anything to this grievance except the "Request to Staff" including the response. You may
quote from or make reference to statutes, operations, field, or administrative memoranda, department publications
(time sheets, inventory forms, assessments, etc.). You will be permitted only one opportunity to correct any
error(s) made in submitting your grievance.

1.  The nature of your complaint. This statement must be specific as to the complaint, dates, places,
    personnel involved, and how you were affected. One issue or incident per grievance. Use backside of
    this page only, if necessary. _on 28th of June 2018 I WAS Told by Medical
    STAFF At D.C.C.C, That I didnt have Gender Dysphoria, Your Answer to the
    Attached Request to Staff is IN Error, I do have A DIAGNOSIS of Gender
    Dysphoria. MADE on 4th of oct. 2016. Its in My File by Drs. Lane And MUSSALAM.
    At Geo, I AM FEMALE And You Are Attempting to Force me To Live AS A MAN. Thats
    unacceptable, Very Embarrassing Stressfull And is Very depressing AS Well._

_P
I
A
R
A_

2.  Informal action taken (including dates) to resolve the complaint, as well as the names of those employees _over_
    from whom you sought an answer to your grievance. _① RTS 28th June 2018.
    ② RTS 6 Nov 2015; ③ Grievance # LCF-16-230, ④ RTS 29 Mar 2016!
    ⑤ Grievance to PIARA, May 5, 2016; ⑥ Amended Grievance 16-230 July 15 2016,
    ⑦ Grievance 4th April 2016 ⑧ RTS 22 July 2016, Grievance Amended to- 16-551
    by PIARA Granting Partial Relief, ⑨ Grievance RTS 16-551, 22 July 2016 ⑩ 11th Aug.,
    Grievance 16-551, ⑪ oct. 24, 16, Grievance 16-551 Med. Ser. Admin,
    ⑫ resubmitted LCF-16-551- Granting Relief Med. Services Administrator, O, P, O, C._

_D
O
C
U
M
E
N
T
E
D_

3.  The action you believe the reviewing authority may lawfully take.
                    _PROVidE SEX REASSIGNMENT
                    Sursery Used Amend, 8, 14
    Better read it ——> Del Lontay Angelone, 330 F.3d 634-35_

Grievance report sent to (warden/district supervisor/correctional health services administrator):
_Michelle Cehnus_                    _Health Services Admin._
Name                                 Title
_Miss Glenn Porter_                  _11 July 2018_
Signature of Grievant                Date Sent to Reviewing Authority

                    Dick Conner Correctional Center
                         Received
Original to file                                      DOC 090124A (R 7/16)
Copy to inmate/offender
                    JUL 16 2018

                    Medical

RECEIVED
JUL 0 2 2018
DCCC LAW LIBRARY

**Must Be Submitted Through the Law Library or Designee**
**Inmate/Offender Grievance Process**
**REQUEST TO STAFF**

TO: _Michelle Lehnus HSA_ FACILITY/DIST/UNIT: _DCCC_ DATE: _28 Jun 18_
(NAME AND TITLE OF STAFF MEMBER)

I have ____ have not _✗_ already submitted a "Request to Staff" or grievance on this same issue.
If yes, what date: ____✗____ facility: ____✗____ grievance #: ____✗____
I affirm that I do ___ do not _✗_ have a grievance pending on this issue.
I affirm that I do ___ do not _✗_ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number and court: ____✗____
This request ____ does ___ _✗_ does not relate to a pending misconduct report. If it does, this request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:** State completely, but briefly, the problem on which you desire assistance. This statement must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this being returned unanswered.

On 28 Jun 2018 I was told I didn't have Gender dysphoria And this is another Attempt to force me into A Male Gender Role I do Not Identify As A Male And Am in Constant Embarrassmen disgust and I Do Not Want to be in the Body of A Man The Assessment of Patricia Jones did not in Any way try to determine or ask me at all if I had Any Mental Stress daily in my Life

(USE OTHER SIDE IF MORE SPACE IS NEEDED. DO NOT ATTACH ADDITIONAL PAGES.)

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly should be done and how.

This decision places me at an Extreme Risk of Worsened depression Embarrassment mental Stress And I Am a female And Its Not Constitutional to force me to live in A male Gender body. Please Also Provide Sex Reassignment Surgery. USCA Amend 8/14 Field VI Smith, 712 F.Supp.2d, 830, Delonta VI Angelone, 330 F.3d 630.

NAME: _Miss Glenn Porter_ ODOC NUMBER: _99585_ UNIT & CELL NUMBER: _V/A 203_
(PRINT)

SIGNATURE: _Miss Glenn Porter_ WORK ASSIGNMENT: _V/A Pod orderly_

**DO NOT WRITE BELOW THIS LINE**

**DISPOSITION:**
You do not currently have a diagnosis of gender dysphoria, therefore, you do not meet criteria for gender sex reassignment

RECEIVED
JUL 1 0 2018
DCCC LAW LIBRARY

_Michelle Lehnus_                 7-6-18     Dick Conner Correctional Center
STAFF MEMBER                      DATE       Received
                                             JUL 0 2 2018
Date response sent to inmate: _____        ODOC 090124D (R 9/16)
Original to file                             Medical
Copy to Inmate/offender

Plaintiffs AFFIDAVIT of Grievances that [Failed to - Respond] within Time FRAMES IN Grievance Policy DOC OP 090124

I, MISS Glenn Porter, Plaintiff, Pro-se hereby Certify the Followins, UPON Her OATH and UNDER Penalty of Perjury 28 USC 1746, are True:

(1) - Jernisan v. Stuchell, 304 F.3d 1030 At 1032, holds When the Authorities Fail to Respond Within the Time Frames ConstRAINED Within the Grievance Policy it renders Remedy Un available and is Deemed Exhausted - fn(1) See Also: Foulk v. Charrier, 262 F.3d 687, 697,98;

(2) - Dilligent Attempts to Exhaust is Considered Exhausted.

_Withdrawal of Hormones_

(3) - on Ausust 6th 2018 Plaintiff, E-Mailed A Request to staff to Patricia Jones At Joseph Harp C.I.C. initiating Grievance Process: Def. Jones had 10 days to Answer and has Failed To Respond. Approx. 6 Sept. 2018 Plaintiff E-Mailed A Grievance to det. Jones for Failure to Respond. Both were E mailed Via DCCC LAW Library Supervisor. (Copies Are Appended) For (Withdrawl of Hormones) See: Foulk At id. 697,698. _Sex Reassignment-Surgery_

(4) - On Ausust 6th 2018 Plaintiff Via Prison Privilesed Mail System At DCCC LAW Library Mailed A Grievance to P.J. ARA, Cheif medical Director McCurdy. A Grievance for Failure to Respond was Mailed on or About Sept. 6 2018 Plaintiff, Also Filed Failure to Respond. grievances (Appended) RTS, Grievance Appeal to Facility and Form V Appeal to (PiARA Are Appended) For (Sex Reassisnment Sursery) Citins: Foulk v. Charrier, id. At 697-698.

_Declaration under Penalty of Perjury_

I MISS Porter Plaintiff Certify upon oath and under Penalty of Perjury, 28 USC 1746, the Foresoing is True.

Dated: 5 Sept. 2018

_Miss Glenn Porter_

MISS Glenn Porter 99595
DCCC U.4 103
129 Conner rd.
Hominy Ok. 74035

AFFIANT / Plaintiff

fn(1) Where Prison officials Prevent, thwart or Hinder a Prisoners efforts to Avail himself of An Administrative Remedy, [THEY RENDER - THAT REMEDY] "UN AVAILable" and A Court will Excuse Prisoners Fail- ure to Exhaust." Lyon v. Vande Krol, 305 F.3d 806 At 808 Citins: Foulk v. Crawier, 262 F.3d 687, 697-98, Jernisant At 1032.

Plaintiffs AFFIDAVIT of
Grievances that[Failed to-
Respond] within Time FRAMES
IN Grievance Policy DOC OP 090124

I, MISS Glenn Porter, Plaintiff, Pro-se hereby Certify the
Following, UPON Her OATH and UNDER Penalty of Perjury 28
USC 1746, are True?

(1) - Jernisan v. Stuchell, 304 F.3d 1030 At 1032, holds When the Authorities
Fail to Respond Within the Time Frames ConsTRAINED Within
the Grievance Policy it renders Remedy Un Available and is
Deemed Exhausted - fn(1) See Also: Foulk v. Charrier, 262 F.3d 687, 697,98;

(2) - Diligent Attempts to Exhaust is Considered Exhausted.

_Withdrawal of Hormones_

(3) - on August 6th 2018 Plaintiff, E-Mailed A Request to Staff
to Patricia Jones At Joseph Harp C.C. initiating Grievance
Process. Def. Jones had 10 days to Answer and has Failed
To Respond. Approx. 6 Sept. 2018 Plaintiff E-Mailed A
grievance to def. Jones for Failure to Respond. Both
Were E mailed Via DCCC LAW Library Supervisor.
(Copies Are Appended) For (Withdrawl of Hormones)
See: Foulk At id. 697, 698 _Sex Reassisnment-Sursery_

(4) - on August 6th 2018 Plaintiff Via Prison Privilesed Mail
System At DCCC LAW Library Mailed A Grievance to
P.I.ARA, Chief Medical Director McCurdy. A Grievance
for Failure to Respond WAS Mailed on or About Sept. 6 2018
Plaintiff, Also Filed Failure to Respond, grievances (Appended)
RTS, Grievance Appeal to Facility and Form V Appeal to
(P.I.ARA are Appended) For (Sex Reassisnment Sursery)
Cithns: Foulk v. Charrier, id. At 697-698

_Declaration under Penalty of Perjury_

I MISS Porter Plaintiff Certify upon oath and under
Penalty of Perjury, 28 USC 1746, the foregoing is True.

_Miss Glenn Porter_

Dated: 5 Sept. 2018

MISS Glenn Porter 99595
DCCC V.4 103
129 Conner rd.
Hominy Ok. 74035

AFFIANT / Plaintiff

fn(1)" Where Prison officials Prevent, Thwart or Hinder a Prisoners
efforts to Avail himself of An Administrative Remedy ,[THEY RENDER--
THAT REMEDY]"UN AVAILABLE", and A Court Will Excuse Prisoners Fail-
ure to Exhaust." Lyon v. Vande Krol , 305 F.3d 806 At 808
Citing: Foulk v. Charrier, 262 F3d 687, 697-98, Jernisant At 1032

OKLAHOMA DEPARTMENT OF CORRECTIONS
REQUEST FOR HEALTH SERVICES

**TO BE COMPLETED BY INMATE**   Facility: _DCCC_   Date: _8 AUG 18_

Inmate Name _Miss Glenn Porter_   ODOC # _44545_   Unit _U/A 103_

I request the following service(s): (Check appropriate box(s))

☐ Medical   ☒ Mental Health   ☐ Dental →   ☐ Optometry (eye)   ☐ Medication Renewal
(expired medications only)   _I Need to see A PSYCHIATRIST_

Reason for service: _IM hAving Serrous Mental/Emotional DISTRESS_
_from hAving Erections, Hair growth, Breaking out of My_
_skin due to them stoppin my Estrogen and suppressors, I_
_Am AFRAID, embarrassed this I believe is A Mental Health_
_issue, Please refer to A "PsychiATRIST" USCA 8, 14_

I understand that in accordance with operations memorandum OP-140117 entitled "Access to Health Care", I will be charged $4 for each medical service I request and a charge of $4 for each medication(s) dispensed to me, with the exceptions noted in the above-reference operations memorandum. There is no charge to the inmate for mental health services and/or mental health medications.

Inmate Signature _Miss Glenn Porter_   Date: _8-8-18_

**TO BE COMPLETED BY HEALTH SERVICES**

| Date Received | Initials |
|---|---|
| 8-11-18 | HL |

Comment: _you are scheduled with the psychiatrist 08-20-2018_

_Ashton Williams_   _08-13-2018_
RN/LPN/Health Care Provider Signature   Date

"Return the "Request for Health Services" with the disposition of the inmate's request in the comment section to the inmate after scanning into the inmate's EHR.

**NOTE:** All "Keep on Person" (KOP's) medication refill requests must be submitted to the facility's health services unit or to the medical host facility, using the "Medication Refill Slip" (DOC 140130M) "Medication Refill Slips" must be submitted within ten days of the date the medication expires or runs out.  "Medication Refill Slips" are readily available and accessible at designated locations within the facility.

ODOC 140117A
(R 5/17)

OKLAHOMA DEPARTMENT    CORRECTIONS
REQUEST FOR HEAL      SERVICES

TO BE COMPLETED BY OFFENDER     Facil    CF          Date: 10 OCT 17

Offender Name _Miss Glenn Porter_          DOC # 99595  Unit EC # 102

I request the following service(s): (Check appropriate box(s))

☒ Medical   ☐ Mental Health   ☐ Dental   ☐ Optometry (eye)   ☐ Medication Renewal
(expired medications only)

Reason for service: _Please Provide Sex Reasrisnment Surgery_
Kosilek v. Maloney,  ; Fields v. Smith, ; USCA Amend 8
221 F. Supp. 2d 156      712 F. Supp. 2d 830          Thank You
Phillips v. Michigan D.O.C;
731 F. Supp. 792       DeLonta v. Angelone,
330 F.3d 630

I understand that in accordance with operations memorandum OP-140117 entitled "Access to Health Care", I will be charged $4 for each medical service I request and a charge of $4 for each medication(s) dispensed to me, with the exceptions noted in the above-reference operations memorandum. There is no charge to the offender for mental health services and/or mental health medications.

Offender Signature _Ms. Glenn Porter_          Date: 10 Oct 17

TO BE COMPLETED BY HEALTH SERVICES      Date Received   Initials
OCT 1 2 2017    KB

Comment: Routine - you are Scheduled To See the Nurse

_____ LPN 10/12/17
Qualified Health Care Professional          Date

NOTE:  All "Keep on Person" (KOP's) medication refill requests must be submitted to the facility's health services unit or to the medical host facility, using the "Medication Refill Slip" (DOC 140130M). "Medication Refill Slips" must be submitted within ten days of the date the medication expires or runs out. "Medication Refill Slips" are readily available and accessible at designated locations within the facility.

DOC 140117A
(R 10/15)

OKLAHOMA DEPARTMENT OF CORRECTIONS
REQUEST FOR HEALTH SERVICES

Facility: DCCC          Date: 3 July 18

Miss Glenn Porter          DOC # 99595   Unit V/A 203

X          [ ] Health   [ ] Dental          [ ] Medication Renewal

Please Provide Sex ReAssignment
Surgery. Fields V. Smith, 712 F. Supp. 2d 830 I AM
Not Comfortable in A MANS body. Its Very Embarrassing
and disgusting. De'Lanta V. Anselone, 330 F.3d At 630
          initiating 140147          USCA Amend. 8,14

DOC 140117 entitled "Access to
Request and a charge of $4 for each
disclosed in the above-reference operations
health services and/or mental health

Miss Glenn Porter          Date: 3 July 18

TO RE          HEALTH SERVICES

Date Received          Initials

Date

OKLAHOMA DEPARTMENT OF CORRECTIONS
REQUEST FOR HEALTH SERVICES

TO BE COMPLETED BY INMATE     Facility: D.C.C.C.     Date: 28 Jun 18

Inmate Name: Miss Glenn Porter     ODOC # 949595   Unit: V/A 203

I request the following service(s):

X Medical   ☐ Mental Health   ☐ Dental   ☐ Optometry (a-e)   ☐ Medication Renewal
(expired medications only)

Reason for service: Please Provide Sex Reassignment
Surgery I Cannot Live As A Man. Fields v. Smith, 712 F. Sup,
2.d 830; De'Lonta V. Angelone, 330 F.3d 630; Kosilek v. Maloney, 221 F. Sup,
2d. 156; U.S. Const. Amend, 8, 14; '42 USC 1983

I understand that in accordance with operations memorandum OP-140117 entitled "Access to
Health Care", I will be charged $4 for each medical service I request and a charge of $4 for each
medication(s) dispensed to me, with the exceptions noted in the above-reference operations
memorandum. There is no charge to the inmate for mental health services and/or mental health
medications.

Inmate Signature: Miss Glenn Porter     Date: 28 Jun 2018

TO BE COMPLETED BY HEALTH SERVICES

Comment: Appt 7/16/18

Date Received: 6/30/18     Initials: ___

RN/LPN/Health Care Provider Signature     Date: 6/30/18

"Return the "Request for Health Services" with the disposition of the inmate's request in the comment section to
the inmate after scanning into the inmate's EHR.

NOTE: All "Keep on Person" (KOP's) medication refill requests must be submitted to the facility's
health services unit or to the medical host facility, using the "Medication Refill Slip" (DOC 140130M).
"Medication Refill Slips" must be submitted within ten days of the date the medication expires or runs
out. "Medication Refill Slips" are readily available and accessible at designated locations within the
facility.

ODOC 140117A
(R 5/17)

RECEIVED
JUL 02 2018
DCCC LAW LIBRARY

**Must Be Submitted Through the Law Library or Designee**
**Inmate/Offender Grievance Process**
**REQUEST TO STAFF**

TO: _Michelle Lehnus HSA_   FACILITY/DIST/UNIT: _DCCC_   DATE: _28Jun18_
(NAME AND TITLE OF STAFF MEMBER)

I have ____ have not _X_ already submitted a "Request to Staff" or grievance on this same issue.
If yes, what date: _____ facility: _____ grievance #: _____
I affirm that I do ____ do not _X_ have a grievance pending on this issue.
I affirm that I do ____ do not _X_ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number and court: _X_
This request ____ does _X_ does not relate to a pending misconduct report. If it does, this request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:** State completely, but briefly, the problem on which you desire assistance. This statement must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this being returned unanswered.

On 28 Jun 2018 I was told I didnt have Gender dysphoria
And this is another Attempt to force me into A Male Gender Role
I do Not Identify as A male And Am in Constant Embarrassment
disgust And I Do Not Want to be in the Body of A Man
The Assessment of Patricia Jones did not in Any way try to
determine or ask me at all if I had Any mental stress daily _in my Life_
(USE OTHER SIDE IF MORE SPACE IS NEEDED. DO NOT ATTACH ADDITIONAL PAGES.)

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly should be done and how.

This decision places me at an Extreme Risk of Worsened depression
Embarrassment mental stress And I Am a female And it's Not
Constitutional to force me to live in A Male Gender body. Please
Also Provides Sex Reassignment Surgery. USCA Amend 8/14 Fields V.
Smith, 712 F.supp 2d, 830, Delonta V. Angelone, 330 F.3d 630,

NAME: _Miss Glenn Portis_   ODOC NUMBER: _99595_   UNIT & CELL NUMBER: _V/A 203_
(PRINT)

SIGNATURE: _Miss Glenn Portis_   WORK ASSIGNMENT: _V/A Pod orderly_

**DO NOT WRITE BELOW THIS LINE**

DISPOSITION:
You do not currently have a diagnosis of gender dysphoria,
therefore, you do not meet criteria for gender sex reassignment

_Michelle Lehnus_
STAFF MEMBER

RECEIVED
JUL 10 2018
DCCC LAW LIBRARY

_7-6-18_   Dick Conner Correctional Center
DATE   Received
JUL 02 2018

Date response sent to inmate: _____
1. Original to file
2. Copy to Inmate/offender   ODOC 090124D (R 9/16)

OKLAHOMA DEPARTMENT OF CORRECTIONS
REQUEST FOR HEALTH SERVICES

TO BE COMPLETED BY INMATE    Facility: DCCC    Date: 7 AUG 18

Inmate Name: Miss Glenn Porter    ODOC # 991595    Unit VA R3

I request the following service(s): (check appropriate(s))

☐ Medical    ☒ Mental Health    ☐ Dental    ☐ Optometry (eye)    ☐ Medication Renewal
(expired medications only)

Reason for service: IM having Serious Hot Flashes, Erections Hair And Breaking out, ◦ USCA Amend. 8, 14, This is from STOPPing My EStrogen And Suppressors You are Violating the 8th Amend USc doing this To Me, IM having Nausea to

I understand that, in accordance with OP-140117 entitled "Access to Health Care", I will be charged $4 for each medical service I request and a charge of $4 for each medication(s) dispensed to me, with the exceptions noted in the above-reference operations memorandum. There is no charge to the inmate for mental health services and/or mental health medications.

Inmate Signature: Miss Glenn Porter    Date: 7 Aug 18

TO BE COMPLETED BY HEALTH SERVICES

Date Received: 8-08-18    Initials: W

Comment: Please Submit a SCR to medical Services to address your health Concerns.

Abraham Williams    08-08-2018
RN/LPN/Health Care Provider Signature    Date

"Return the "Request for Health Services" with the disposition of the inmate's request in the comment section to the inmate after scanning into the inmate's EHR.

NOTE: All "Keep on Person" (KOP's) medication refill requests must be submitted to the facility's health services unit or to the medical host facility, using the "Medication Refill Slip" (DOC 140130M). "Medication Refill Slips" must be submitted within ten days of the date the medication expires or runs out. "Medication Refill Slips" are readily available and accessible at designated locations within the facility.

ODOC 140117A
(R 5/17)

RECEIVED

JUL 0 2 2018

DCCC LAW LIBRARY

COPY

**Must Be Submitted Through the Law Library or Designee**
**Inmate/Offender Grievance Process**
**REQUEST TO STAFF**

DATE: 29 Jun 18

TO: _Michelle Lehmn HSA_   FACILITY/DIST/UNIT: _DCCC_
(NAME AND TITLE OF STAFF MEMBER)

I have _X_ have not____ already submitted a "Request to Staff" or grievance on this same issue.
If yes, what date: _28 Jun 2018_ facility: _DCCC_____ grievance #: _NA_
I affirm that I do ____ do not _X_ have a grievance pending on this issue.
I affirm that I do ____ do not _X_ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number and court: _Not At this time_
This request ____ does _X_ does not relate to a pending misconduct report.  If it does, this
request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:**   State completely, but briefly, the problem on which you desire assistance. This statement
must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One
issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this
being returned unanswered. _Please Forward to PLARA on Your Request for Reassess_
_Please Inform PLARA of HRSMT Violates 8th Amend._
_Please Inform PLARA My Hormone_
_on Approx. 28th June 2018, I was Told by Health Services My Hormone_
_Replacement therapy was to stop. As A result of Patricia Jones Diagnosis_
_5-18-2018 which Incorrectly said I did Not have Gender Dysphoria. To the_
_Contrary on 10-4-16 I was diagnosed with Extreme Gender Dysphoria_
_When Placed on Estradiol I did Immediately gain benefit. But I was_
_Not Cured, I Am Very Embarrassed, Ashamed & disgusted I Am Imprisoned_
_In A Male_
(USE OTHER SIDE IF MORE SPACE IS NEEDED. DO NOT ATTACH ADDITIONAL PAGES.)

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly ⟶
should be done and how. _Attempting to force Me to Live As A Male will_
_Make Prison officials are deliberately Indifferent if They_
_Place Me At A Serious Risk of future harm Stemming from G.D._
_Stopping my Hormones Violates the 8th Amend. USC And Equal Protection_
_USC Amend. 14, Your decision has Me totally Scarred. I been doin better,_
_Why are you doin this it's contrary to Sound Medical Judgement._

NAME: _Miss glenn Porter_   ODOC NUMBER: _49595_   UNIT & CELL NUMBER: _V/A Pod_ 109
         (PRINT)

SIGNATURE: _Miss Glenn Porter_   WORK ASSIGNMENT: _V/A Pod orderly_

**DO NOT WRITE BELOW THIS LINE**

DISPOSITION:

_____

_____

_____

_____

STAFF MEMBER                    DATE

Date response sent to inmate: _____

ODOC 090124D (R 9/16)

Body I Am disgusted And Very Embarrassed to have Male Genitalia & I'm disgusted With the Hair All over me and its Also Very Embarrassing to Me - I AM A fanatic to have Any Hair & shave from my head down 2 α's daily - I Can only Find Ways like Wearing make up And MAKing my face and dressing like the WOMAN I AM in Clothing that feminine to Alleviate the stress I go through daily, Even on Hormones - I'M seriously disgusted being in A Mans body And Almost All STAFF in DOC try to force Me to live in A Male Role, & Reject it And Cannot do it. it violates the Constitution when Prison STAFF Causes significant Injury, or un Necessary And Wanton Infliction of PAIN or by Exposing A Prisoner to A Substantial Risk of Future harm when the Prison officials denies the Prisoner Medical Treatment or offers Care that is So Incompetent it Amounts to No Care At All, Estelle V. Gamble, 429 US 97, 103, in Soneeya V. Spencer, 851 F.Supp.2d, 228, 248, holding: "Prison officials Are deliberately Indifferent, when they Fail to Remove or Place A Prisoner in A Serious Risk of Future Harm, stemming from Gid, stopping My Hormones is So Blatantly Inappropriate it is Evidence of Intentional Mistreatment And Torture And WANTON Infliction of PAIN And Exposes Me to A Serious Risk of Future Harm, And Likely To Seriously Aggravate My Medical Condition, see: Edwards V. Snyder, 478 F.3d At 831 - In Phillips V. Michigan dept of Corrections, 731 F.Supp, 792, 799 takins At 831 - In Phillips V. Michigan dept of Corrections, 731 F.Supp, 792, 799 takins measures which would Actually reverse the effects of Healing Medical Treatment is measureably Worse than Failing to provide Such Treatment in the 1st Place - citing DellonTa V. Angelone, 330 F.3d At 634-35, My Attempts to gain my Clothing and Cosmetics through grievances And I do have MANY show that even on Hormones I'M still trying to Find Ways to Lessen the degree of significant Embarrassment, disgust And Shame And stress of daily having to live In A Male body When I'm A WOMAN And I having been diagnosed in Oct. 2016 believe that this new diagnosis After 1½ years of Benefit from the Hormones Was Meant to Inflict Wanton PAIN and Expose Me to A Serious risk of Future Harm, Allard V Gomez, 9 F. App'x 793, 795 held its deliberate Indifference IF Transgender Prisoner is denied hormone Therapy, FiElds V. Smith, 653 F.3d At 557-58 held: Constitutes Facial Violation of 8th Amend. USCAAMEND 8, 14

*42 W.C. 15,601 ss 115.6, C.21*

## PREA COMPLAINT

*Refermed to Oklahomo OIC OIC*

**Must be Submitted Through the Law Library or Designee**

**Inmate/Offender Grievance Process**

*Chief medical Director* **REQUEST TO STAFF** *2901 Classes*

RECEIVED
SEP 0 4 2018
DCCC LAW LIBRARY

**TO:** Dr. Joel McCurdy   **FACILITY/DIST/UNIT:** DOC Admin   **DATE:** 29 Aug 18
(NAME AND TITLE OF STAFF MEMBER)

I have _X_ have not ____ already submitted a "Request to Staff" or grievance on this same issue.
If yes, what date: 29 Aug 2018 facility: SHCC/DCCC   grievance #: __N/A__
I affirm that I do ___ do not _X_ have a grievance pending on this issue.
I affirm that I do ___ do not _X_ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number and court: In Process of Initiating
This request _____ does _____ does not relate to a pending misconduct report. If it does, this request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:** State completely, but briefly, the problem on which you desire assistance. This statement must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this being returned unanswered. PREA PAPER WORK  28 CFR Part 115

Dr. McCurdy My Name is Miss Glenn Porter. Dr Patricia Junes May 17 2018 Clinical Conclusion (summary), states" RM Miseureording As A Woman."" that is a very demeaning Reference to My Gender. I'M A WOMAN 100%!? RM No DRAg Queen or PREtender." This Conclusion is A STATEMENT Constituting Sexual Abuse Harrasment under PREA 42 USC 15,601 ss 115.6 (2) And is Being Used (USE OTHER SIDE IF MORE SPACE IS NEEDED. DO NOT ATTACH ADDITIONAL PAGES.)

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly should be done and how.
Please stop This negligent Conclusion from Making A Victim of Me to This— Its A Demeaning Reference to My Gender Thats Being Used to Withdraw My Hormone Therapy, It Violates PREA 115.6(2) And the 8th Amend. 28 CFR Pd 24 115

**NAME:** Miss Glenn Porter   **ODOC NUMBER:** 99595   **UNIT & CELL NUMBER:** VA/03
(PRINT)

**SIGNATURE** Miss Glenn Porter   **WORK ASSIGNMENT:** ____

### DO NOT WRITE BELOW THIS LINE

**DISPOSITION:**
_____
_____
_____
_____
_____

**STAFF MEMBER** _____   **DATE** _____

Date response sent to inmate: _____
1. Original to file

ODOC 090124D (R 9/16)

A Statement, Letter on that Contains Sexual Harassment
Prohibited by PDREA, re: 115.16 (2) A demeaning reference
to my Gender is Being used to D.C. my Estrogen therapy
After Almost 2 years of What to me was A Real Wonderful
Benefit, that helped me unBelievably. Ive Been Healthy,
for once in my Life - And Able to Cope Somewhat - I have
Not done Any thing to have this happen to me Nor do I
deserve this. I'M Scared Now to death - I Cant
Live As A Man - And A demeaning reference, (that
I'M MASquerading As A WoMan) to My Gender is
Being used to Place me in A serious Risk of Immediate
Harm and irreparable Injury to my long term Health As
Well As Being used to Force Me to Live As A Man... Thats
Not Gonna Ever happen - This Action is Cruel Irresponse
Able And Places me At A serious Risk of Harm. All
Based on A BLATANT Statement Containing Sexual
Abuse/ Harrassment Prohibited by PDREA.

RECEIVED
AUG 06 2018
DCCC LAW LIBRARY

**Must Be Submitted Through the Law Library or Designee**
**Inmate/Offender Grievance Process**
**REQUEST TO STAFF**

TO: _Patricia Jones Md._ FACILITY/DIST/UNIT: _JHCC_ DATE: _6 Aug 2018_
(NAME AND TITLE OF STAFF MEMBER)

I have _X_ have not_____ already submitted a "Request to Staff" or grievance on this same issue.
If yes, what date: _15 July 18_ facility: _DCCC_ grievance #: _NA_
I affirm that I do ___ do not _X_ have a grievance pending on this issue.
I affirm that I do ___ do not _x_ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number and court: _Not yet?_
This request _____ does _X_ does not relate to a pending misconduct report. If it does, this request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:** State completely, but briefly, the problem on which you desire assistance. This statement must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this being returned unanswered.

_You have placed Me A Female in A Serious Risk of_
_Future Harm by Stopping my Estrogen. I've been Diagnosed_
_by Dr Lane And Dr. Mussalaam At Geo And McCurdy helped_
_with ft. See LCF-16230 - Amended -> LCF 16-551 PIARA_
_your Actions violate the 8th Amend. 14th Amend. USC_
_Fields V. Smith, 772 F. Supp 2d 630 Delanta V. Angelone 330 P3d 630._

(USE OTHER SIDE IF MORE SPACE IS NEEDED. DO NOT ATTACH ADDITIONAL PAGES.)

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly should be done and how.

_Stop Exposing me to A Risk of serious_
_Harm by Stopping my Estrogen Therapy. I Am Female_
_And Now in Serious Stress Embarrassment, depression_
_This Action Constitutes Deliberate Indifference._

NAME: _Miss Glenn Porter_ ODOC NUMBER: _99595_ UNIT & CELL NUMBER: _YA 103_
(PRINT)

SIGNATURE: _Miss Glenn Porter_ WORK ASSIGNMENT: _____

**DO NOT WRITE BELOW THIS LINE**

DISPOSITION: _____

_____

_____

_____

STAFF MEMBER _____ DATE _____

Date response sent to inmate:_____
1. Original to file

ODOC 090124D (R 9/16)

Nothing I tried tell me about was concerning Gender Dysphoria, A J Williams agreed. And I have statements from others you diagnose same day to same effect. You only saw me one time less than 45 min. and ate lunch part of that. I'm A female 100% And Now in serious confusion stress depression And Need Sex Reassignment Surger. I'm Not going to live in A MANS Body with MAle genitalia.



LEGAL!

Miss Glenn Potter 99595
DCCC VA 103
129 Conner rd.,
Kemming OK
74035

RECEIVED

SEP 1 0 2018

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

18 CV 472 JED - FHM

Postmarked
9/1/18 OC

Clerk
U.S. Court house
333 W. 4th St, rm
Tulsa OK - 74103

Hasler
09/07/2018
US POSTAGE   $09.85
ZIP 74035
011D11640252