## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**MISS GLENN PORTER,**

**Plaintiff,**

**v.**

**JOE ALLBAUGH,** *et al.,*

**Defendants.**

---

## DEFENDANTS ALLBAUGH, WILLIAMS, DOWLING, JONES, LEHNUS, WAGENER, AND MCCURDY'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

---

**JACQUELINE R. ZAMARRIPA, OBA#33647**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorney for Allbaugh, Williams, Dowling, Jones, Lehnus, Wagener and McCurdy*

**January 7, 2019**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ................................................................................................................ 1

STATEMENT OF THE CASE ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    Medical Care ............................................................................................................... 2

STANDARD OF DISMISSAL AND SUMMARY JUDGMENT ................................. 8

ARGUMENT AND AUTHORITIES ........................................................................... 11

PROPOSITION I:

    DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE NOT "PERSONS" WITHIN THE STATUTORY DEFINITION OF 42 U.S.C. §1983; THEREFORE, THEY CANNOT BE SUED FOR CIVIL RIGHTS VIOLATIONS ......................... 11

PROPOSITION II:

    PLAINTIFF FAILS TO STATE A CLAIM FOR A CONSTITUTIONAL VIOLATION ............................................................................................................... 12

    a.  Eighth Amendment ............................................................................................. 12

    i.     Plaintiff fails to show that Defendant Patricia Jones (Staff Psychologist) was deliberately indifferent to her medical needs ................................................ 13

    ii.    Plaintiff fails to show that Defendants Lehnus, Wagener and McCurdy were deliberately indifferent to her medical needs. .............…..………………… 16

    iii.   Plaintiff fails to show that Defendant Allbaugh, Williams, or Dowling were deliberately indifferent to her medical needs. …………………….…………..18

PROPOSITION III:

    DEFENDANTS DID NOT PERSONALLY PARTICIPATE IN THE ALLEGED VIOLATIONS

.................................................................................................................19

**PROPOSITION IV:**

**PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.** ...............................21

**PROPOSITION V:**

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY** ...........................22

**CONCLUSION** ................................................................................................................25

**CERTIFICATE OF SERVICE** ....................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Creighton,*
   483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Anderson v. Liberty Lobby,*
   477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Bennett v. Passic,*
   545 F.2d 1260 (10th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Brandon v. Holt,*
   469 U.S. 464 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Branson v. Price River Coal Co.,*
   853 F.2d 768 (10th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown v. Montoya,*
   662 F.3d 1152 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Conley v. Gibson,*
   355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Daniels v. Gilbreath,*
   668 F.2d 477 (10th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
   269 F.3d 1149 (10th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dubbs v. Head Start, Inc.*,
   336 F.3d 1194 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Duffield v. Jackson*,
   545 F.3d 1234 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Edelman v. Jordan*,
   415 U.S. 651 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*El'Amin v. Pearce*,
   750 F.2d 829 (10th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*England v. Hendricks*,
   880 F.2d 281 (10th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Estelle v. Gamble*,
   429 U.S. 97 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 24

*Farmer v. Brennan*,
   511 U.S. 825, 114 S.Ct. 1970 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 18

*Fisher v. Oklahoma Health Care Auth.*,
   335 F.3d 1175 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Foote v. Spiegel*,
   118 F.3d 1416 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gallagher v. Shelton*,
   587 F.3d 1063 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Garramone v. Roma*,
   94 F.3d 1446 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Gee v. Pacheco*,
    627 F.3d 1178 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gomes v. Wood*,
    451 F.3d 1122 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Green v. Branson*,
    108 F.3d 1296 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Green v. Mansour*,
    474 U.S. 64 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Grimsley v. MacKay*,
    93 F.3d 676 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Haines v. Kerner*,
    404 U.S. 519 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hall v. Witteman*,
    584 F.3d 859 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hannula v. City of*,
    907 F.2d 129 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hunt v. Uphoff*,
    199 F.3d 1220 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 18

*Hunter v. Bryant*,
    502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Johnson v. Stephan*,
    6 F.3d 691 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kay v. Bemis,*
500 F.3d 1214 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Matsushita Electric Industrial Co. v. Zenith Radio,*
475 U.S. 574 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McInerney v. King,*
791 F.3d 1224 (10th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Medina v. City and County of Denver,*
960 F.2d 1493 (10th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mitchell v. Forsyth,*
472 U.S. 511 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Morris v. Noe,*
672 F.3d 1185 (10th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Olsen v. Layton Hills Mall,*
312 F.3d 1304 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pearson v. Callahan,*
555 U.S. 223 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Richardson v. McKnight,*
521 U.S. 399 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Robbins v. State of Okla., et al.,*
519 F.2d 1242 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Robbins v. Oklahoma,*
519 F.3d 1242 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Roska ex rel. Roska v. Peterson,*
328 F.3d 1230 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Sealock v. Colorado,*
    218 F.3d 1205 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Serna v. Colorado Dept. of Corrections,*
    455 F.3d 1146 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Smart v. Villar,*
    547 F.2d 112 (10th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Sutton v. Utah State School for the Deaf & Blind,*
    173 F.3d 1226 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thorn v. Bristol-Myers Squibb Co.,*
    353 F.3d 848 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wilson v. Seiter,*
    501 U.S. 294 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*World of Sleep, Inc. v. La-Z-Boy Chair Co.,*
    756 F.2d 1467 (10th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Yoder v. Honeywell, Inc.,*
    104 F.3d 1215 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATUTES

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 19, 20

## RULES

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Federal Rule of Civil Procedure 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Rule 12(b)(6) of the Federal Rules of Civil Procedure. . . . . . . . . . . . . . . . . . . . . 1
Rule 56 of the Federal Rules of Civil Procedure. . . . . . . . . . . . . . . . . . . . . . . . . 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MISS GLEN PORTER              )
                                      )
                Plaintiff,          )
                                        )
vs.                                      )       **Case No. 18-CV-472-JED-FHM**
                                        )
JOE ALLBAUGH, *et al.,*          )
                                      )
                                      )
                Defendants.       )

**DEFENDANTS ALLBAUGH, WILLIAMS, DOWLING, JONES, LEHNUS, WAGENER,
AND MCCURDY'S MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT WITH BRIEF IN SUPPORT**

      **COME NOW** Defendants Joe Allbaugh, Greg Williams, Janet Dowling, Patricia Jones,

Michelle Lehnus, Betheny Wagener and Joel McCurdy, and respectfully move to dismiss this

action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reason that the

complaint on file herein fails to state a claim upon which relief can be granted. Alternatively,

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure. In support thereof, Defendants submit the following brief in support.

<u>**STATEMENT OF THE CASE**</u>

      Plaintiff Glenn Porter is an inmate in the custody of the Oklahoma Department of

Corrections ("DOC") serving a life sentence for first-degree murder at Dick Conner Correctional

Center ("DCCC"). Special Report, Doc. No. 25, Attachment 1.[1] Plaintiff self identifies as a

transgender female and commenced the instant action against these Defendants on September 10,

---

[1] All references to page numbers in the Special Report are to the Bates numbering at the bottom
of the Report.

2018. Doc. No. 1, Complaint; Doc. No. 2, Request for Emergency TRO. In her Complaint, Plaintiff alleges, inter alia, that Defendants were deliberately indifferent to her medical needs when her hormone therapy treatment was terminated once she was diagnosed with Schizotypal Personality Disorder, rather than a Gender Identity Disorder.

However, Plaintiff's claims must fail because Plaintiff fails to state a valid constitutional claim and because Defendants' actions were at all times proper. Plaintiff's Schizotypal Personality Disorder is based on recorded clinical observations, assessments, DOC record review, and a history of observed and documented behaviors across multiple environments. *See Confidential Psychological Report*, Special Report Doc. No. 25, Attachment 3, pp. 321-327. Accordingly, Plaintiff's Complaint and Emergency TRO must be denied. This brief relies upon the Court-ordered Special Report filed contemporaneously in this action at Doc. No. 25.

## STATEMENT OF FACTS

1. Plaintiff Glenn Porter was received into the custody of the Oklahoma Department of Corrections on February 4, 1999. She has been housed at several facilities, but relevant to the Complaint, she resided at the privately owned Lawton Correctional Facility ("LCF") from February 23, 2011 until her transfer to the privately owned Cimarron Correctional Facility ("CCF") on July 24, 2017. Special Report Doc No 25, Attachment 1, p. 13. She was then transferred to her current facility, Dick Conner Correctional Facility on January 4, 2018. *Id.*

### Medical Care

2. Throughout Plaintiff's medical records, it is reported that Plaintiff has skin legions, anemia and chronic liver disorders, along with Hepatitis B and C. Special Report, Doc. No. 25,

Att 2, pp. 21-275. Plaintiff continues to be seen and treated for her various medical ailments. *Id.*

3.  Throughout her medical records, it is also noted that every Request for Health Services made by Plaintiff was acknowledged and answered, notably her request for female undergarments, requests for medications, and requests for additional mental or medical appointments in addition to her scheduled monthly progress notes. Special Report, Doc. No. 25, Att. 3, pp. 279-310, 314-319, 328-332, 334-335, 337-339.

4.  Plaintiff has also refused and/or waived various medical treatments or appointments, such as her December 11, 2017 provider appointment to discuss her hormonal treatment, refusal to provide a urinary analysis, refusal for liver ultrasound to monitor her cirrhosis, and refusal for lab work *Id.* at pp. 313, 331, 333, and 336.

5.  On October 4, 2016, Plaintiff was seen by Dr. Stephen Lange for a Mental Status Evaluation to determine Plaintiff's capacity for medical decision-making. Doc. No. 25, Att. 2, p. 273.  Dr. Lange noted Plaintiff's prior diagnosis of Gender Identity Disorder, i.e., Gender Dysphoria and her assessment for Hormonal Treatment. *Id.*

6.  On October 5, 2016, Plaintiff was seen by Dr. Musallam for a progress note to discuss her Gender Identity Dysphoria. *Id.* at p. 272.  Dr. Musallam expressed concern as to whether the hormonal treatment is contraindicated with Plaintiff's Hepatitis C diagnosis. *Id.*

7.  On October 14, 2016, Plaintiff was seen by Dr. Daniel Edwards for a Mental Health progress session and treatment plan. *Id.* at pp. 269-270. Plaintiff reported no issues with medical staff or her current medication and Dr. Edwards noted that Plaintiff exhibited symptoms of a Personality Disorder, Depression, PTSD, and Anxiety. *Id.* at p. 269.

8.      On October 18, 2016, Dr. Musallam met with Plaintiff to discuss the pros and cons of Hormone Replacement Therapy. *Id.* at p. 268. Plaintiff was advised of any disqualifying conditions which may result in termination and/or disqualification of the ERT treatment. *Id.* Dr. Musallam noted that Plaintiff understood and was adequately informed to start hormone therapy. *Id.*

9.      On November 29, 2016, Plaintiff received DOC's Male/Female Hormonal Therapy Risk and Information Form. *Id.* at p. 260. The Information Form notes that "[s]ome people may be unable to take hormones due to other health concerns." *See* Special Report, Doc. No. 25, Att. 3, pp. 277-278.

10.     On December 8, 2016, Plaintiff was seen by Dr. Edwards for her monthly Mental Health Progress Note, where she reported that the hormone therapy was working and she felt more energetic. *Id.* at p. 258. Plaintiff reported no other issues. *Id.*

11.     On January 5, 2017, Plaintiff requested regular mental health sessions as she continued her transgender hormone treatments. *Id.* at pp. 251-252. Dr. Keith Crownover met with Plaintiff and noted she was void of psychotic characteristics but appeared paranoid, restless, anxious, and with variable delusions. *Id.*

12.     On February 9, 2017, Plaintiff seemed maniac or under the influence as she was very upset and went on, in great detail of events occurring more than three years ago during her Mental Health Progress Note with Dr. Crownover. *Id.* at p. 247.

13.     On July 20, 2017, Psychological Clinician Marcia Whitlock noted Plaintiff's anxiety, depressive disorder and Amphetamine Intoxication during her Mental Health Treatment Plan. *Id.* at p. 220.

14.      On July 24, 2017, an Intra-system transfer health screening and medical transfer summary was conducted for Plaintiff's transfer to the private CCF facility. *Id.* at pp. 213-218. CCF would continue Plaintiff's current plan of care as established and have Plaintiff follow up with the provider every three months. *Id.* at pp. 203-204. At this time, CCF also requested an order for a bra for Plaintiff. *Id.*

15.      On August 18, 2017, Plaintiff met with Dr. Stephen Gold for her Mental Health New Arrival Intake, where Dr. Gold noted her current diagnosis as: Gender Dysphoria, Depressive Disorder, Identity Disorder, Amphetamine Dependence, and Anxiety Disorder. *Id.* at pp. 195-196. Dr. Gold also noted that he was awaiting information on "Trans Gender psychology from Dr. Bloodgood with CoreCivic in Tenn[essee] who has considerable experience with this issue." *Id.*

16.      On September 13, 2017, Plaintiff was seen by Dr. Gold for her Mental Health follow up where she reported her depression, anxiety, anger and irritability regarding the confiscation of her "dolls" that she made approximately seven years ago. *Id.* at p. 182. Plaintiff reported these dolls were the only family she has, to which Dr. Gold discussed how these dolls were not family despite her attachment, questioned how good this attachment was for Plaintiff and educated Plaintiff on other coping mechanisms. *Id.* Plaintiff also reported to Dr. Gold a grievance she had filed requesting Psycho-Therapy every 30 days as was previously done at her prior facility. *Id.* This request was granted and psychotherapy would be initiated once a month. *Id.* Dr. Gold also noted an assessment of Plaintiff as "AXIS I: Depression, Anxiety, Gender Dysphoria" and "AXIS II: Borderline PD [Personality Disorder] with Antisocial traits." *Id.*

17.   On October 11, 2017, Plaintiff met with CNP provider Denise Beard, who noted Plaintiff's request for sex reassignment surgery and discussed with Plaintiff the risk of continuing her hormone therapy medication with her current Hepatitis C condition. *Id.* at p. 179.

18.   On October 12, 2017, Plaintiff requested sex reassignment surgery. *Id.* at p. 176.

19.   On October 30, 2017, Dr. Gold noted Plaintiff's "Cluster B traits" during Plaintiff's monthly Mental Health Progress Note. *Id.* at p. 166.  Plaintiff also requested an increase in hormones, therefore Ms. Beard requested a follow up with Dr. Paine to discuss increase in hormone therapy. *Id.*

20.   On December 14, 2017, Plaintiff reported that she does not feel her mental health medications are working and reported sleep issues. *Id.* at p. 136. Mental Health Coordinator Vicki Lewis noted she would continue to follow up with Plaintiff on a weekly basis. *Id.*

21.   On January 4, 2018, Plaintiff transferred to DCCC, therefore a Medical Transfer Summary and Intra-System Transfer Health Screening were conducted noting her medical and mental health treatment at CCF. *Id.* at pp. 111-131.

22.   On May 1, 2018, Staff Psychologist Patricia Jones evaluated Plaintiff "to document the presence or absence of the diagnostic criteria for Gender Dysphoria per the DSM-5, as well as any additional information relevant to the question of if it is in the best interest of [Plaintiff's] psychological health to provide hormone therapy." Special Report Doc. No. 25, Att. 3, pp. 321-327.  Chief Mental Health Officer, Janna Morgan, referred this case in March 2018.   Defendant Jones considered and reviewed all sources of information, including all electronic medical records, a field file review, clinical interviews and assessments of Plaintiff, as well as her relevant family, social, education, employment and relational history. *Id.* Plaintiff also underwent psychological testing, including a Mini-

Mental Status Exam, self-report assessments such as DSM-5, the Minnesota Multiphasic Personality Inventory-2, and Gender Identity/Gender Dysphoria Questionnaire for Adults and Adolescents. *Id.* Defendant, the evaluating psychologist, believed that Plaintiff "would benefit from mental health programing specifically to address his personality disorder, and the role social isolation play in his chronic sub-clinical anxiety and depression" … and while Plaintiff "may, or may not, be a transgendered individual, his tearfulness, high emotional states, anxiety, episodes of depression, substance use, and extreme difficulty in social situations are best explained by personality disorder and environmental impact, and not Gender Dysphoria." *Id.*

23.     Plaintiff reported anxiety and was seen for her monthly mental health appointment on May 17, 2018. *Id.* at p. 72. Dr. Abraham Williams confirmed the new diagnosis of Schizotypal Personality Disorder and noted "[f]urther Clinical Evaluation to provide adequate [treatment] plan required … Clinical Interview and Behavioral History suggest Schizotypal PD with depression as a sub-clinical byproduct of social introversion and isolation caused by the eccentricities and paranoia related to the PD." *Id.* Dr. Williams also notes that the diagnosis of Gender Identity/Dysphoria "[m]ay be related to suspected [personality disorder], or may be present with [personality disorder]. Not possible to confirm at this time due to significant underlying mental illness with pre-psychotic features." *Id.*

24.     On June 28, 2018, Plaintiff's diagnoses of Gender identity Disorder, Gender Dysphoria, Anxiety, and Depressive Disorder were rejected as relating to suspected personality disorder. *Id.* at p. 68. Plaintiff claimed she was not "willing to stop [her] hormone treatment," and discussed case law and legal action. *Id.* Dr. Williams noted Plaintiff had

an increased need for mental health services and in collaboration with the psychologist, Plaintiff's mental health level was increased from B to C1. *Id.*

25. On July 5, 2018, Plaintiff was seen by Dr. Williams for her monthly Mental Health progress note, to confirm the gradual decrease in hormone therapy medication and to discuss a PIARA (Personal Identity Administration Review Authority) meeting. *See Id.* at pp. 59-60; *see also* Special Report Doc. No. 25, Att. 6.

26. On July 10, 2018, the submitted request for PIARA was denied and Plaintiff's estrogen was decreased, but Defendant Wagener noted that they can continue the Aldactone. Special Report, Doc. No. 25, Att. 2, p. 57. Defendant Wagener also noted Plaintiff's evidence of cirrhosis due to her Hepatitis B and Hepatitis C. *Id.* Therefore, Defendant Wagener noted that DOC needed to "continue with cirrhosis work-up including screening for liver cancer with an ultrasound. Estrogen therapy is strictly contraindicated in anyone with cirrhosis." *Id.* This note was cosigned by the following people: Dr. Larry Bowler, Chief Mental Health Officer Janna Morgan, Psychologist Rickey Sparks, Dr. Joel McCurdy, CHS Michelle Lehnus, and Psych Clinician Abraham Williams. *Id.*

27. Plaintiff continued to be seen by Dr. Williams for her monthly Mental Health progress notes, wherein Plaintiff's anger and depression regarding her new diagnosis is noted and the clinician continues to advise and inform Plaintiff of the mental health decision and that therapy cannot resume unless the mental health decision is changed. *Id.* at pp. 23-30, 34-37, 41-42.

## STANDARD FOR DISMISSAL AND SUMMARY JUDGMENT

A complaint should be dismissed for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts in support that would entitle

him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing … entitle[ment] to relief." The required "short and plain statement" must provide "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), (overruled on other grounds, *Twombly*, 550 U.S. at 562-563)). In order to show an "entitlement to relief" a plaintiff must plead "more than labels and conclusions … ." *Twombly*, 550 U.S. at 555. The initial pleading must contain "[f]actual allegations [which are sufficient] to raise a right to relief above the speculative level." *Id.* In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face[ ]" not just conceivable. *Id.* at 570. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). Plaintiff must do more than make allegations of such a broad scope that they "encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247. Rather, plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* (quoting

*Twombly*, 550 U.S. at 565 n. 10). Plausibility does not mean "likely to be true," it means that the allegations must be enough that if assumed to be true the plaintiff plausibly, not merely speculatively, has a claim for relief. *Id*.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247 (1986). To survive a motion for summary judgment, the nonmovant must establish the existence of a genuine issue of material fact. To demonstrate a genuine issue of material fact in opposition to a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986); *Anderson,* 477 U.S. at 252.

Once the movant meets the initial burden, the party opposing summary judgment must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence" that dispute the material facts as set forth by the movant. *Thorn v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.,* 477 U.S. at 328). Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988). "The Court may only consider admissible evidence when ruling on a motion for summary judgment." *World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir. 1985). Hence, the inquiry on a motion for summary judgment is whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251-252.

Courts are required to construe pro se litigants' pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Even so, all parties must adhere to applicable procedural rules. *Kay v.*

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). "[A] *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). It is improper for a court to assume the role of advocate because a plaintiff is *pro se*. *Id.*

## ARGUMENT AND AUTHORITY

<u>PROPOSITION I:</u>     **DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE NOT "PERSONS" WITHIN THE STATUTORY DEFINITION OF 42 U.S.C. §1983; THEREFORE, THEY CANNOT BE SUED FOR CIVIL RIGHTS VIOLATIONS**

It is unclear whether Plaintiff is suing these Defendants in their official or individual capacities. However, to the extent that this lawsuit is brought against their official capacities, state officials are not "persons" under §1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[W]e reaffirm today what we had concluded prior to *Monell* and what some have considered implicit in *Quern*: that a state is not a person within the meaning of §1983."). An action for the violation of one's civil rights may be brought under 42 U.S.C. § 1983 against "[e]very person" who, acting under color of law, deprives someone of a right, privilege, or immunity guaranteed by the United States Constitution and federal laws. Because the state is the real party in interest when an official has been subjected to suit, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), a judgment in a §1983 suit against an official "in his official capacity" imposes liability against the entity that he represents. *Brandon v. Holt*, 469 U.S. 464, 472 (1985). While "state officials literally are persons," a suit against an official "is no different from a suit against the state itself." *Will*, 491 U.S. at 71 (citations omitted). As a result, an action for violations of constitutional rights cannot be maintained against them in their official capacities pursuant to 42 U.S.C. §1983 and such claims must be dismissed with prejudice.

**PROPOSITION II:  PLAINTIFF FAILS TO STATE A CLAIM FOR A CONSTITUTIONAL VIOLATION.**

To assert a claim under 42 U.S.C. § 1983, a plaintiff must show as a threshold matter (1) that a right secured by the Constitution and laws of the United States was violated and (2) that a person acting under color of state law deprived the plaintiff of the right. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). For reasons more fully set forth below, Plaintiff's claims against all defendants must fail as to Plaintiff's alleged deliberate indifference.

**A.  Eighth Amendment**

In her complaint, Plaintiff raises an Eighth Amendment deliberate indifference claim stemming from the discontinuation of her hormone replacement therapy. *See* Doc. No. 1, Complaint, at pp. 2-6. A prison official's constitutional liability for a deliberate indifference to serious medical needs claim contains both an objective and subjective component. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if Plaintiff can show that Defendant had disregard for a sufficiently serious medical need, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* The subjective component focuses on the state of mind of the state actor. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). This component is met if Plaintiff can show the prison official knew of and disregarded a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970 (1994). Mere negligence, or even gross negligence in diagnosis or treatment does not rise to a constitutional violation under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Additionally, a difference of opinion between the inmate and medical staff is not sufficient to be cruel and unusual punishment. *Id*. Simply stated, the court must ask whether: (a) the deprivation was

sufficiently serious; and (b) did the officials act or fail to act with a sufficiently culpable state of mind? *Wilson*, 501 U.S. at 298. Plaintiff's claims of deliberate indifference for all Defendants fail on both the objective and subjective components of the analysis.

> i. **Plaintiff fails to show that Defendant Patricia Jones (Staff Psychologist) was deliberately indifferent to her medical needs.**

The thrust of Plaintiff's claim appears to turn on Defendant Jones' evaluation and conclusion that Plaintiff's "tearfulness, high emotional states, anxiety, episodes of depression, substance use, and extreme difficulty in social situations are best explained by personality disorder and environmental impact, and not Gender Dysphoria." *See Confidential Psychological Report*, Special Report, Doc. No. 25, Att. 3, p. 321. Plaintiff was documented as having Gender Identity Disorder based on self-report on January 24, 2012 and again on August 4, 2017, but Defendant Jones concluded that Plaintiff's "verbalized incongruence between his experienced/expressed gender and anatomical gender may, or may not, be related to the personality disorder." Special Report, Doc. No. 25, Att. 3, pp. 321-327.

Objectively, Plaintiff must demonstrate that her illness or injury was sufficiently serious (e.g. diagnosed by medical staff as needing treatment or obvious to a lay person as such) and that prison officials disregarded her medical need. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002)(citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). Although Plaintiff's medical condition is sufficiently serious, Plaintiff's medical records make clear that she was consistently receiving treatment for all her medical needs, including monthly mental health progress notes and evaluations to treat her ongoing and evolving symptoms stemming from her various chronic illnesses. *See*, Special Report, Doc. No. 25, Att. 2 and 3. It is also notable that throughout Plaintiff's medical records, various doctors began documenting signs and symptoms

of a personality disorder as early as October of 2016. *See* Doc. No. 25, Att. 2, pp. 68, 72, 136, 166, 182, 247, 251-252, 269-270.

In Plaintiff's Complaint, she cites to the American Psychiatric Associations Diagnostic and Statistical Manual of Mental Disorders, and generalized information from ACLU and National Center for Lesbian Rights as evidence of Defendants, primarily Defendant Jones' deliberate indifference to her serious medical need. *See* Complaint, Doc. No. 1 at pp. 2-6. Ultimately, ODOC's policy provides that these medical decisions are within the *sole* province of the attending physician and are not countermanded by non-clinicians. *See* Special Report, Doc. No. 25, Att. 4, p. 342. Defendant Jones' determination of a Schizotypal Personality Disorder was based on numerous sources of information, including a review of "all electronic medical records available through the DOC, a field file review, a comprehensive review of [Plaintiff's] Offender Management System records, a clinical interview and assessment conducted in person with [Plaintiff], and psychological testing." *See* Special Report, Doc. No. 25, Att. 3 at pp. 321-327. Despite Plaintiff's contention that Defendant Jones only saw her for "less than 45 minutes and never [asked Plaintiff] anything about [her] Gender Dysphoria, Defendant Jones' Confidential Psychological Report details extensive testing, clinical observations, assessments and documented behaviors across multiple environments. *Id.* Therefore, Defendant Jones' evaluation confirming a personality disorder that has been documented extensively throughout Plaintiff's medical records does not implicate the Eighth Amendment. Indeed ODOC's policy provides that these medical decisions are within the sole province of the attending physician. *Id.* Further, it is well settled that a difference of opinion with the medical treatment provider fails to rise to the level of a constitutional violation. *El'Amin v. Pearce*, 750 F.2d 829 (10th Cir. 1984); *Jones v. McCracken*, 562 F.2d 22 (10th Cir. 1977). Therefore, as evidenced by Plaintiff's medical records, Plaintiff

cannot show that Defendant Jones disregarded her medical need by considering and reviewing extensive medical records to confirm Plaintiff's current diagnosis of Schizotypal Personality Disorder, which discontinues the hormone therapy treatment.

As to the subjective prong of the analysis, Plaintiff must show that prison officials knew of and disregarded a substantial risk of serious harm. *Farmer* at 842. Defendant Jones' Psychological Report details a careful review of Plaintiff's medical history, prior diagnoses, as well as in person assessments and clinical observations. Special Report, Doc. No. 25, Att. 3, pp. 321-327. The comprehensive evaluation, despite what Plaintiff alleges, was referred to Defendant Jones by the Chief Mental Health Officer to determine if it was in the best interest of Plaintiff's psychological health to provide hormone therapy. *Id.* at p. 321. Defendant Jones concluded that it was not, and that Plaintiff's prior diagnoses were "built on the presence of symptoms better explained by Personality Disorder, and Substance Use based on recorded clinical observations, assessments, record review, and history of observed and documented behaviors across multiple environments." *Id.* at p. 324. Defendant Jones further advised that when the medical staff determines a discontinuation of Hormone Treatment, that it was is in Plaintiff's best interest that "medical and mental health staff meet to consult on development of a formal behavior plan that will provide appropriate safety precautions in light of [Plaintiff's] history of emotional acting out." *Id.* at p. 327. Accordingly, nothing in Plaintiff's medical records indicates that Defendant Jones disregarded a substantial risk of serious harm to Plaintiff.

Plaintiff's allegation that Defendant Jones was deliberately indifferent to hierserious medical needs must fail because a mere difference of opinion over the adequacy of medical treatment provided cannot provide the basis for an Eighth Amendment claim. *El'Amin v. Pearce,* 750 F.2d 829 (10th Cir. 1984); *Jones v. McCracken,* 562 F.2d 22 (10th Cir. 1977); *Smart v. Villar,*

547 F.2d 112 (10th Cir. 1976). *See also Johnson v. Stephan,* 6 F.3d 691, 692 (10th Cir. 1993) (holding that any disagreement regarding a prisoner's diagnosis does not support a claim of cruel and unusual punishment). Defendant Jones' evaluation of Plaintiff's mental health was clearly an effort to protect Plaintiff and adequately treat her since Plaintiff continued to demonstrate symptoms of a personality disorder since October of 2016, which is documented throughout Plaintiff's medical records. *See generally*, Special Report, Doc. No. 25, Att. 2 and 3. Moreover, the negligent diagnosis or treatment of a medical condition or the accidental or inadvertent failure to provide medical care does not establish a medical wrong under the Eighth Amendment. *Estelle,* 429 U.S. at 105-106. *See also Daniels v. Gilbreath,* 668 F.2d 477, 487 (10th Cir. 1982) (holding that mere exposure to "an unreasonable risk of harm or simple negligence" does not constitute deliberate indifference). Defendant Jones' medical judgment did not amount to dismissing Plaintiff's medical condition, and Defendant Jones certainly does not disregard any excessive risks to Plaintiff's health and safety as alleged in Plaintiff's Complaint. Doc. No. 1 pp. 2-7. As such, Plaintiff's claims of deliberate indifference to her serious medical needs must fail against Defendant Jones.

    ii.    **Plaintiff fails to show that Defendants Lehnus, Wagener and McCurdy were deliberately indifferent to her medical needs.**

For similar reasons stated above, Defendants Lehnus (DOC CHSA), Wagener (DOC-PA-C) and McCurdy (DOC Doctor) were not deliberately indifferent to her medical needs when, based on Defendant Jones' evaluation, a determination was made by DOC medical staff to discontinue Plaintiff's hormone treatment. First, Plaintiff alleges that Defendant Wagener, a physician assistant, "stopped [her] hormones on an order only signed by [Defendant Wagener]" and that she is "not licensed to start or stop [her] hormones." Doc. No. 1, p. 3. The Special Report clearly contradicts this allegation, as numerous medical records are cosigned by DOC doctors, DOC's

Chief Mental Health Officer, DOC Psych Clinicians, RN's, Psychologists, and LPN's. *See generally,* Special Report, Doc. No. 25, Att. 2. Second, Plaintiff does not allege specific factual facts or allegations regarding Defendant Lehnus or Defendant McCurdy's actions to confirm a deliberate indifference claim. *See generally*, Doc. No. 1, Complaint. Rather, Plaintiff generally alleges that "prison officials deliberate indifferent to [her] serious medical needs…" places her in "a serious risk of harm and irreparable injury." *Id.* at p. 2. However, Plaintiff was and continues to be regularly seen by various medical and mental health providers. *See generally*, Doc. No. 25, Att. 2 at pp. 21-275. Therefore, these general allegations against DOC medical staff are legally insufficient to state an Eighth Amendment claim against Defendant Wagener, Lehnus and McCurdy.

Further, Plaintiff was repeatedly advised of the risk of continuing her hormone medication with her Hepatitis C condition, as the estrogen therapy was strictly contraindicated for anyone with cirrhosis. *See* Doc. No. 25, Att. 2, pp. 57, 179, 272, 268, 277-278. Plaintiff was made aware that there was a possibility that hormone therapy may stop due to other health conditions when she signed the Hormonal Therapy Risk and Information Form. *Id.,* Att. 3, at p. 277. Chief Mental Health Officer referred Plaintiff to Defendant Jones to evaluate and determine the best course of treatment in the interest of Plaintiff's mental health. *Id.* at p. 321. Ultimately, DOC's policy provides that medical decisions, such as a discontinuation of hormone treatment, are within the *sole* province of the attending physician and are not countermanded by non-clinicians. *See* Special Report, Doc. No. 25, Att. 4, p. 342. On May 17, 2018, Plaintiff's Psych Clinician, Abraham Williams, confirmed Defendant Jones' evaluation and determination of a personality disorder. Doc. No. 25, Att. 2, pp. 72-73. As a result, a Gender Dysphoria Forensic Mental Health Assessment was conducted and cosigned by Dr. Bowler, DOC Chief Mental Health Officer Janna Morgan,

Defendant Dr. McCurdy, Defendant Wagener, and Psych Clinician Abraham Williams the following day. *Id.* at p. 71. This Court's denial of Plaintiff's Complaint will uphold DOC's medical decision to best treat Plaintiff's mental health, which are within the sole province of the attending physician.

      iii.   **Plaintiff fails to show that Defendant Allbaugh, Williams, or Dowling were deliberately indifferent to her medical needs.**

Plaintiff's deliberate indifference claim against Defendants Allbaugh, Williams and Dowling, are even more tenuous than against the above-named defendants. As stated above, a plaintiff must show that the official "knew of a substantial risk of harm and failed to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d at 1224. Nowhere in Plaintiff's Complaint does she allege that Defendant Allbaugh, Williams, or Dowling had any knowledge whatsoever of Plaintiff's medical condition, let alone that these Defendants disregarded that risk as required by *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see generally* Doc. No. 1 at 2-7. In fact, Defendants Allbaugh, Williams, or Dowling are not named throughout Plaintiff's Eighth Amendment claim in her Complaint. Doc. No. 1. Rather, Plaintiff generally alleges that DOC medical staff were deliberately indifferent to her serious medical needs. *Id.* at 2-7. For the reasons set forth above, this Court should dismiss Plaintiff's Eighth Amendment claim against these Defendants as well.

To the extent these Court believes that any of the Defendants received knowledge through the grievance process, deliberate indifference requires knowledge of the underlying medical condition. Knowledge received through the grievance process is not enough for deliberate indifference. In *Howard v. Waide*, an inmate sued various prison officials for Eighth Amendment violations after other inmates sexually assaulted him. 534 F.3d 1227, 1229 (10th Cir. 2008). The Circuit Court held that the inmate failed to state a claim against a prison administrator who knew

significantly less information, and only received that information from the inmate's grievances. *Id*. at 1242-43. The Tenth Circuit said that the administrator only reviewed the grievances "in a bureaucratic vacuum far from the [prison]." *Id*. at 1243.

In this case, while administrators such as Williams and Dowling may have had generalized "knowledge" of Plaintiff's issues through the grievance process, it is, as the Tenth Circuit noted in *Howard*, knowledge gained in the bureaucratic vacuum, away from the facility. Rather than actual knowledge, administrators and the warden only had notice of Plaintiff's complaints, not on-the-ground cognizance of Plaintiff's medical conditions. Thus, any knowledge gained through the grievance procedure is insufficient to meet the deliberate indifference standard. This Court must therefore dismiss Plaintiff's Eighth Amendment claim against Defendants Allbaugh, Williams, and Dowling.

**PROPOSITION III:**      **DEFENDANTS DID NOT PERSONALLY PARTICIPATE IN THE ALLEGED VIOLATIONS.**

Plaintiff has not shown that these Defendants personally participated in any violations of her constitutional rights. As a general rule, "[i]ndividual liability under [42 U.S.C.] §1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).  A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151–52 (10th Cir. 2006).  Denial of grievances alone is not enough to establish an affirmative link and show personal

participation for §1983 purposes. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Also, liability cannot arise from supervisory status alone. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Instead, the supervisor's "exercise of control or direction, or his failure to supervise" must have an affirmative link to the constitutional violation. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).

Moreover, simple knowledge of a complaint through the grievance process does not create an affirmative link between a supervisor and the alleged constitutional violation. In *Stewart v. Beach*, an inmate claimed that the Kansas Department of Corrections violated his religious exercise rights by requiring him to cut his hair in order to transfer prisons. 701 F.3d 1322, 1325-26 (10th Cir. 2012). In the suit, the inmate claimed that the warden violated his rights by summarily denying the inmate's grievance appeal. *Id*. at 1328. The district court dismissed the claims against the warden, and the Tenth Circuit affirmed that decision. *Id*. at 1327, 1335. The Tenth Circuit noted that a denial of a grievance appeal, with nothing more, does not establish personal participation. *Id*. at 1328.

Additionally, a plaintiff alleging supervisory liability must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

In this case, Plaintiff has not met her burden when alleging that these Defendants interfered with her medical care and placed her in serious risk or harm by discontinuing her hormone therapy treatment. Further, Plaintiff has failed to allege any facts in her Complaint against Defendants Lehnus, McCurdy, Allbaugh, Williams or Dowling. As the Tenth Circuit explained in *Robbins v.*

*State of Okla., et al.*, 519 F.2d 1242 (10th Cir. 2008), in order to survive a motion to dismiss, it is important "that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against . . . [him], as distinguished from collective allegations against [defendants as a group]." *Id.* at 1250 (citations omitted) (emphasis in original). The facts alleged against Defendant Jones and Wagener are clearly contradicted by the Special Report, as comprehensive evaluations determined her appropriate diagnosis of a personality disorder. For these reasons, Plaintiff's factual allegations against Defendants Jones and Wagener do not sufficiently pled an affirmative link to any possible constitutional violations. This Court should dismiss Plaintiff's claims against these Defendants because she fails to show that these Defendant's conduct amounts to a constitutional violation, let alone that any Defendant personally participated in the underlying allegations.

**PROPOSITION IV:**       **PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.**

Plaintiff seeks injunctive relief in the form of an order requiring Defendants reinstate her hormone therapy treatment and order sex reassignment surgery. Doc. No. 1, p. 7. However, Plaintiff has failed to demonstrate entitlement to such relief. Specifically, to grant a permanent injunction, a district court must find that the movant has demonstrated: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing parties; and (4) the injunction, if issued, will not adversely affect the public interest. *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003). To obtain injunctive relief, the movant's right to the injunction must be clear and unequivocal. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

For reasons set forth at Propositions I-III, *supra,* Plaintiff has not demonstrated a strong likelihood of success on her deliberate indifference claims. Therefore, her request for injunctive relief must fail. Furthermore, in order to sustain a claim for injunctive relief against a public official, a plaintiff must show an ongoing constitutional violation. *Green v. Mansour*, 474 U.S. 64 (1985). Because Plaintiff has received medical care and there is no evidence that Defendants are violating her constitutional rights in an ongoing manner, Plaintiff's request for injunctive relief must fail.

## PROPOSITION V:      DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Individually named defendants are immune from Plaintiff's claims for damages under the doctrine of qualified immunity. Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McInerney v. King*, 791 F.3d 1224, 1230 (10th Cir. 2015). The purpose of this immunity is to "protect the public from unwarranted timidity on the part of public officials," "to ensure that talented candidates are not deterred by the threat of damages suits from entering public service," and to reduce "the chance that lawsuits will distract from the performance of public duties." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (internal quotation marks omitted) (quoting *Richardson v. McKnight*, 521 U.S. 399 (1997)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.").

A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to have been violated.

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Clearly established" is predicated on a finding that in light of pre-existing law the unlawfulness is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). It is effectively lost if a case is erroneously permitted to proceed to trial. *Hannula v. City of Blakely,* 907 F.2d 129, 130 (10th Cir. 1990).

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012).

Whether qualified immunity exists is a question of law to be decided by the trial court. *England v. Hendricks,* 880 F.2d 281, 283 (10th Cir. 1989). "To determine whether a plaintiff can overcome the qualified immunity defense, 'first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right.'" *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1239 (10th Cir. 2003) (quoting *Garramone v. Roma,* 94 F.3d 1446, 1449 (10th Cir. 1996)).

 "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992). *Accord, Roska,* 328 F.3d at 1248. The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand

that what they are doing violates that right. *Roska,* 328 F.3d at 1247 (citing *Anderson v. Creighton,* 483 U.S. 635 (1987)). "[T]he touchstone of [this] inquiry is whether the officers [were] on notice [that] their conduct [was] unlawful." *Id.* at 1248. (citations and quotations omitted). Thus, if the plaintiff has alleged a constitutional violation <u>and</u> has met his burden to establish that the law on the subject is clearly established, plaintiff must further show that a reasonable official would have known that his actions would violate clearly established law.

In this case, as laid out above, Plaintiff has failed to sufficiently allege that any of the Defendants violated her constitutional rights. But even so, Plaintiff still cannot demonstrate that the law was so clearly established that a reasonable person in any of the Defendants' positions would have known that their behavior violated her constitutional rights. Plaintiff's medical records show that Plaintiff's self-reported Gender Identity was treated with hormone therapy up and until Defendant Jones' evaluation of Plaintiff's mental health, and DOC's determination to discontinue the hormone therapy as a result of Defendant Jones' determination, along with the estrogen treatment being in contradiction of her Hepatitis C. Plaintiff continues to be monitored and treated by DOC doctors and mental health physicians and psychologists to treat Plaintiff's various ailments. *See generally*, Doc. No. 25, Att. 2, 21-275. As for the other prong of the qualified immunity analysis, whether a constitutional violation existed, to prevail on an Eighth Amendment cruel and unusual punishment claim based on deliberate indifference to serious medical needs, Plaintiff must show prison officials' actions or inactions caused unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97. 104, 94 S.Ct. 285 (1976). As more fully set out in Proposition I, Plaintiff cannot show that Defendants were deliberately indifferent to any serious medical needs. Without a constitutional violation, Plaintiff cannot overcome the qualified immunity defense. Even if Plaintiff did state a constitutional claim, all Defendants would still be

entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, Plaintiff's deliberate indifference claims must fail in their

entirety against these named Defendants.

Respectfully submitted,

/s/ Jacqueline R. Zamarripa
**JACQUELINE R. ZAMARRIPA,**
**CBA #304681**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  (405) 521-3921
Facsimile:  (405) 521-4518
Email:  Jackie.zamarripa@oag.ok.gov
*Attorney for Defendants Allbaugh, Williams,*
*Dowling, Jones, Lehnus, Wagener, and McCurdy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January 2019, a true and correct copy of the
foregoing document was sent via U.S. mail, postage prepaid to the following:

Glenn Porter, #99595
Dick Conner Correctional Center
129 Conner Rd.
Hominy, OK 74035
*Plaintiff Pro se*

/s/ Jacqueline R. Zamarripa
JACQUELINE R. ZAMARRIPA