# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MISS GLENN A. PORTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-0472-JED-FHM** |
| | ) | |
| **JOE ALLBAUGH, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Plaintiff, an inmate formerly incarcerated at the Dick Connor Correctional Center (DCCC) in Hominy, Oklahoma,[1] commenced this action on September 10, 2018, by filing a 42 U.S.C. § 1983 civil rights complaint (Doc. 1) and a motion for a temporary restraining order (TRO) and preliminary injunction (Doc. 2). Plaintiff appears *pro se* and *in forma pauperis*. Docs. 1, 4. Plaintiff identifies herself as a "pre-operative transgender female" and claims Defendants are violating the Eighth Amendment by failing to provide adequate health care. Doc. 1, at 3-6. She seeks preliminary and permanent injunctive relief that would require Defendants to provide her with hormone therapy and sex reassignment surgery. *Id.* at 7; Doc. 2, at 1-2.

Before the Court are the following motions: Plaintiff's motion for a TRO and preliminary injunction (Doc. 2), filed September 10, 2018; Plaintiff's motion to file an amended complaint and an amended motion for preliminary injunctive relief (Doc. 23), filed December 19, 2018; Plaintiff's motion to amend the complaint (Doc. 32), filed February 4, 2019; and Plaintiff's second motion for a TRO and preliminary injunction (Doc. 33), filed February 4, 2019.

---

[1] The record reflects that Plaintiff is currently incarcerated at the James Crabtree Correctional Center (JCCC) in Helena, Oklahoma. *See* Doc. 31, at 1.

As directed by the Court, Defendants submitted a special report (Doc. 25) on January 7, 2019, addressing the allegations in the complaint. Defendants also filed a motion to dismiss the complaint or, in the alternative, motion for summary judgment (Doc. 26). Plaintiff filed a response to the motion (Doc. 30), and Defendants filed a reply (Doc. 34). Defendants also filed a response (Doc. 37) in opposition to the second motion for a TRO and preliminary injunction, and Plaintiff filed a reply (Doc. 38).

For the reasons that follow, the Court orders stricken from the record Plaintiff's motion to amend (Doc. 23), filed December 19, 2018; declares moot Plaintiff's first motion for a TRO and preliminary injunction (Doc. 2); dismisses in part and denies in part Plaintiff's second motion for a TRO and preliminary injunction (Doc. 33); grants Plaintiff's motion to amend the complaint (Doc. 32), filed February 4, 2019; and dismisses without prejudice to refiling Defendants' motion to dismiss the complaint or, in the alternative, motion for summary judgment (Doc. 26).

## *BACKGROUND*

Plaintiff is currently serving a sentence of life with the possibility of parole plus a consecutive 20-year sentence following her convictions, in the District Court of Pottawatomie County, Case No. CRF-98-62, for first degree murder and larceny of a motor vehicle. Doc. 25-1, at 2.[2] Plaintiff has been in the custody of the Oklahoma Department of Corrections (ODOC) since 1999. *Id.* The ODOC identifies Plaintiff as a male. *Id.*; *see also* https://okoffender.doc.ok.gov (last visited March 25, 2019). Plaintiff, however, self-identifies as a transgender female. *See* Doc. 1 at

---

[2] For consistency, the Court's record citations refer to the document and page number identified in the CM/ECF header.

2. Plaintiff commenced this action on September 10, 2018, by filing a 42 U.S.C. § 1983 civil rights complaint (Doc. 1) and a motion for a TRO and preliminary injunction (Doc. 2).

Plaintiff alleges that she has had gender dysphoria[3] "since childhood," that the Department of Veterans Affairs diagnosed her with "extreme" gender dysphoria in 1980, and that she requested hormone therapy in 2013 while she was incarcerated at the Lawton Correctional Facility. Doc. 2, at 8, 11. On October 4, 2016, Dr. Lane, a psychiatrist, and Dr. Musallam, "assisted by" the ODOC's Chief Medical Director, Joel McCurdy, diagnosed Plaintiff with gender dysphoria and began treating her with female hormones. *Id.* at 3; Doc. 1, at 8-9. Plaintiff alleges that before she began hormone therapy, she "was at the point of attempting her own surgery." Doc. 2, at 3. After she began hormone therapy, she "got healthy," suffered less distress and anxiety, and began to feel more comfortable with her body as she developed female sex characteristics. *Id.* In March 2018, Abraham Williams, a psychiatric clinician at the DCCC, approved Plaintiff's request for female undergarments. Doc. 1, at 4, 19.

Plaintiff alleges, however, that following her transfer to the DCCC, Defendants have been deliberately indifferent to her serious medical needs as a transgendered individual, in violation of

---

[3] Plaintiff also refers to her condition as gender identity disorder. Doc. 2, at 11. Gender identity disorder, or gender dysphoria, "describes the psychological distress caused by identifying with the sex opposite to the one assigned at birth." *Lamb v. Norwood*, 899 F.3d 1159, 1161 (10th Cir. 2018) (alteration in original) (quoting Sven C. Mueller, et al., *Transgender Research in the 21st Century: A Selective Critical Review from a Neurocognitive Perspective*, 174 Am. J. Psychiatry 1155, 1155 (2017)); *see also Oakleaf v. Martinez*, 297 F. Supp. 3d 1221, 1224 (D. N.M. 2018) (discussing medical community's recognition of gender dysphoria as "a medical condition characterized by clinically significant distress resulting from the misalignment between a person's gender identity . . . and the sex the person was assigned at birth"). Current treatments for gender dysphoria include (1) social transition (i.e., dressing and grooming oneself as well as taking on gender roles consistent with one's gender identity), (2) hormone therapy, (3) sex reassignment surgery, and (4) psychotherapy. *Lamb*, 899 F.3d at 1161.

the Eighth Amendment. Doc. 1, at 2-6; Doc. 2, at 3-9, 11. According to Plaintiff, on May 17, 2018, Dr. Patricia Jones came to the DCCC from the Joseph Harp Correctional Center, made a "demeaning" statement that Plaintiff was "masquerading as a female," and concluded that Plaintiff does not have gender dysphoria. Doc. 2, at 3-4. As a result, Bethany Wagener, a physician's assistant, discontinued Plaintiff's hormone therapy. *Id.* at 4. Plaintiff alleges that the DCCC's medical staff are not "licensed or qualified" to correctly diagnose and treat her for gender dysphoria or to monitor her as she withdraws from hormone therapy. *Id.* at 9; *see also* Doc. 1, at 4. Plaintiff claims that Defendants' decision to discontinue her hormone therapy after "almost 2 years" has "plac[ed] Plaintiff at a serious risk of irreparable injury to her long term health." Doc. 2, at 4.

In addition, Plaintiff alleges Defendants violated her rights under the Eighth Amendment and the Equal Protection Clause (1) by "den[ying] psychotherapy by a psychologist every 30 days" because A.J. Williams, a social worker, is "not [q]ualified to provide psychotherapy," (2) by taking from her "a ragdoll and 3 teddy bears" she had previously been allowed to keep as therapeutic aids, and (3) by failing to provide her with female clothing and cosmetics—items she claims other ODOC facilities provide to transgender females. *Id.* at 4; Doc. 2, at 9. Plaintiff also alleges that no members of the DCCC medical staff are "[q]ualified or licensed to stop [her] hormones (or) monitor [her] during withdrawal." Doc. 1, at 4. Plaintiff claims that during withdrawal from hormone therapy, she has "experience[d] confusion, embarrassment, depression, [and] fear," and she "will likely" experience a loss of the physical "[b]enefit[s] obtained in the last 1 ½ years" from receiving female hormones. *Id.* at 5. Finally, she alleges Defendants have denied her repeated requests for sex reassignment surgery and have not allowed her to consult any surgical specialists outside of prison. *Id.* at 6.

As relief for these alleged constitutional violations, Plaintiff seeks (1) an emergency temporary restraining order (TRO) "restraining prison officials from stopping hormone therapy," (2) a preliminary and permanent injunction "enjoining prison officials from withdrawal of hormone therapy," and (3) an order directing prison officials to "provide sex reassignment surgery." *Id.* at 7. In her motion for preliminary injunctive relief, Plaintiff specifically asks this Court to "restrain[] [Defendants] from denying [her] hormone therapy at her last level/dose issued." Doc. 2, at 2.

By Order filed October 5, 2018, (Doc. 7), the Court directed service of the complaint and the motion for preliminary injunctive relief on Defendants, directed the agencies responsible for the alleged violations to prepare and submit a special report, and directed Defendants to answer or otherwise respond to Plaintiff's allegations within 60 days of service. After service of process, defense counsel entered an appearance on behalf of Defendants (Docs. 18, 37),[4] and the Court granted counsel's request for an extension of time to file the special report and answer or otherwise respond to the allegations in the complaint (Docs. 20, 21).

On December 19, 2018, Plaintiff moved for leave to amend her complaint and her motion for a TRO and preliminary injunction (Doc. 23) and submitted a proposed amended complaint (Doc. 23-1) and proposed amended motion for a TRO and preliminary injunction (Doc. 23-2). In the proposed amended complaint, Plaintiff seeks to add five additional defendants: Dr. Bowler,

---

[4] Plaintiff identified seven defendants in the caption of her complaint: Joe Allbaugh, Greg Williams, Janet Dowling, Patricia Jones, Michelle Lehnus, Bethany Wagener and Joel McCurdy. Doc. 1, at 1. In the body of the complaint, and in the caption of the motion for a TRO and preliminary injunction, Plaintiff identified an eighth defendant, A.J. Williams. *Id.* at 4; Doc. 2, at 1. Plaintiff provided service documents for all eight defendants, and the record reflects that all eight defendants were served. Docs. 9-16. Defense counsel initially entered an appearance only for the first seven defendants (Doc. 18), but subsequently entered an appearance on behalf of A.J. Williams (Doc. 37). In this Opinion, the Court refers to all eight defendants, collectively, as "Defendants."

Raymond Byrd, Mr. Enzy, Mr. Gillespie and Ms. Morris. Doc. 23-1, at 2. Plaintiff identifies Dr. Bowler as an officer or employee of the DCCC and the latter four additional defendants as "Core Civic Defendants" employed by the "CCA private prison in Cushion, OK."[5] *Id.* In Count I of the proposed amended complaint, Plaintiff reasserts her claim that Defendants, particularly Jones, Wagener, Lehnus, A.J. Williams and Dr. Bowler are violating the Eighth Amendment by denying her requests for reinstatement of hormone therapy and for sex reassignment surgery and by failing to correctly diagnose her with and provide adequate treatment for gender dysphoria. *Id.* at 4-9. In addition, she alleges the Defendants' decision to discontinue her hormone therapy may be an act of retaliation because she reported CCF officials for "conduct[ing] a [c]ross gender strip search prohibited by" the Prison Rape Elimination Act, 34 U.S.C. §§ 30301-30309, (PREA). *Id.* at 9-10.

Plaintiff's proposed amended complaint also seeks to add two new claims. In Count II of the proposed amended complaint, Plaintiff alleges she was subjected to two cross-gender strip searches, one at the CCF on July 24, 2017, and one at the DCCC on October 25, 2018. *Id.* at 11. She alleges both searches violated the PREA and the Eighth Amendment.[6] *Id.* In Count III, Plaintiff alleges "prison staff" at the CCF violated the Eighth Amendment by failing to protect her from another inmate who, she claims, raped her on three separate occasions in October and November 2017. *Id.* In the proposed amended complaint, Plaintiff seeks injunctive and declaratory relief as well as monetary damages for physical and emotional injuries resulting from the withdrawal of her hormone therapy, acts of retaliation by prison officials, and sexual assaults. *Id.* at 12.

---

[5] The Court understands Plaintiff's reference to a private prison in "Cushion, OK" as a reference to the Cimarron Correctional Facility (CCF) in Cushing, Oklahoma.

[6] Plaintiff also alleges the "GMVA" prohibits cross-gender strip searches. Doc. 23-1, at 11. But nothing in the amended complaint explains the source of this acronym.

Plaintiff's proposed amended motion for a TRO and preliminary injunction seeks the same relief as the original motion for preliminary injunctive relief—namely, reinstatement of her hormone therapy—but Plaintiff relies, in part, on one affidavit identified as "amended" that was not attached to the original motion. Doc. 23-2, at 2-3, 7.[7] In the "amended" affidavit, Plaintiff states that A.J. Williams and non-party Dr. Tromka, a psychiatrist, denied her requests for mental health care. *Id.* at 7.

Defendants did not file a response or otherwise object to Plaintiff's motion to amend the complaint and motion for preliminary injunctive relief. Instead, as directed by the Court, Defendants filed a special report (Doc. 25) on January 7, 2019. That same day, Defendants filed a motion to dismiss the complaint or, in the alternative, motion for summary judgment (Doc. 26). Defendants contend the complaint fails to state any claims upon which relief may be granted, Plaintiff is not entitled to preliminary or permanent injunctive relief, and all defendants sued in their individual capacities are entitled to judgment as a matter of law on the basis of qualified immunity. *See* Doc. 26, at 2-3. On January 23, 2019, Plaintiff filed a response (Doc. 30) in opposition to Defendants' motion. Defendants filed a reply (Doc. 34) on February 6, 2019.

Meanwhile, on February 4, 2019, Plaintiff filed a motion for appointment of counsel (Doc. 31), a motion to amend the complaint and a proposed amended complaint (Doc. 32), and a second motion for a TRO and preliminary injunction (Doc. 33), along with an "Exhibits Package."[8] The

_____

[7] In support of the amended motion, Plaintiff presents two affidavits: one from Plaintiff, dated September 4, 2018, which was attached to the original motion; and one from Plaintiff, dated October 18, 2018, which is marked "amended." Doc. 23-2, at 4-7.

[8] The Clerk of Court filed the "Exhibits Package" as part of the motion for a preliminary injunction. *See* Doc. 33, at 26-112. Given Plaintiff's *pro se* status, and for purposes of this Opinion
(continued...)

proposed amended complaint (Doc. 32), is nearly identical to the previously submitted proposed amended complaint (Doc. 23-1).[9] Defendants filed a response (Doc. 37) in opposition to the second motion for a TRO and preliminary injunction, and Plaintiff filed a reply (Doc. 38).

## *DISCUSSION*

### I.   **Plaintiff's motion to amend (Doc. 23), filed December 19, 2018**

The Court finds that Plaintiff's motion to amend (Doc. 23), filed December 19, 2018, should be stricken from the record.  By Order filed October 5, 2018 (Doc. 7), the Court directed the Clerk of Court to issue the summonses provided by Plaintiff, directed service of process, and directed Defendants to submit a special report and file an answer or dispositive motion within sixty (60) days of service.  In that Order, the Court stated that "[n]o other applications, motions or discovery shall be filed or considered until the steps set forth in this Order have been completed and an order entered," unless otherwise ordered by the Court.  Doc. 7, at 2.

On December 10, 2018, the Court granted Defendants' motions for an extension of time to file the special report and to respond to the complaint and established a filing deadline of January 7, 2019.  *See* Docs. 19, 20, 21.  On December 19, 2018, before Defendants' deadline expired, Plaintiff filed a motion for leave to amend the complaint and the motion for a TRO and preliminary injunction (Doc. 23).  Because Plaintiff filed this motion to amend before "the steps set forth in" the

---

[8](...continued)
and Order, the Court will consider those exhibits as submitted in support of both the motion for a preliminary injunction (Doc. 33) and the proposed amended complaint (Doc. 32).

[9] The proposed amended complaint, filed February 4, 2019, omits page 4.  It also relies on additional supporting documents that are included in the "Exhibits Package" but that were not attached to the proposed amended complaint filed December 19, 2018.  It is otherwise identical to the proposed amended complaint filed December 19, 2018.

Order directing Defendants to submit a special report and file a responsive pleading had "been completed and an order entered," *see* Doc. 7, at 2, the Court finds that the motion to amend (Doc. 23) shall not be considered and orders that motion to be stricken from the record.

## II.    Plaintiff's motions for a TRO and preliminary injunction (Docs. 2, 33)

Plaintiff has filed two motions seeking a TRO and preliminary injunction that would require Defendants to reinstate her "hormone therapy at her last level/dose issued." Doc. 2, at 2; Doc. 33, at 3. Defendants filed a response (Doc. 37) to the second motion, and Plaintiff filed a reply (Doc. 38). Having reviewed both motions, the Court finds that they seek the same relief, but the second motion relies on additional attachments and exhibits. Because the second motion is more comprehensive and the Court has the benefit of full briefing from the parties only as to the second motion, the Court declares moot Plaintiff's first motion for a TRO and preliminary injunction (Doc. 2). In addition, because Defendants have responded to the second motion, the Court will adjudicate Plaintiff's second motion for a TRO and preliminary injunction, as one seeking a preliminary injunction.[10]

---

[10] Unlike a preliminary injunction, a TRO may be issued without notice to the adverse party and is limited in duration. *See* Fed. R. Civ. P. 65; *Firebird Structures, LCC v. United Bhd. of Carpenters and Joiners of Am., Local Union No. 1505*, 252 F. Supp. 3d 1132, 1156 (D. N.M. 2017). But the requirements for issuing either form of relief are essentially the same. *Id.* Here, because all defendants identified in the second motion for a TRO and preliminary injunction have been served, *see* Docs. 9-16, and have responded to the motion (Doc. 37), the Court will adjudicate the motion as one seeking a preliminary injunction. *See Stephens v. Jones*, 494 F. App'x 906, 909-10 (10th Cir. 2012) (unpublished) (noting with approval district court's finding that defendant's response "mooted" plaintiff's motion for a TRO). In doing so, the Court will assume the truth of Plaintiff's allegations, thus obviating the need for an evidentiary hearing. *See Pinson v. Pacheco*, 424 F. App'x, 749, 756 (10th Cir. 2011) (unpublished) (concluding district court did not abuse its discretion by failing to hold a hearing on motion for preliminary injunction where court assumed truth of plaintiff's allegations). Furthermore, the Court notes that, in light of her recent transfer to the JCCC, Plaintiff's claims for prospective injunctive relief against the DCCC officials, Defendants Dowling,

(continued...)

To obtain a preliminary injunction, the moving party must establish "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). The primary purpose of granting preliminary relief "is to preserve the pre-trial status quo." *Id.* As a result, three types of injunctions are generally disfavored: (1) those that alter the status quo, (2) those that are "mandatory as opposed to prohibitory," and (3) those that provide the movant "substantially all the relief he may recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (*en banc*) (*per curiam*) (quoting *SCFC ILC, Inc. v Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991)). Whether disfavored or not, "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). And, when a movant seeks a "disfavored" preliminary injunction, the movant "must make a heightened showing of the four factors" to obtain relief. *RoDa Drilling Co.*, 552 F.3d at 1209.

Plaintiff alleges that Defendants discontinued her hormone therapy sometime after Dr. Jones's May 17, 2018 assessment. Doc. 1, at 3; Doc. 33, at 4-5. Plaintiff's medical records show that medical staff discontinued Plaintiff's estrogen therapy in July 2018. Doc. 28-1, at 38; Doc. 29-1, at 53-55. But this does not mean that Plaintiff seeks to alter the status quo. For purposes of a

---

[10](...continued)

Lehnus, Wagener and A.J. Williams are moot. *See Stephens*, 494 F. App'x 906, 910-11 (noting that plaintiff's transfer to a different prison facility mooted plaintiff's claim against former facility's warden for denial of access to legal materials). Accordingly, the Court dismisses the second motion for a preliminary injunction as to these defendants.

preliminary injunction, "the status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.'" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001)).  In this case, the controversy arose when Defendants discontinued Plaintiff's hormone therapy.  Thus, in reality, Plaintiff seeks to preserve the status quo, i.e., the last uncontested status, by seeking reinstatement of her hormone therapy.  Nonetheless, an order directing Defendants to reinstate Plaintiff's hormone therapy would be a disfavored mandatory preliminary injunction.  *See id.* at 1261 (explaining that "an injunction is mandatory if the requested relief 'affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction'" (alterations and ellipsis in original) (quoting *SCFC ILC, Inc.*, 936 F.2d at 1099).  As a result, Plaintiff bears a "heightened burden" to establish the four prerequisites for a preliminary injunction.  *RoDa Drilling Co.*, 552 F.3d at 1209.  And the Court must "more closely scrutinize[]" Plaintiff's motion "to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 975.

Having closely scrutinized Plaintiff's motion, the Court finds Plaintiff fails to make the requisite showings to obtain preliminary injunctive relief against Defendants Allbaugh, Greg Williams, Jones and McCurdy.

### A.     Likelihood of success on the merits

Plaintiff claims Defendants, particularly Jones and Wagener, violated her Eighth Amendment right to adequate medical care by reversing her gender dysphoria diagnosis,

discontinuing her hormone therapy, denying her request for sex reassignment surgery, and generally failing to provide gender affirming medical care.  Doc. 33, at 4-6; Doc. 38, at 2.

Under the Eighth Amendment, prison officials must, *inter alia*, "ensure that inmates receive adequate . . . medical care."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  To establish an Eighth Amendment violation, an inmate must show that prison officials acted with "deliberate indifference to [the inmate's] serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "A medical need is considered sufficiently serious . . . if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).  A prison official acts with the requisite state of mind, i.e., deliberate indifference, if the official "act[s] or fail[s] to act despite [the official's] knowledge of a substantial risk of serious harm" to the inmate's health.  *Farmer*, 511 U.S. at 842. Notably, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  Not even a "negligent diagnosis or treatment of a medical condition" is sufficient to establish "a medical wrong under the Eighth Amendment."  *Id.* (citing *Gamble*, 429 U.S. at 105-06).

In this case, Plaintiff alleges that she has had gender dysphoria "since childhood," that the Department of Veteran's Affairs diagnosed her with "extreme" gender dysphoria in 1980, and that two doctors at the LCF diagnosed her with gender dysphoria in October 2016.  Doc. 33, at 7, 11. Plaintiff began receiving female hormones as a result of the 2016 diagnosis.  *Id.* at 4-5.  According to Plaintiff, hormone therapy has been "life saving."  *Id.* at 4.  However, in May 2018, Dr. Jones

reevaluated Plaintiff and determined that Plaintiff does not have gender dysphoria. *Id.* at 5. Based on Jones's conclusion, Wagener stopped Plaintiff's estrogen therapy. *Id.* Plaintiff alleges Jones's reversal of her diagnosis is incorrect and rests on an inadequate assessment of Plaintiff's condition. *See id.* at 33 ("Patricia Jones said 'she couldn't tell if I was transgendered' if she don't know that I'm a woman, she sure can't tell if I have gender identity disorder."); Doc. 1, at 29 (describing Jones's diagnosis as "incorrect"); *id.* at 3 (alleging Jones's diagnostic assessment lasted "less than 45 minutes" and Jones asked Plaintiff no questions about her gender dysphoria).

Plaintiff's allegations make clear that she (1) identifies herself as someone with gender dysphoria, (2) has previously been diagnosed with gender dysphoria by some prison officials, (3) feels that she obtained both mental and physical health benefits by receiving hormone therapy for nearly two years, and (4) strongly disagrees with Jones's determination that Plaintiff does not have gender dysphoria. However, for four reasons, the Court finds Plaintiff's allegations, accepted as true, are insufficient to show that Plaintiff is substantially likely to prevail on the merits of her Eighth Amendment deliberate-indifference claim.

First, in the absence of a current diagnosis for gender dysphoria, Plaintiff cannot show that Defendants are violating the Eighth Amendment by failing to continue her hormone treatments. *See Al-Turki*, 762 F.3d at 1192-93 (noting a sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment); *Oakleaf*, 297 F. Supp. 3d at 1225, 1230-31 (D. N.M. 2018) (acknowledging hormone therapy as one type of treatment for gender dysphoria but concluding plaintiff could not establish prison officials were deliberately indifferent by refusing to treat her for gender dysphoria when evidence supported that prison's medical staff determined

plaintiff did not have gender dysphoria and continued to provide other treatments to address plaintiff's psychological needs).

Second, Plaintiff's disagreement either with Jones's reversal of her gender dysphoria diagnosis or with Wagener's subsequent discontinuation of her hormone therapy, does not support an Eighth Amendment violation. *Ramos*, 639 F.2d at 575.

Third, even if Jones's reversal of Plaintiff's gender dysphoria diagnosis rests on an inadequate or negligent assessment of Plaintiff's condition, medical negligence does not "constitute a medical wrong under the Eighth Amendment." *Id.*

Fourth, and finally, even if Plaintiff has gender dysphoria, Defendants' decision to discontinue her hormone therapy does not necessarily demonstrate deliberate indifference to a serious medical need. In *Supre v. Ricketts*, 792 F.2d 958, 959, 963 (10th Cir. 1986), the United States Court of Appeals for the Tenth Circuit rejected a claim that prison officials acted with deliberate indifference by failing to provide estrogen therapy to an inmate diagnosed with gender dysphoria. In doing so, the court noted disagreement within the medical community on how best to treat gender dysphoria and found that "the Department of Corrections made an informed judgment as to the appropriate form of treatment and did not deliberately ignore plaintiff's medical needs" by denying the plaintiff's request for hormone therapy. *Id.* at 963. More recently, the Tenth Circuit Court of Appeals considered and rejected a plaintiff's argument that "*Supre* is too old to provide guidance because it rested on outdated medical assumptions." *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018). The court concluded in *Lamb* that even if it were to reconsider its "earlier medical assumptions," *Supre*'s analytical framework remains good law. *Id.* Applying that framework, the court further concluded that prison officials' decisions to treat the plaintiff's gender

dysphoria with hormone therapy at lower doses than the plaintiff desired and to deny the plaintiff's request for sex reassignment surgery did not violate the Eighth Amendment. *Id.* at 1162-63. *Lamb*'s conclusion exemplifies the general principle "that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants." *Id.* at 1162 (citing *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999)). Here, Plaintiff generally alleges the DCCC's medical staff is not qualified to diagnose or treat her for gender dysphoria. Doc. 1, at 4; Doc. 33, at 11, 43-44. But she does not allege that Defendants have simply refused to provide any treatment.[11] In light of *Supre* and *Lamb*, even if Plaintiff has gender dysphoria and prefers hormone therapy over other treatments, Defendants' decision to stop her hormone treatments and provide different treatment methods would not establish an Eighth Amendment violation.

For these reasons, the Court finds that Plaintiff fails to make a strong showing that she is substantially likely to succeed on the merits of her Eighth Amendment claim.

### B.      Irreparable harm

Plaintiff alleges she faces "a serious risk of irreparable injury to her long term health" based on the withdrawal of hormone therapy after "almost 2 years into transition." Doc. 33, at 5. In support, Plaintiff cites several cases recognizing that individuals diagnosed with gender dysphoria

---

[11] Plaintiff alleges in her complaint that Defendants (1) have "denied psychotherapy by a psychologist" because her social worker, A.J. Williams is "not qualified to provide psychotherapy," (2) have taken away therapeutic aids she used before her transfer to the DCCC, and (3) have not provided her with female clothing (other than female undergarments) or cosmetics. Doc. 1, at 4. But even these allegations show that DCCC officials provided some forms of treatment and suggest that Plaintiff disagrees with those treatment decisions. As discussed, Plaintiff's disagreement with Defendants' treatment decisions does not establish a constitutional violation. *Lamb*, 899 F.3d at 1162; *Ramos*, 639 F.2d at 575. Moreover, as previously noted, *see supra* n.10, any claims for prospective injunctive relief against DCCC officials were mooted by Plaintiff's recent transfer.

who are denied hormone therapy may attempt suicide or resort to self-treatment, including castration. *Id.* at 5-6. She also alleges that after Defendants discontinued her hormone therapy, she has become "withdrawn," she is "disgusted again with male body parts" and hair growth, she is at risk of losing the benefits she has gained through hormone treatments, and she has thoughts of "just ending this helpless situation." *Id.* at 11, 43-44. On September 5, 2018, during a visit to the medical unit, Plaintiff "fell apart" and "told them [she] cut [her] wrist and didn't want to live." *Id.* at 44.

Plaintiff's allegations are troubling, particularly her reports of self-harm. But "[t]o constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (quoting *Prairie Band Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)). A plaintiff seeking a preliminary injunction "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier*, 427 F.3d at 1267 (quoting *Heideman*, 348 F.3d at 1189).

Plaintiff's allegations of suicidal thoughts and self-harm are sufficiently serious and substantial to support her claim that she faces a risk of irreparable harm. *See Prairie Band Potawatomi Indians*, 253 F.3d at 1250 (noting that irreparable harm cannot be remedied by and award of monetary damages or following a final determination on the merits). But other allegations in Plaintiff's motion and supporting documents suggest Plaintiff's risk of irreparable harm is neither certain nor imminent. *See Greater Yellowstone Coal.*, 321 F.3d at 1258 (holding "that a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative"). For example, Plaintiff alleges she has experienced anxiety and distress with her body

"since childhood," and that she has contemplated suicide and had "thoughts … of trying to do [her] own surgery" for at least the "last 10 years." Doc. 33, at 43. Yet, Plaintiff's only allegation of actual self-harm relates to the wrist-cutting incident on September 5, 2018. *Id.* at 44. In addition, Plaintiff alleges she was diagnosed with "extreme" gender dysphoria in 1980, but none of her allegations suggest she received any form of treatment at that time. *Id.* at 11. And, while Plaintiff has been in the ODOC's custody since 1999, she did not request hormone therapy until 2013 and did not begin receiving female hormones until 2016. *Id.* at 4, 11, 43; Doc. 25-1, at 2. Yet, nothing in Plaintiff's motion or supporting documents suggest that she either attempted suicide or engaged in other types of self-harm during the 17-year post-incarceration period that she was not receiving hormone therapy to treat her gender dysphoria—a condition that had been diagnosed as "extreme" at least 19 years before her incarceration.

As a whole, Plaintiff's allegations establish that she faces some risk of self-harm but not a significant risk to her long-term health due to the withdrawal of her hormone therapy. Thus, Plaintiff fails to satisfy her heightened burden to show she will suffer irreparable harm if this Court does not issue a preliminary injunction reinstating her hormone therapy.

### C.     Balance of harms

Next, Plaintiff asserts, in conclusory fashion, that "the threat of harm [she] face[s] is greater than any harm prison officials would face if the Court" grants her request for a preliminary injunction. Doc. 33, at 6. But Plaintiff's factual allegations show that the balance of harms do not weigh in her favor. As discussed, Dr. Jones assessed Plaintiff in May 2018 and determined that Plaintiff does not have gender dysphoria. Wagener discontinued Plaintiff's hormone therapy shortly thereafter. And, Plaintiff has not shown a substantial likelihood that she will prevail on her claim

that the Eighth Amendment requires Defendants to provide her with either hormone therapy or sex reassignment surgery, regardless of whether she has gender dysphoria. In addition, Plaintiff demonstrates, at most a potential risk for self-harm, but her allegations as a whole suggest the severity of that risk is neither significant nor certain at this time. Under these circumstances, the Court finds it would be more harmful to order Defendants to reinstate Plaintiff's hormone therapy than to allow Plaintiff to go without that therapy while this case proceeds to the merits. Consequently, the Court finds Plaintiff fails to show, much less strongly show, that the balance of harms weigh in her favor.

### D.    Public Interest

Finally, Plaintiff does not address in her motion whether granting a preliminary injunction would serve the public interest. Doc. 33. However, the Court finds that it would not. The United States Supreme Court has specifically cautioned federal courts to tread lightly in matters relating to prison administration because

> [r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

*Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Granted, judicial restraint does not require abject deference. *See Pinson*, 424 F. App'x at 749 (citing *Turner* and stating that "there is a strong public interest in affording substantial deference to prison officials" with respect to a prison's day-to-day operations). In this case, however, the Court finds that it would not serve the public interest to direct Defendants to reinstate Plaintiff's hormone therapy when, as discussed, (1) Dr. Jones reversed the

diagnosis that served as the basis for providing Plaintiff's hormone treatments, and (2) Plaintiff has not shown a substantial likelihood that she will succeed on the merits of her deliberate-indifference claim.

**E.      Conclusion**

Based on the foregoing analysis, the Court dismisses Plaintiff's second motion for a preliminary injunction (Doc. 33) as to Defendants Dowling, Lehnus, Wagener and A.J. Williams, and denies the motion as to Defendants Allbaugh, Greg Williams, Jones and McCurdy.

**III.     Motion to amend complaint (Doc. 32)**

As previously discussed, *see supra* pp. 5-6, Plaintiff seeks leave to file an amended complaint (Doc. 32) to add new defendants, new claims, and new requests for relief. Fed. R. Civ. P. 15 governs Plaintiff's request for leave to amend the complaint. Rule 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course," i.e., without leave of court, either (1) within 21 days of serving the pleading, or (2) within 21 days after the plaintiff is served with a responsive pleading or "a motion under Rule 12(b), (e), or (f), whichever is earlier." "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, "the court should freely give leave when justice so requires." *Id.*

Here, Plaintiff moved to amend the complaint more than 21 days after Defendants filed their motion seeking dismissal, under Rule 12(b)(6), or summary judgment, under Rule 56(a). Thus, Plaintiff may not file an amended complaint without Defendants' written consent or leave of court. Fed. R. Civ. P. 15(a)(2). On review of the proposed amended complaint (Doc. 32) the Court finds it deficient in several respects and should not be filed. For this reason, and in light of Plaintiff's

recent transfer to a different facility, the Court finds that Plaintiff's request to file an amended complaint should be granted. However, as previously stated, Plaintiff filed a motion for appointment of counsel (Doc. 31) on February 4, 2019. In an order filed contemporaneously herewith (Doc. 46), the Court granted that motion and requested that attorney Lauren Myers, of the law firm Doerner Saunders Daniel & Anderson, enter her appearance to represent Plaintiff.

Thus, within thirty (30) days from the date Plaintiff's counsel enters her appearance in this case, Plaintiff's counsel shall submit an amended complaint, and may do so using the court-approved form for prisoner civil rights complaints (form PR-01) that is available in the Court Clerk's office, and that can also be obtained from the Court's public website at www.oknd.uscourts.gov/prisoner.

**IV.     Defendants' motion to dismiss the complaint or, in the alternative, for summary judgment (Doc. 26)**

Because the Court grants Plaintiff's motion to amend the complaint, the Court dismisses Defendants' motion to dismiss or, in the alternative, motion for summary judgment (Doc. 26) without prejudice to refiling.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.     Plaintiff's motion to amend (Doc. 23) is **ordered stricken from the record**.

2.     Plaintiff's first motion for a preliminary injunction (Doc. 2) is **declared moot**.

3.     Plaintiff's second motion for a preliminary injunction (Doc. 33) is **dismissed in part**, as to Defendants Dowling, Lehnus, Wagener and A.J. Williams, and **denied in part**, as to Defendants Allbaugh, Greg Williams, Jones and McCurdy.

4.     Plaintiff's motion to amend the complaint (Doc. 32) is **granted**.

5.     Within thirty (30) days from the date Plaintiff's counsel enters her appearance in this case, Plaintiff's counsel shall submit an amended complaint.

6.    Defendants' motion to dismiss or, in the alternative, motion for summary judgment (Doc.

      26) is **dismissed without prejudice to refiling**.

      ORDERED this 17th day of May 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT