**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MISS GLENN A. PORTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-0472-JED-FHM** |
| | ) | |
| **SCOTT CROW, Director, Oklahoma** | ) | |
| **Department of Corrections;** | ) | |
| **GREG WILLIAMS, Deputy Director,** | ) | |
| **Oklahoma Department of Corrections;** | ) | |
| **JANET DOWLING, Warden, Dick Conner** | ) | |
| **Correctional Center;** | ) | |
| **PATRICIA JONES, M.D.;** | ) | |
| **MICHELLE LEHNUS, H.S.A.;** | ) | |
| **BETHENY WAGENER, P.A.;** | ) | |
| **JOEL McCURDY, Chief Medical Director,** | ) | |
| **Oklahoma Department of Corrections;** | ) | |
| **A.J. WILLIAMS;** | ) | |
| **JANA MORGAN, Chief Mental Health** | ) | |
| **Officer, Oklahoma Department of** | ) | |
| **Corrections;** | ) | |
| **RICK WHITTEN, Warden, James Crabtree** | ) | |
| **Correctional Center;** | ) | |
| **LARRY BOWLER, M.D.;** | ) | |
| **RAYMOND BYRD, Warden, Cimarron** | ) | |
| **Correctional Facility;** | ) | |
| **FNU ENZY, Assistant Warden, Cimarron** | ) | |
| **Correctional Facility;** | ) | |
| **FNU GILLESPIE, Unit Manager, Cimarron** | ) | |
| **Correctional Facility;** | ) | |
| **FNU MORRIS, Case Manager, Cimarron** | ) | |
| **Correctional Facility; and** | ) | |
| **GUARDS OF JCCC,** | ) | |
| | ) | |
| **Defendants.**[1] | ) | |

---

[1] Some defendants' names were either misspelled or incomplete as provided in Plaintiff's First Amended Complaint (Doc. 49). The Clerk of Court is directed to update the record to reflect the names of the defendants as listed in the caption of this opinion and order.

## OPINION AND ORDER

This matter is before the Court on the dismissal motion filed by defendants Greg Williams, Janet Dowling, Patricia Jones, Michelle Lehnus, Bethany Wagener, Joel McCurdy and A.J. Williams (Doc. 51), and the amended dismissal motion filed by Scott Crow, Jana Morgan, Rick Whitten and Larry Bowler (Doc. 63).[2] The Court will refer to these defendants, collectively, as "Movants."[3]

## I. Background

Plaintiff Miss Glenn A. Porter is a transgender female[4] in the custody of the Oklahoma Department of Corrections (ODOC). Doc. 49, at 1. She has been in ODOC custody since 1999 and is serving a life sentence for first degree murder. *Id.*; Doc. 54, at 5. Plaintiff is currently incarcerated at the James Crabtree Correctional Center (JCCC) in Helena, Oklahoma, an all-male facility. *Id.* at 1, 8; Doc. 54, at 5. Plaintiff commenced this action on September 10, 2018, while she was incarcerated at the Dick Conner Correctional Center (DCCC), in Hominy, Oklahoma. Doc. 1, at 1. Appearing *pro se*, Plaintiff filed a 42 U.S.C. § 1983 civil rights complaint (Doc. 1),

---

[2] Because these four defendants filed an amended motion to dismiss (Doc. 63), the Court declares moot their original motion to dismiss (Doc. 62).

[3] The remaining five defendants—Raymond Byrd, FNU Enzy, FNU Gillespie, FNU Morris and the Guards of JCCC—were first identified as defendants in the First Amended Complaint, filed June 20, 2019, and have not moved to dismiss the complaint. The record does not reflect that these five defendants have been served. Plaintiff had 90 days from the filing of the FAC, or until September 20, 2019, to effect timely service. Fed. R. Civ. P. 4(m). To date, Plaintiff has not requested additional time to serve these defendants. Accordingly, absent a showing of good cause, the Court will dismiss these five defendants from this action, without prejudice, based on Plaintiff's failure to effect timely service. In addition, while these unserved defendants have not filed a motion to dismiss, because Plaintiff appears *in forma pauperis*, this Court will *sua sponte* consider whether any claims asserted against them should be dismissed, consistent with its screening obligation under 28 U.S.C. § 1915(e)(2)(B).

[4] Plaintiff was identified as male at birth, but self-identifies as female. Doc. 49, at 4. Accordingly, the Court uses female pronouns when referring to Plaintiff.

asserting claims against eight defendants associated with the Oklahoma Department of Corrections (ODOC), and a motion for a preliminary injunction (Doc. 2).  Plaintiff later filed a second motion for a preliminary injunction (Doc. 33), two motions to amend the complaint (Docs. 23, 32), and a motion for appointment of counsel (Doc. 31).  The Court denied Plaintiff's motions for preliminary injunctive relief, but granted her request for counsel and directed counsel to file an amended complaint.  *See* Docs. 46, 47.  Counsel entered her appearance on May 21, 2019, *see* Doc. 48, and filed a First Amended Complaint (Doc. 49) on June 20, 2019.

## II.     The First Amended Complaint

Plaintiff's allegations in the First Amended Complaint (FAC) include events that occurred over the course of three years at four different penal institutions in Oklahoma.  For clarity, the Court has grouped Plaintiff's allegations from the FAC chronologically and by institution.[5]

### *Lawton Correctional Facility, from October 2016 to July 23, 2017*

In October 2016, based on Plaintiff's prior diagnosis of gender dysphoria, Stephen Lange, Ph.D, and Sam Musallam, M.D., evaluated Plaintiff to determine whether she would be a good

---

[5] After the Court screened Plaintiff's original complaint, the Court directed the original defendants to submit a special report, pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  *See* Doc. 7.  Those defendants submitted the special report (Doc. 25) on January 7, 2019.  Because Movants seek dismissal under Fed. R. Civ. P. 12(b)(6), the Court must measure the sufficiency of the FAC by considering facts drawn from only certain materials—namely, the complaint, any documents the complaint incorporates by reference, and any documents referred to in the complaint to the extent those documents are central to Plaintiff's claims and the parties do not dispute the authenticity of those documents.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  However, the Court may consider facts from the special report to the extent those facts do not refute facts specifically pled by Plaintiff in her complaint.  *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993).  Because the dates of Plaintiff's inter-facility transfers provide context for Plaintiff's factual allegations but are not entirely clear from the FAC, the Court draws some of those dates from Plaintiff's consolidated record card (Doc. 25-1) which was submitted with the special report.

candidate for hormone therapy.[6]  Doc. 49, at 4.[7]  Gender dysphoria is the medical diagnosis for the clinically significant distress that an individual can experience when the individual's gender identity differs from the sex assigned to that individual at birth.  Doc. 49, at 4.  Gender dysphoria is a condition recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (Fifth ed. 2013) (DSM-V).  *Id.* at 5.  It is also recognized by other leading medical and mental health professional groups, including the American Medical Association and the American Psychological Association.  *Id.* at 2, 5.  On or about October 18, 2016, Plaintiff began receiving two hormones:  Estradiol and Aldactone.  *Id.* at 5.  Joel McCurdy, M.D., the ODOC's Chief Medical Officer, assisted in Plaintiff's October 2016 evaluation and in initiating her hormone therapy.  *Id.* at 5.

### *Cimarron Correctional Facility, from July 24, 2017 to January 3, 2018*

On or about July 24, 2017, Plaintiff was transferred to the Cimarron Correctional Facility (CCF), a private prison operated by Core Civic America prison officials.  Doc. 49, at 5.  Upon her arrival, four male prison guards subjected her to a cross-gender strip search.  *Id.*  Plaintiff told prison officials that federal law prohibits cross-gender strip searches.  *Id.*

While she was housed at the CCF, Plaintiff "continuously informed the prison staff to quit placing her in random cells."  *Id.* at 6.  She also told "prison officials that she [is] transgender and repeatedly changing her cell [assignment] placed her at serious risk of sexual assault."  *Id.*  Plaintiff's cell mate raped her on or about October 18, 2017, and on or about October 31, 2017.  *Id.*  Plaintiff's cell mate sexually assaulted her on or about November 14, 2017.  *Id.*

---

[6] Plaintiff sometimes refers to hormone therapy as hormone replacement therapy or "HRT."

[7] For consistency, the Court's citations refer to the CM/ECF header page number in the upper right-hand corner of each document.

*Dick Conner Correctional Center, from January 4, 2018 to January 31, 2019*

Plaintiff was transferred to the Dick Conner Correctional Center (DCCC) on or about January 4, 2018. Doc. 25-1, at 4. Around March 16, 2018, Abraham "A.J." Williams, a member of the DCCC's psychiatric staff, issued an order stating that Plaintiff was allowed to have appropriate size and appropriate number of bras and panties, consistent with the ODOC's practice of providing such items to inmates housed at female facilities. Doc. 49, at 5.[8]

On May 1, 2018, Patricia Jones, Psy.D, a staff psychologist from the Joseph Harp Correctional Center (JHCC), evaluated Plaintiff at the DCCC. Doc. 49, at 2, 6; Doc. 53-1, at 1.[9] During the evaluation, Dr. Jones suggested Plaintiff was "masquerading as a woman." Doc. 49, at 6. Throughout the evaluation, Jones "continually referred" to Plaintiff by using "masculine pronouns which is demeaning to Plaintiff." *Id.* at 7. Based on her 45-minute session with Plaintiff, Jones issued a report on May 17, 2018, concluding that Plaintiff's anxiety, depression and difficulty in social settings was better explained by her diagnosis of schizotypal personality disorder, not gender dysphoria. Doc. 49, at 7; Doc. 53-1, at 1.

To be diagnosed with gender dysphoria under the DSM-V, "two of a potential six criteria

---

[8] Plaintiff alleges the order was issued by "Psych Clinician Abraham William." Doc. 49, at 5. However, in identifying the defendants, she describes A.J. Williams as a person who provides psychiatric services to ODOC inmates. For purposes of this opinion and order, the Court infers that Abraham William refers to Defendant A.J. Williams.

[9] Plaintiff identifies Jones as a medical doctor who provides medical services to ODOC inmates. Doc. 49, at 2. But Movants submitted a copy of Jones' written report regarding Plaintiff's May 2018 evaluation, and the report indicates that Jones is a staff psychologist at the JHCC. Doc. 53-1, at 1. Plaintiff's allegations in the FAC include specific references to statements Jones made in that report. *See* Doc. 49, at 6-7. And, while Plaintiff strongly disputes Jones' findings and conclusions, she does not appear to dispute the authenticity of the report itself. Accordingly, the Court finds it appropriate to consider undisputed portions of the report in ruling on the dismissal motions. *See Gee*, 627 F. 3d at 1186 (discussing documents outside the complaint that courts may consider in ruling on Rule 12(b)(6) motions).

must be met." *Id.* at 7; Doc. 53-1, at 7. Even though Dr. Jones found that Plaintiff exhibited "some of the six criteria," *i.e.*, more than one of the criteria, Jones concluded that Plaintiff does not suffer from gender dysphoria. Doc. 49, at 7. Jones opined that Plaintiff's "verbalized incongruence between [her] experienced/expressed gender and anatomical gender may, or may not, be related to the [schizotypal personality disorder]." *Id.*

Dr. Jones "based her conclusion that Plaintiff did not suffer from [g]ender [d]ysphoria on assumptions including Plaintiff's choice of careers and interests" which include a past career as a heavy equipment operator and an interest in nuclear science and biochemistry. Doc. 49, at 6. Jones characterized these as "typically male dominated areas of interest, education, and employment." *Id.* Jones' assessment was improperly influenced by the biased opinion that women generally do not operate heavy equipment and do not study science, an opinion not grounded in "any fact or statistic." *Id.* at 6-7.

In her report, Dr. Jones recommended mental health treatment for schizotypal personality disorder and stated, "When medical staff determines if continuation, advancement, or discontinuation of [hormone therapy] is in the best interest of [Plaintiff], it is recommended that medical and mental health staff meet to consult on development of a formal behavior plan that will provide appropriate safety precautions . . . ." Doc. 53-1, at 8; Doc. 49, at 7.

Betheny Wagener, a physician's assistant at the DCCC, "ordered Plaintiff's HRT to be terminated sometime after Plaintiff's meeting with Dr. Jones." Doc. 49, at 7. "Plaintiff was cut off from all HRT." *Id.* Because Plaintiff's hormone therapy was "abruptly halted" after two years, Plaintiff experienced "great havoc on her body," including rising testosterone levels and rapidly decreasing estrogen levels. *Id.* at 8. These rapid hormonal changes placed Plaintiff at "serious risk of harm and irreparable damage to her physical and mental health and safety in the short and

long term." *Id.* Plaintiff also experienced "great mental anguish" following the termination of her hormone therapy, "at times contemplating self-harm or self-mutilation." *Id.*

On September 11, 2018, Plaintiff filed a grievance seeking reinstatement of her hormone therapy. Doc. 49, at 8. On the basis of Dr. Jones' report, the grievance and the subsequent grievance appeal were denied. *Id.* Plaintiff subsequently filed grievances seeking sex reassignment surgery; those grievances also were denied. Doc. 49, at 8.

Male prison guards at the DCCC, on Unit V&W at Call 103, subjected Plaintiff to a cross-gender strip search on or about October 25, 2018. *Id.* at 6.

### *James Crabtree Correctional Center, from February 1, 2019 to present*

On or about February 1, 2019, Plaintiff was transferred to the JCCC, an all-male facility. Doc. 31, at 1; Doc. 54, at 5. Plaintiff is currently housed in an all-male open dorm where she has no privacy. Doc. 49, at 8. She has female breasts, wears makeup, and wears feminine accessories. *Id.* Plaintiff "continuously" requests access to female undergarments, but prison officials have denied those requests. *Id.* Prison officials and other inmates have subjected Plaintiff to harassment and discriminated against her, based on her gender identity and her physical appearance. *Id.* Plaintiff was "written up for changing her shirt at her assigned bunk." *Id.* She believes "the reasoning for [the] write-up was because Plaintiff has breasts (as she is a female), and the prison guards did not deem it appropriate for [her] to change at her bunk." *Id.* at 8-9.

Plaintiff suffers from a serious medical condition "to which ODOC and its officials, employees, and agents are and have been deliberately indifferent." Doc. 49, at 9. Specifically, her "continuous efforts to have the hormone treatments reinstated have proved to be fruitless." *Id.* Plaintiff "continues to suffer physically and mentally every day due to the acts and omissions of the Defendants, including but not limited to, failure to reinstate hormone therapy, lack of access to appropriate undergarments, and being forced to live in an open male bunk where she is unable

to freely change her clothes or otherwise be herself." *Id.*

Based on these factual allegations, Plaintiff asserts claims under § 1983 (1) against all defendants for discriminating against her on the basis of gender identity, in violation of her Fourteenth Amendment right to equal-protection (Count I); (2) against all defendants for being deliberately indifferent to her serious medical needs by failing to provide adequate treatment for gender dysphoria, in violation of her Eighth and Fourteenth Amendment rights to adequate medical care (Count II); (3) against Rick Whitten and the JCCC Guards for retaliating against her for filing complaints and grievances by subjecting her to unnecessary disciplinary actions, in violation of the Fourteenth Amendment (Count III); (4) against Raymond Byrd, FNU Enzy, FNU Gillespie, FNU Morris (hereafter, the "CCF defendants") and Janet Dowling for allowing prison guards to subject her to cross-gender strip searches, in violation of the Prison Rape Elimination Act (PREA), 34 U.S.C. §§ 30301-30309, and her Fourteenth Amendment right to equal protection (Counts IV and V); and (5) against the CCF defendants for acting with deliberate indifference by failing to protect her from sexual harassment and sexual assault, in violation of the Eighth Amendment (Count VI). Doc. 49, at 9-13.

For these alleged violations, Plaintiff seeks a declaratory judgment that defendants violated her rights, as asserted in Counts I, II, III and VI; compensatory and punitive damages as to all counts; preliminary and permanent injunctive relief, as to the claims asserted in Counts I, II, III and VI; and the fees and costs of this action. *Id.* at 9-14. With respect to her request for injunctive relief, Plaintiff specifically seeks an order directing defendants to (1) reinstate her hormone therapy, (2) allow her to have sex reassignment surgery, and (3) provide her with an appropriate number of female undergarments, including bras and panties. *Id.* at 14.

## II.     Rule 12(b)(6) Standard

Movants urge the Court to dismiss the FAC, in its entirety, under Fed. R. Civ. P. 12(b)(6). Doc. 51; Doc. 63. In considering whether to dismiss a complaint under Rule 12(b)(6), a court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish plaintiff's claim. *Id.* at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555.

In evaluating the complaint, a court must accept as true the plaintiff's well-pleaded factual allegations and construe the facts, and reasonable inferences therefrom, in the light most favorable to the plaintiff. *Id.* at 555. Conversely, the Court should disregard legal conclusions and "conclusory statements" devoid of factual support. *Iqbal*, 556 U.S. at 678; *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). At the motion-to-dismiss stage, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting *Bell Atl. Corp.*, 550 U.S. at 556). But dismissal is appropriate "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp.*, 550 U.S. at 558.

## III. Discussion

### A. Voluntary dismissal

Preliminarily, in response to the dismissal motions, Plaintiff voluntarily dismisses her claims for declaratory judgment, as asserted in Counts I, II, III and VI. Doc. 54, at 17; Doc. 67, at 17. In addition, Plaintiff agrees with Movants that she has no private cause of action under the PREA, and agrees to dismiss her PREA claim against Dowling, as asserted in Count V. Doc. 54, at 16; *see Haffner v. Geary Cty. Sheriff's Dep't*, No. 18-3247-SAC, 2019 WL 1367662, at * 4 (D. Kan. Mar. 26, 2019) (unpublished)[10] (collecting federal district court cases and concluding that "there is nothing in the PREA to indicate that it created a private right of action, enforceable under § 1983"); *see also Blessing v. Freestone*, 520 U.S. 329, 340 (1997) ("In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." (emphases in original)).

Based on Plaintiff's representations, the Court will consider the following claims to have been withdrawn: all claims for declaratory judgment asserted in Counts I, II, III and VI, and the PREA claim asserted against Dowling in Count V. In addition, the Court finds the PREA claim asserted against the CCF defendants in Count IV fails to state a claim and shall be dismissed with prejudice, under 28 U.S.C. § 1915(e)(2)(B)(ii).[11]

---

[10] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[11] Ordinarily, dismissal for failure to state a claim is without prejudice. But because there is no private cause of action for a PREA claim, it would be futile to permit Plaintiff an opportunity to amend that claim. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### B.    Official-capacity claims[12]

Movants first contend that all claims for monetary damages asserted against them in their official capacities must be dismissed with prejudice.  Doc. 51, at 13-14; Doc. 63, at 14-15.  Movants argue they are not "proper defendants" as to any "§ 1983 claims seeking compensatory damages" because neither the State nor its officials, acting in their official capacities, are "persons" within the meaning of § 1983.  Doc. 51, at 13-14; Doc. 63, at 14-15.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right protected by the United States Constitution or other federal law.  *Brown*, 662 F.3d at 1163.  As Movants contend, state officials sued in their official capacities are not considered "persons" acting under color of state law for § 1983 purposes because the suit is deemed as one asserted against the official's office.  *Will*, 491 U.S. at 71.  As a result, and to the extent Plaintiff asserts official-capacity claims against Movants, all of whom are state officials, she is effectively suing the State of Oklahoma.

And, as Movants contend, the Eleventh Amendment bars Plaintiff's claims against the State, regardless of whether she seeks damages or equitable relief.  *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that

---

[12] Plaintiff does not indicate in the FAC whether she brings individual-capacity claims, official-capacity claims, or both, against each defendant.  Doc. 49, generally.  "Individual capacity 'suits seek to impose personal liability upon a government official for actions he takes under color of state law.'"  *Brown v. Montoya*, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  An official-capacity suit asserted against a state official "is not a suit against the official, but rather is a suit against the official's office.'"  *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  In response to the dismissal motions, Plaintiff discusses this distinction, but she does not clarify whether the FAC includes both types of claims as to all defendants.  Doc. 54, at 6-7; Doc. 67, at 6-7.  The Court therefore assumes that the FAC asserts both types of claims and addresses Movants' argument for dismissal of any official-capacity claims that may be asserted against them.

defense."); *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002) (noting that "sovereign immunity applies whether a private plaintiff's suit is for monetary damages or some other type of relief"); *Callahan v. Poppell*, 471 F.3d 1155, 1158-59 (10th Cir. 2006) (acknowledging that Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court and affirming district court's dismissal of plaintiff's official-capacity claims when plaintiff sought only damages, not prospective relief). Thus, to the extent Plaintiff asserts official-capacity claims against Movants and seeks monetary damages, those claims are dismissed.

However, to the extent Plaintiff asserts official-capacity claims against Movants who are state officials and seeks prospective injunctive relief for what she alleges are ongoing violations of her federal rights, neither the § 1983's "person" requirement nor the Eleventh Amendment bars those claims. *See Will*, 491 U.S. at 71 n.10 (explaining that "a state official in his or her official capacity, when sued for injunctive relief" is considered a "person" under § 1983); *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (identifying "three exceptions" to Eleventh Amendment immunity and explaining that a plaintiff may bring an official-capacity suit against a state official acting in his or her official capacity "if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief").

Nevertheless, because Plaintiff is currently incarcerated at the JCCC, any official-capacity claims for prospective injunctive relief based on ongoing violations of her federal rights that she asserts against Dowling, Lehnus, Wagener, Bowler, and A.J. Williams, all of whom appear to be DCCC officials or employees, or against the CCF defendants, all of whom are associated with the Cimarron Correctional Facility, are now moot. *See Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) ("Where a plaintiff seeks an injunction, his susceptibility to *continuing* injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or

controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (emphasis and alterations in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974))).

In sum, to the extent Plaintiff asserts official-capacity claims for monetary damages against Movants, as to Counts I, II, III and VI, those claims shall be dismissed without prejudice on the basis of sovereign immunity. *See Colby v. Herrick*, 849 F.3d 1273, 1278, 1281 (10th Cir. 2017) (stating that Eleventh Amendment is jurisdictional and concluding that dismissal of barred claim should have been without prejudice). To the extent Plaintiff asserts official-capacity claims for prospective injunctive relief against Dowling, Lehnus, Wagener, Bowler, A.J. Williams and the CCF defendants in Counts I, II, and VI, those claims shall be dismissed without prejudice as moot.

The Court will consider whether Plaintiff may proceed with official-capacity claims for prospective injunctive relief against any of the remaining defendants as it considers Movants' arguments for dismissal of Plaintiff's specific constitutional claims.

## C.    Constitutional claims

Next, Movants contend that Plaintiff fails to plausibly allege that their conduct violated her constitutional rights. As a result, they argue, Plaintiff fails to state any claims upon which relief may be granted and fails to overcome their assertion of qualified immunity. Doc. 51, at 14-24, 26-27; Doc. 63, at 15-23, 26-28.

### 1.    Equal-protection claim (discrimination)

In Count I, Plaintiff claims all defendants have violated, or are violating, her Fourteenth Amendment right to equal protection by discriminating against her "due to the basis of her gender identity by failing to provide her with appropriate undergarments, writing her up for changing at her bunk, housing her in an open male bunk, and otherwise failing to recognize [her] as female."

*Id.* at 9-10.

"The Fourteenth Amendment guarantee of equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). But the Equal Protection Clause "doesn't guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningful dissimilar situations." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012). Rather, "[i]t seeks to ensure that any classifications the law makes are made 'without respect to persons,' that like cases are treated alike, [and] that those who 'appear similarly situated' are not treated differently without, at the very least, a rational reason for the difference.'" *Id.* at 684-85 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008)). A plaintiff can assert an equal-protection claim either under the "traditional" theory of a class-based claim or under a "class-of-one theory." *See id.* at 685-690 (discussing both theories). Plaintiff's allegations suggest she is asserting a class-of-one claim.

Under either theory though, the plaintiff must allege, and ultimately show, (1) intentional discrimination by a state actor and (2) that there is no legitimate governmental purpose for the dissimilar treatment. *Id.* at 688-89. To state a plausible class-of-one claim, a plaintiff must first allege facts showing "that others, 'similarly situated in every material respect,' were treated differently." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting

*Jicarilla Apache Nation v. Rio Arriba Cty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)).[13]

The factual allegations most relevant to Plaintiff's discrimination claim appear to be those stated in paragraphs 56-59 and 62 of the FAC. There, Plaintiff alleges she is currently placed in an all-male open dorm at the JCCC, that "fellow inmates" and "prison officials" have harassed her and discriminated against her because she identifies as female, has female breasts and wears makeup and feminine accessories, and that "prison officials" have denied her continuous requests for female undergarments. Doc. 49, at 8. In addition, she alleges that, on one occasion, she was "written up for changing her shirt at her assigned bunk." *Id.* at 8-9. Plaintiff believes she was written up because "the prison guards" found it inappropriate for Plaintiff to change her shirt at her assigned bunk. *Id.* Plaintiff alleges she "continues to suffer physically and mentally every day due to the acts and omissions of the Defendants, including but not limited to failure to reinstate hormone therapy, lack of access to appropriate undergarments, and being forced to live in an open male bunk where she is unable to freely change her clothes or otherwise be herself." *Id.* at 9.

Even accepting these allegations as true, Plaintiff fails to "allege facts to show that an otherwise similarly situated person was treated differently than [s]he was." *Brown*, 662 F.3d at 1173. Plaintiff does allege that ODOC has a policy of providing female undergarments to inmates housed at female facilities. Doc. 49, at 5. But none of Plaintiff's allegations plausibly suggests

---

[13] As to the second prong, in the prison setting, "[u]nequal treatment that does not involve a fundamental right or suspect classification is justified if it bears a rational relation to legitimate penal interest." *Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (unpublished). As both parties' acknowledge, the United States Court of Appeals for the Tenth Circuit, to date, has not recognized transgender individuals as a suspect class for purposes of a Fourteenth Amendment equal-protection claim. Doc. 51, at 21; Doc. 54, at 13; *see Druley*, 601 F. App'x at 635-36 (citing *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227-28 (10th Cir. 2007)). However, regardless of whether Plaintiff alleges discrimination "on the basis of a suspect . . . quasi-suspect . . . or a non-suspect classification," she "must first make a threshold showing that [she was] treated differently from others who were similarly situated to [her]." *Brown*, 662 F.3d at 1173 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)).

that other inmates like Plaintiff—namely, inmates who were identified as male at birth, who identify as female, who have female breasts, and who are incarcerated at an all-male facility in an open dorm—are provided female undergarments, are not housed in all-male open dorms, or are allowed to change their shirts at their assigned bunks without disciplinary action. Absent allegations that Plaintiff has been treated differently than inmates who are similarly situated in all material respects, she fails to state a plausible equal-protection claim against any defendants. For that reason, the Court finds the Fourteenth Amendment equal-protection claim asserted in Count I shall be dismissed for failure to state a claim, as to all defendants.[14]

### 2. Deliberate-indifference claim (denial of medical care)

In Count II, Plaintiff claims all defendants have violated, or are violating, the Eighth Amendment by failing to provide adequate treatment for her gender dysphoria, including hormone therapy and sex reassignment surgery. Doc. 49, at 10-11.

Under the Eighth Amendment, prison officials must, inter alia, "ensure that inmates receive adequate . . . medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a plausible deliberate-indifference claim, Plaintiff must allege facts showing that prison officials responsible

---

[14] To the extent Plaintiff generally asserts that "all defendants" have discriminated against her, or continue to discriminate against her, those assertions are conclusory. Moreover, the FAC's use of collective terms like "Defendants," "prison officials," and "prison guards" fails to provide notice to specific defendants of their roles in the alleged violation of Plaintiff's right to equal protection. *See Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (noting that when a plaintiff seeks to impose personal liability in a § 1983 action, "it is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants'" (emphases in original) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998))); *Brown*, 662 F.3d at 1165 (noting that "it is particularly important" in a § 1983 case brought against "a number of government actors sued in their individual capacity . . . that the complaint make clear exactly who is alleged to have done what to whom . . . as distinguished from collective allegations." (quoting *Kan. Penn Gaming, LLC*, 656 F.3d at 1215). Plaintiff's lack of specificity further supports dismissal of Count I as to all defendants.

for her medical care acted with "deliberate indifference to [her] serious medical needs." *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976). "A medical need is considered sufficiently serious . . . if the

condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention.'" *Al-Turki v. Robinson*,

762 F.3d 1188, 1192-93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th

Cir. 2001)). A prison official acts with deliberate indifference, if the official "act[s] or fail[s] to

act despite [the official's] knowledge of a substantial risk of serious harm" to the inmate's health.

*Farmer*, 511 U.S. at 842. For example, prison officials may violate an inmate's constitutional

rights where the officials "prevent an inmate from receiving treatment or deny [her] access to

medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d

1205, 1211 (10th Cir. 2000). Deliberate indifference may also be "manifested by prison doctors

in their response to the prisoner's needs or by prison guards in . . . intentionally interfering with

the treatment once prescribed." *Gamble*, 429 U.S. at 104-05.

Accepting Plaintiff's allegations as true, the Court finds them sufficient to state a plausible

deliberate-indifference claim. Plaintiff alleges that she has gender dysphoria. Doc. 49, at 4-5. She

generally alleges that mental health and medical communities recognize gender dysphoria as a

serious condition requiring treatment. *Id.* at 5; *see, e.g.*, *Oakleaf v. Martinez*, 297 F. Supp. 3d

1221, 1224 (D. N.M. 2018) (discussing medical community's recognition of gender dysphoria as

"a medical condition characterized by clinically significant distress resulting from the

misalignment between a person's gender identity . . . and the sex the person was assigned at birth").

And she specifically alleges that three doctors, including the ODOC's Chief Medical Officer,

diagnosed her with gender dysphoria in 2016, that she received hormone therapy for that diagnosis

for two years, and that she received psychiatric services related to that diagnosis—specifically, she

was provided female undergarments while she was incarcerated at the DCCC.  Doc. 49, at 4-5. Plaintiff's allegations plausibly show that she has a serious condition requiring treatment.

As to the subjective component of her claim, Plaintiff alleges that "at all relevant times, Defendants knew that Plaintiff had [g]ender [d]ysphoria."  Doc. 49, at 10.  She alleges, however, that Dr. Jones recklessly disregarded her need for continued treatment by concluding, after an incomplete and biased evaluation, that Plaintiff does not have gender dysphoria.  Doc. 49, at 6-7, 11.  And, on the basis of Jones' allegedly incorrect conclusion that Plaintiff does not suffer from gender dysphoria, Wagener "abruptly" discontinued Plaintiff's hormone treatments without regard to the effects Plaintiff would suffer to her physical and mental health after having received hormone therapy for two years.  *Id.* at 7-8, 11.  These allegations plausibly support that both Jones and Wagener acted with deliberate indifference to Plaintiff's serious medical needs.

But, as with her Count I claim, Plaintiff sweeps too broadly by asserting her deliberate-indifference claim against "all defendants."  Doc. 49, at 10.  Plaintiff's factual allegations refer with sufficient specificity to actions taken by Jones and Wagener.  Doc. 49, at 6-8, 10-11.  And, construed as a whole, the allegations in the FAC plausibly suggest that those Movants identified as providers of mental health or medical services at ODOC facilities—namely, McCurdy, Morgan, Lehnus, A.J. Williams, and Bowler—either took, or failed to take, actions relating to Plaintiff's diagnosis and treatment.  Given the nature of Plaintiff's deliberate-indifference claim, the Court finds the facts alleged in the FAC at least "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish (or refute) this claim as to these five Movants.  *Bell Atl. Corp.*, 550 U.S. at 556.  But the Court does not find it reasonable to infer from the facts alleged that the remaining Movants—Crow, G. Williams, Dowling, or Whitten—could be liable, in their individual capacities, for the failure to adequately diagnose and treat Plaintiff.  Ostensibly, Plaintiff

may be asserting her Count II claim against these four Movants only in their official capacities obtain prospective injunctive relief. However, as previously discussed, any claim for prospective injunctive relief against Dowling is now moot. *See supra* Section III.B. Finally, nothing in the FAC plausibly suggests that either the CCF defendants or the JCCC guards could be liable, in any capacity, for the misconduct alleged in Count II.

Based on the foregoing, the Court concludes Plaintiff may proceed on her Count II deliberate-indifference claim against Jones, Wagener, McCurdy, Morgan, Lehnus, A.J. Williams and Bowler, in their individual-capacities, and against Crow, G. Williams and Whitten, in their official-capacities. Count II shall be dismissed without prejudice for failure to state any plausible claims for relief as to Crow, G. Williams, Whitten and Dowling, in their individual capacities, pursuant to their dismissal motions, and shall be dismissed without prejudice for failure to state a claim against the CCF defendants and the JCCC guards, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. Retaliation claim

In Count III, Plaintiff claims Whitten and the JCCC guards retaliated against her, in violation of the Fourteenth Amendment, "by subjecting her to unnecessary disciplinary actions following [her] submission of complaints concerning Defendants' conduct toward her." Doc. 49, at 11-12.

"[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of [her] constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citation and internal quotation marks omitted). As relevant here, officials may not retaliate against prisoners for filing administrative grievances. *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991). To state a plausible retaliation claim, Plaintiff must allege facts demonstrating "(1) that [she] was engaged in constitutionally protected activity; (2) that the defendant's actions caused

[her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to [her] exercise of constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The Court has carefully considered the allegations in the FAC, but finds no support for a plausible claim that Whitten and the JCCC Guards retaliated against Plaintiff for filing complaints or grievances. Plaintiff alleges she filed a grievance in September 2018, wherein she sought reinstatement of her hormone therapy, and filed grievances thereafter, wherein she sought sex reassignment surgery. Doc. 49, at 8. But the facts alleged in the FAC show that Plaintiff filed these particular grievances while she was incarcerated at the DCCC, not the JCCC. *See* Doc. 49, at 6 (alleging DCCC guards subjected Plaintiff to strip search in October 2018, before her transfer to the JCCC). Thus, it is not plausible that either Whitten or the JCCC guards retaliated against her for filing these grievances. In addition, to the extent Plaintiff more generally alleges that Whitten and the JCCC guards have retaliated against her for "continuously" filing requests for reinstatement of her hormone therapy, for complaining about her lack of privacy, or for challenging other conditions of her current confinement at the JCCC, the only specific disciplinary action Plaintiff mentions is the one involving a "write up" for Plaintiff changing her shirt at her assigned bunk. Doc. 49, at 6-9. And Plaintiff alleges that action was substantially motivated by the JCCC guards' discriminatory determination that it is inappropriate for Plaintiff to change at her bunk because she has female breasts. *Id.* at 8-9. Moreover, it is not clear from the FAC what, if any, actions Whitten may have taken, or may have failed to take, with respect to Plaintiff's "continuous" requests for relief or any allegedly retaliatory disciplinary actions. *See id.*, generally.

For these reasons, the Court concludes that Plaintiff fails to state a plausible claim for

retaliation in Count III as to either Whitten or the JCCC guards. Consequently, Count III shall be dismissed without prejudice as to Whitten for failure to state a claim, pursuant to the amended dismissal motion, and shall be dismissed without prejudice as to the JCCC guards for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4. Deliberate-indifference claim (failure to protect)

Finally, in Count VI, Plaintiff claims the CCF defendants violated the Eighth Amendment because they "have been and continue to be deliberately indifferent to the known and substantial risk of serious harm [she] faces from both prison staff and other prisoners as a transgender woman in a men's prison." Doc. 49, at 13. More specifically, Plaintiff alleges that while she was incarcerated at the CCF, she repeatedly told prison officials and staff not to place her in random cells because, as a transgender female, she faced a higher risk of being sexually assaulted. *Id.* at 6. She further alleges she was raped twice and sexually assaulted once by her cell mate. *Id.* Plaintiff alleges that the CCF defendants, in failing to protect her from sexual harassment and rape, "inflicted unnecessary and wanton pain on [her] without any legitimate penological purpose." *Id.* at 14. She further alleges the actions and omissions of these defendants "were undertaken with malice and/or reckless disregard" for her constitutional rights and resulted in damages including bodily injury, pain, suffering, emotional distress, anguish and humiliation. *Id.*

The Eighth Amendment obligates prison officials to protect prisoner "from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). As a result, if a prison official is, or should be, aware that an inmate faces a substantial risk of harm and the official fails to act despite

that awareness, the official may be liable under the Eighth Amendment for any resulting harm. *Id.* at 842.

Accepting Plaintiff's allegations as true, the Court finds them sufficient to state a deliberate-indifference claim against the CCF defendants for failure to protect Plaintiff from being raped and sexually assaulted while she was incarcerated at the CCF. And, while the FAC provides few details as to the specific actions and omissions of each defendant, the Court finds the facts alleged in the FAC at least "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish Plaintiff's deliberate-indifference claim as to those defendants. *Bell Atl. Corp.*, 550 U.S. at 556. Accordingly, the Court concludes Plaintiff may proceed on her Count VI deliberate-indifference claim as to the CCF defendants, in their individual capacities. However, as previously noted, the CCF defendants are subject to being dismissed from this action based on Plaintiff's failure to effect timely service. *See supra* n.3.

Thus, Within 14 days of the entry of this opinion and order, Plaintiff shall show cause in writing why her claims against Raymond Byrd, FNU Enzy, FNU Gillespie and FNU Morris should not be dismissed for failure to effect timely service. Absent a showing of good cause, the Court will dismiss these defendants from this action, without prejudice based on Plaintiff's failure to effect timely service. Fed. R. Civ. P. 4(m).

### 5. Qualified immunity

Because the Court has concluded that Plaintiff may proceed against some Movants, in their individual capacities, as to the constitutional claim asserted in Count II, the Court finds it necessary to consider Movants' assertion that they are entitled to qualified immunity.

"[P]ublic officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls*, 718 F.3d

at 1227.  To overcome an assertion of qualified immunity at the motion-to-dismiss stage, "the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated [her] constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).  If a plaintiff meets her burden to allege a plausible constitutional violation, "[t]he dispositive question is 'whether the violative nature of [the defendants'] *particular* conduct is clearly established.'"  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017).  The plaintiff need not point to "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Mullenix* 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 741).  And because "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,'" the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."  *Id.* (first quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), then quoting *al-Kidd*, 563 U.S. at 742).  *But see District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (recognizing that "there can be the rare 'obvious case,' where the unlawfulness of the [official's] conduct is sufficiently clear even though existing precedent does not address similar circumstances." (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004))).

Notably, while courts will consider qualified immunity at the dismissal stage, "qualified immunity defenses are typically resolved at the summary judgment stage."  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  Asserting qualified immunity at the dismissal stage subjects the defendant raising it "to a more challenging standard of review than would apply on summary

judgment." *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).  And, because "discovery may inform the context [of the individual defendants'] actions," the "'denial of qualified immunity at the dismissal stage does not preclude a renewal of that defense at summary judgment after further factual development has occurred.'" *Schwartz*, 702 F.3d at 587 (quoting *Weise v. Casper*, 507 F.3d 1260, 1265 (10th Cir. 2007)).

Movants primarily assert that they are entitled to qualified immunity because Plaintiff has not alleged any plausible constitutional violations.  Doc. 51, at 26-28; Doc. 56, at 8-10; Doc. 63, at 26-28; Doc. 68, at 7-9.  As previously discussed, accepting Plaintiff's allegations as true, and drawing all reasonable inferences in her favor, the FAC states a plausible claim that some Movants, all of whom are prison officials or employees providing medical and mental health services to ODOC inmates, have been deliberately indifferent to Plaintiff's serious medical needs by failing to adequately evaluate whether Plaintiff has gender dysphoria and by failing to provide necessary medical treatment for that condition, as Plaintiff claims in Count II.  Thus, the Court finds Plaintiff satisfies the first-prong of the qualified-immunity analysis.

Movants argue Plaintiff cannot satisfy the second prong because she "has not pointed to a single case wherein a transgender inmate or individual received the treatment she desires without first having a proper diagnosis."  Doc. 68, at 8; *see also* Doc. 56, at 10 (arguing Plaintiff cannot satisfy the second prong because she "does not have a gender dysphoria diagnosis").  As should be evident from Plaintiff's allegations in the FAC, the crux of Plaintiff's Count II claim is that Movants have been incapable of properly evaluating her need for treatment for gender dysphoria.  Specifically, she alleges ODOC officials initially diagnosed her with gender dysphoria and treated her with hormone therapy then recklessly disregarded a substantial risk to her physical and mental health by "abruptly" stopping the hormone therapy—after two years—based on Dr. Jones' less-

than-informed judgment that the gender dysphoria diagnosis was incorrect.

Regardless of whether Plaintiff has a current diagnosis for gender dysphoria, the duty to provide adequate medical and mental health care for transgender inmates who have gender dysphoria is not a novel concept. As early as 1986, the Tenth Circuit recognized that prison officials have a duty to make informed judgments regarding the treatment of inmates diagnosed with gender dysphoria. *Supre v. Ricketts*, 792 F.2d 958, 962-63 (10th Cir. 1986). And the Tenth Circuit recently reaffirmed that view, recognizing that there are several forms of treatment prison officials can provide to inmates with gender dysphoria that would satisfy the Eight Amendment's obligation to provide adequate medical treatment. *Lamb v. Norwood*, 899 F.3d 1159, 1162-63 (10th Cir. 2018). More generally, prison officials have long had fair notice that they can be held liable for violating an inmate's constitutional rights if the officials "intentionally interfer[e] with" medical treatment once it is prescribed, *Gamble*, 429 U.S. at 104-05, "prevent an inmate from receiving treatment or deny [her] access to medical personnel capable of evaluating the need for treatment," *Sealock*, 218 F.3d at 1211.

At this stage of the proceeding, the Court finds Plaintiff's allegations in the FAC sufficient to state a plausible violation of clearly established law, "even though existing precedent does not address similar circumstances." *Wesby*, 138 S. Ct. at 590. Thus, the Court finds that Movants are not entitled to qualified immunity. As noted, that finding does not prevent Movants from reasserting qualified immunity as a defense after discovery and development of the record.

### D.    Injunctive relief

As a final matter, in the FAC Plaintiff renews her request for preliminary injunctive relief. Doc. 49, at 14. She specifically seeks an order directing defendants to reinstate her hormone therapy, permit her to have sex reassignment surgery, and provide her with female undergarments.

*Id.* All three forms of relief appear to relate only to her Count II deliberate-indifference claim.

To obtain a preliminary injunction, the moving party must establish "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). The primary purpose of granting preliminary relief "is to preserve the pre-trial status quo." *Id.* As a result, three types of injunctions are generally disfavored: (1) those that alter the status quo, (2) those that are "mandatory as opposed to prohibitory," and (3) those that provide the movant "substantially all the relief [s]he may recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (*en banc*) (*per curiam*) (quoting *SCFC ILC, Inc. v Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991)). Whether disfavored or not, "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). And, when a movant seeks a "disfavored" preliminary injunction, the movant "must make a heightened showing of the four factors" to obtain relief. *RoDa Drilling Co.*, 552 F.3d at 1209.

The Court previously denied Plaintiff's *pro se* motions for a preliminary injunction, finding that she failed to make the requisite showings necessary to obtain a preliminary injunction even if the Court accepted all of her factual allegations as true. Doc. 47, at 9-19. Because the Court accepted Plaintiff's allegations as true in ruling on her motion, the Court issued its ruling without conducting an evidentiary hearing. *See id.* at 9, n.10. Both parties now ask this Court to consider evidence, in addition to the allegations in the FAC, in determining whether Plaintiff is entitled to preliminary injunctive relief. Doc. 54, at 16-17; Doc. 56, 2-3, 6-8; Doc. 67, 16-17; Doc. 68, 1-4,

6-7.  Based on the parties' arguments and given that Plaintiff is now represented by counsel, the Court finds it both necessary and appropriate to conduct an evidentiary hearing, following a limited period for discovery and briefing, before ruling on Plaintiff's renewed request for preliminary injunctive relief as to her Count II deliberate-indifference claim.  Following a joint status conference, the Court will issue a separate order setting the date for the evidentiary hearing and establishing deadlines for discovery and briefing.

## IV.  Conclusion

Based on the foregoing analysis, Plaintiff's claims for declaratory judgment asserted in Counts I, II, III and VI, and the PREA claim asserted against Dowling in Count V are deemed withdrawn.  The PREA claim asserted against the CCF defendants in Count IV shall be dismissed with prejudice, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

The dismissal motion filed by defendants Greg Williams, Janet Dowling, Patricia Jones, Michelle Lehnus, Bethany Wagener, Joel McCurdy and A.J. Williams (Doc. 51), and the amended dismissal motion filed by Scott Crow, Jana Morgan, Rick Whitten and Larry Bowler (Doc. 63) are granted, in part, and denied, in part.

The following claims shall be **dismissed** in whole, or in part:

- Plaintiff's official-capacity claims for monetary damages asserted against Movants in Counts I, II, III and VI shall be dismissed without prejudice on the basis of sovereign immunity.  Plaintiff's official-capacity claims for prospective injunctive relief asserted against Dowling, Lehnus, Wagener, Bowler, A.J. Williams and the CCF defendants in Counts I, II and VI, shall be dismissed without prejudice as moot.

- Plaintiff's Fourteenth Amendment equal-protection claim asserted in Count I shall be dismissed without prejudice, as to all defendants, for failure to state a claim.

- Plaintiff's Count II deliberate-indifference claim shall be dismissed without prejudice as to Crow, G. Williams, Whitten and Dowling, in their individual capacities, for failure to state a claim, pursuant to their dismissal motions, and as to the CCF defendants and the JCCC guards for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

- Plaintiff's Count III retaliation claim shall be dismissed without prejudice as to Whitten for failure to state a claim, pursuant to the amended dismissal motion, and shall be dismissed without prejudice as to the JCCC guards for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

- Based on the foregoing, defendants Janet Dowling and the Guards of the JCCC shall be dismissed from this action.

Plaintiff may **proceed** on the following claims:

- Plaintiff may proceed on the deliberate-indifference claim asserted in Count II against Jones, Wagener, McCurdy, Morgan, Lehnus, A.J. Williams and Bowler, in their individual capacities, and against Crow, G. Williams and Whitten, in their official-capacities.

- Plaintiff may proceed on the deliberate-indifference claim asserted in Count VI against the CCF defendants—Raymond Byrd, FNU Enzy, FNU Gillespie, FNU Morris—in their individual capacities.

As to the Count II deliberate-indifference claim, the Court concludes that Jones, Wagener, McCurdy, Morgan, Lehnus, A.J. Williams and Bowler are not entitled to dismissal of the

individual-capacity claims asserted against them on the basis of qualified immunity. Within 14 days of the entry of this opinion and order, Jones, Wagener, McCurdy, Morgan, Lehnus, A.J. Williams, Bowler, Crow, G. Williams and Whitten shall, either jointly or separately, file answers to the FAC. *See* Fed. R. Civ. P. 12(a)(4)(A).

As to the Count VI deliberate-indifference claim, the Court concludes that the CCF defendants have not been served. Within 14 days of the entry of this opinion and order, Plaintiff shall show cause in writing why Raymond Byrd, FNU Enzy, FNU Gillespie, and FNU Morris should not be dismissed from this action based on her failure to effect timely service. Absent a showing of good cause, the Court will dismiss these defendants from this action, without prejudice for lack of service. Fed. R. Civ. P. 4(m).

Lastly, the Court concludes it is both necessary and appropriate to conduct an evidentiary hearing, following a limited period for discovery and briefing, before ruling on Plaintiff's renewed request for preliminary injunctive relief. The Court will issue a separate order forthwith, setting a date for a joint status conference. At the status conference, counsel for the parties shall be prepared to discuss the anticipated length of the evidentiary hearing, the number of witnesses reasonably anticipated to be called, and possible dates for the evidentiary hearing. At this time, the Court anticipates the evidentiary hearing will be held in late March or early April.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court is directed to update the record to reflect the names of the defendants as listed in the caption of this opinion and order.

2. Plaintiff's claims for declaratory judgment asserted in Counts I, II, III and VI, and the PREA claim asserted against Dowling in Count V are deemed **withdrawn**.

3. The PREA claim asserted against the CCF defendants in Count IV is **dismissed with**

**prejudice**, for failure to state a claim.

4.      The dismissal motion filed by defendants Greg Williams, Janet Dowling, Patricia Jones, Michelle Lehnus, Bethany Wagener, Joel McCurdy and A.J. Williams (Doc. 51) is **granted, in part, and denied, in part**.

5.      The dismissal motion filed by Scott Crow, Jana Morgan, Rick Whitten and Larry Bowler (Doc. 62) is **declared moot**.

6.      The amended dismissal motion filed by Scott Crow, Jana Morgan, Rick Whitten and Larry Bowler (Doc. 63) is **granted, in part, and denied, in part**.

7.      Plaintiff's official-capacity claims for monetary damages asserted against Movants in Counts I, II, III and VI are **dismissed without prejudice**, as barred by the Eleventh Amendment.

8.      Plaintiff's official-capacity claims for prospective injunctive relief asserted against Dowling, Lehnus, Wagener, Bowler, A.J. Williams and the CCF defendants in Counts I, II and VI are **dismissed without prejudice**, as moot.

9.      Plaintiff's Fourteenth Amendment equal-protection claim asserted in Count I is **dismissed without prejudice**, as to all defendants, for failure to state a claim.

10.     Plaintiff may proceed on the deliberate-indifference claim asserted in Count II against Jones, Wagener, McCurdy, Morgan, Lehnus, A.J. Williams and Bowler, in their individual-capacities, and against Crow, G. Williams and Whitten, in their official-capacities.

11.     Count II is **dismissed without prejudice** as to Crow, G. Williams, Whitten and Dowling, in their individual capacities, for failure to state a claim, pursuant to their dismissal motions, and **dismissed without prejudice** as to the CCF defendants and the

JCCC guards for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

12. Count III is **dismissed without prejudice** as to Whitten for failure to state a claim, pursuant to the amended dismissal motion, and **dismissed without prejudice** as to the JCCC guards for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

13. Plaintiff may proceed on the deliberate-indifference claim asserted in Count VI against Raymond Byrd, FNU Enzy, FNU Gillespie, FNU Morris, in their individual capacities.

14. Defendants Janet Dowling and the Guards of the JCCC are **dismissed** from this action.

15. Within 14 days of the entry of this opinion and order, Plaintiff shall show cause in writing why Raymond Byrd, FNU Enzy, FNU Gillespie, and FNU Morris should not be dismissed from this action based on her failure to effect timely service. Absent a showing of good cause, the Court will dismiss these defendants from this action, without prejudice for lack of service. Fed. R. Civ. P. 4(m).

16. Within 14 days of the entry of this opinion and order, Jones, Wagener, McCurdy, Morgan, Lehnus, A.J. Williams, Bowler, Crow, G. Williams and Whitten shall, either jointly or separately, file answers to the FAC with respect to Plaintiff's Count II deliberate-indifference claim. *See* Fed. R. Civ. P. 12(a)(4)(A).

17. The Court will issue a separate order forthwith, setting a date for a joint status conference. At the status conference, counsel for the parties shall be prepared to discuss the anticipated length of the evidentiary hearing, the number of witnesses reasonably anticipated to be called, and possible dates for the evidentiary hearing. At this time, the Court anticipates the evidentiary hearing will be held in late March or early April.

ORDERED this 10th day of February, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT